# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT Of ILLINOIS

| | |
|---|---|
| AARON O'NEAL and<br>JOHN LAVELLE<br>　　　　　Plaintiffs,<br>　　　v.<br><br>JOHN BALDWIN, DIRECTOR,<br>ILLINOIS DEPARTMENT<br>OF CORRECTIONS, in his official and<br>individual capacity; MANUEL ROJAS,<br>in his official and individual capacity;<br>STEPHANIE DORETHY,<br>in her official and individual capacity;<br>FREDDIE BRITTON, in his official and<br>individual capacity; ROBERT RODRIGUEZ,<br>in his official and individual capacity;<br>JOE LAHOOD, in his official and individual<br>capacity; JOHN FROST, in his official<br>and individual capacity; STEVE GANS,<br>in his official and individual capacity;<br>MELISSA PHOENIX, in her official and<br>individual capacity<br><br><br>　　　　　Defendants, | Case No. 18-CV-4063-SEM-TSH |

## FIRST AMENDED COMPLAINT—CLASS ACTION

Plaintiffs Aaron O'Neal and John Lavelle, who bring this class action pursuant to Fed. R.

Civ. P. 23(a) and 23(b)(2) on behalf of those similarly situated, as well as an individual claim, by

and through their attorneys, and state as follows:

## INTRODUCTION

1.　　　This action is based on 42 U.S.C. § 1983 and concerns violations of the Plaintiffs'

1

rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the Free Exercise Clause of the First Amendment to the United States Constitution, and retaliation thereunder.

2.      Plaintiffs, devout Catholics, assert that Defendants denied and continue to deny them and other Catholic prisoners at Hill Correctional Center ("HCC"), a Constitutionally and statutorily required religious accommodation; specifically, the need to receive meatless meals on Fridays during Lent and on Ash Wednesday ("the dietary accommodation"). Despite Plaintiffs' reasonable requests that they and other Catholic prisoners be provided the dietary accommodation, HCC has ignored its own policies, statutory requirements, and constitutional requirements in steadfastly denying Plaintiffs and the alleged class members the dietary accommodation. Moreover, Defendant Rojas retaliated against Plaintiff O'Neal individually for asserting his First Amendment right to practice his religion.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 28 U.S.C §§ 1331, 1343.

4.      This action is authorized by 42 U.S.C. § 2000cc-2, 42 U.S.C. § 1983, and 42 U.S.C. § 1988 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

5.      Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

6.      Venue is proper in this district as provided by 28 U.S.C. § 1391.

## PARTIES

7.      Plaintiff Aaron O'Neal is an adult Illinois resident who has been placed by the DOC

in HCC, a facility under the direction of the Illinois Department of Corrections ("DOC") located in Galesburg, Illinois.

8.      Plaintiff John Lavelle is an adult Illinois resident who has been placed by the DOC in HCC.

9.      Defendant John Baldwin ("Baldwin") is the Director of the DOC, responsible for overseeing the management and operations of Illinois state prisons. Defendant Baldwin is sued in both his official capacity for declaratory and injunctive relief and in his individual capacity for nominal damages.

10.     Defendant Manuel Rojas ("Rojas") is the Chaplain with HCC and is responsible for arranging and approving all religious services, events, and dietary plans. Defendant Rojas is sued in both his official capacity for declaratory and injunctive relief and in his individual capacity for nominal damages.

11.     Defendant Stephanie Dorethy ("Dorethy") is the Chief Administrative Officer and Warden at HCC. She is responsible for the operation and function of HCC and the final approval of inmate participation in HCC programs. Defendant Dorethy is sued in both her official capacity for declaratory and injunctive relief and in her individual capacity for nominal damages.

12.     Defendant Freddie Britton ("Britton") is the Dietary Supervisor at HCC and is responsible for ensuring the preparation and issuing of inmate meals in conformance with religious dietary needs. Defendant Britton is sued in both his official capacity for declaratory and injunctive relief and in his individual capacity for nominal damages.

13.     Defendant Robert Rodriguez ("Rodriguez") is a volunteer Chaplain at HCC and is responsible for assisting Defendant Rojas in arranging and coordinating various aspects of Catholic

inmates' spiritual and dietary needs. Defendant Rodriguez is sued in both his official capacity for declaratory and injunctive relief and in his individual capacity for nominal damages.

14.    Defendant Joe LaHood ("LaHood") is head of Catholic Prison Ministries for DOC and is responsible for assisting DOC in establishing protocol for Catholic ministries within DOC. Defendant LaHood is also responsible for advocating for inmates' dietary needs. Defendant LaHood is sued in both his official capacity for declaratory and injunctive relief and in his individual capacity for nominal damages.

15.    Defendant John Frost ("Frost") is a Counselor at HCC and is responsible for investigating matters related to inmate grievances. Defendant Frost is sued in both his official capacity for declaratory and injunctive relief and in his individual capacity for nominal damages.

16.    Defendant Steve Gans ("Gans") is a grievance officer with HCC, responsible for investigating matters relating to grievances filed by HCC prisoners, including the grievances described in this complaint. Defendant Gans is sued in both his official capacity for declaratory and injunctive relief and in his individual capacity for nominal damages.

17.    Defendant Melissa Phoenix ("Phoenix") is an administrative assistant with the Illinois Priosn Administrative Review Board, and is responsible for reviewing the grievances of HCC prisoners that are on appeal, including the grievances described in this complaint. Defendant Phoenix is sued in both her official capacity for declaratory and injunctive relief and in her individual capacity for nominal damages.

## FACTS

### Facts Related to Aaron O'Neal

18.    Plaintiff Aaron O'Neal ("Mr. O'Neal") is a prisoner who has been in HCC since

4

March of 2005.

19. Mr. O'Neal is a devout Catholic.

20. When Mr. O'Neal entered HCC in March of 2005, he declared his religious affiliation as "Catholic" on a DOC form such as the form in Exhibit A and has regularly attended Catholic services ever since.

21. Mr. O'Neal's HCC identification card identifies him as "Catholic." (Exhibit B).

22. According to Defendants' own policy, in Catholicism, the "Lenten season begins on Ash Wednesday and concludes on Holy Saturday (the day before Easter Sunday) . . . . During the Lenten season, those 14 and older must abstain from meat all Fridays of Lent and also Ash Wednesday." (Exhibit C).

23. In February of 2016, Mr. O'Neal complained to Defendant Rojas that Mr. O'Neal had been denied access to meatless meals on Lenten Fridays and Ash Wednesday despite Mr. O'Neal's request for the dietary accommodation during Lent. Mr. O'Neal stressed that the primary religious tenet for Catholics during Lent was meatless meals on Lenten Fridays. Defendant Rojas responded that he would "look into it," but never followed up with Mr. O'Neal.

24. Indeed, Mr. O'Neal made numerous requests to several other prison officials for a dietary accommodation of meatless meals on Ash Wednesday and Fridays during Lent in order to meet both his religious and dietary needs, to no avail.

25. On April 14, 2016, in accordance with HCC policy, Mr. O'Neal submitted to HCC a grievance against Defendants Rojas and Dorethy ("O'Neal's April 14, 2016 Grievance") (Exhibit D).

26. In his April 14, 2016 Grievance (Exhibit D, pp. 4-11), Mr. O'Neal alleged First

Amendment, Fourteenth Amendment, and RLUIPA violations based on the following facts, which

he realleges in this Complaint:

a.  That Mr. O'Neal followed the procedures required to establish his religion

with HCC as "Catholic" and that he is indeed an "active Catholic participant;"

b.  That "Catholic inmates . . . at [HCC] for numerous years have been deprived

an alternative meal during [Lent] which starts on Ash Wednesday and

concludes on Easter Sunday . . . which prohibits [all] Catholics from

consuming meat products on Fridays.";

c.  That the Dietary Department at HCC, supervised by Defendant Britton,

refused to accommodate alternative meals for Catholics such as fish during

Lent;

d.  That Mr. O'Neal spoke to the Dietary Department at HCC about not having

received the dietary accommodation, but was told that until Defendant Rojas

provided the Dietary Department with a "needed list," there would be no

dietary accommodation;

e.  That Mr. O'Neal expressed that the Dietary Department could and should

instead refer to the back of each inmate's identification card, which shows

inmates' religion, but that the Dietary Department refused to do so, with the

stated reason that "if they . . . give those that state Catholic on the back of

their ID alternative meals, and not those that don't[,] [it] would be a form of

discrimination.";

f.  That Defendant Rojas should have prepared an alternative list for Lent to the

Dietary Department but did not, depriving Catholics from their proper Friday Lent meals;

g.  That when Mr. O'Neal approached Defendant Rojas alleging "indifference and discrimination which has been pointed [specifically] at Catholic participants . . . at [HCC]," Defendant Rojas "became visibly furious . . . and began to wag and point his finger [in Mr. O'Neal's direction] in a menacing . . . fashion.";

h.  That Mr. O'Neal conveyed to Defendant Rojas that "[other] religious groups receive what they [are entitled] to[,]" including "celebratory feasts after each one of their traditional religious periods, but not [Catholics]" and that Defendant Rojas responded that Catholics "can have 'celebratory feasts'" but that [the dietary issues] were "up to the Deacon" and not up to Defendant Rojas;

i.  That Mr. O'Neal conveyed the above exchange with Defendant Rojas to Defendants Rodriguez and LaHood (both Deacons). Other prisoners at HCC had also complained to the Deacons about Defendant Rojas' discrimination against Catholics in the past;

j.  That Cursillo/Ultreya ("Cursillo") is a Catholic service that takes place every third Tuesday of each month which Mr. O'Neal ordinarily attends, and that Defendant Rojas retaliated against Mr. O'Neal for his assertion of his and others' right to the religious dietary accommodation by taking Mr. O'Neal off of the Cursillo list, thus retaliatorily denying him the right to worship;

7

k.    That Defendant Rojas has approved other religious dietary accommodations, including for inmates who are Jewish, Muslim, Rastafarian, and Odinist, but not for those who are Catholic, and;

l.    That Defendant Dorethy has full knowledge of and approved of the conduct complained of and that Defendant Dorethy approved several other religious feasts at HCC while denying the same to Catholics.

27.    Examples of Defendants providing religious dietary accommodations to prisoners of other faith traditions include:

a.    Allowing Muslim prisoners to eat at different times of the day than other prisoners during Ramadan. Fasting from dawn to sunset is a central and essential tenet of Islam.

b.    Providing Kosher meals to Jewish prisoners. Keeping Kosher is a central and essential tenet of Judaism.

28.    The unlawful behavior by Defendants described in O'Neal's April 14, 2016 Grievance continues up through the present.

29.    On July 13, 2016, Defendant Frost transcribed a response to O'Neal's April 14, 2016 Grievance from Defendant Rojas, which stated, in part, that "Lent is an observance about giving up something that is important, not necessarily food." (Exhibit E). This statement does not reflect Mr. O'Neal's practice and understanding of Catholicism as expressed to numerous HCC staff and officials, nor does it comport with HCC's own policy regarding Lenten dietary restrictions (Exhibit C).

30.    After receiving Defendant Rojas' July 13, 2016 rejection of Mr. O'Neal's grievance

8

and request for religious accommodations, Mr. O'Neal submitted his April 14, 2016 Grievance to Defendant Gans (HCC Grievance Officer).

31.    On August 4, 2016, Defendant Gans denied O'Neal's April 14, 2016 Grievance. (Exhibit F).

32.    Mr. O'Neal subsequently appealed Defendant Gans's denial of his April 14, 2016 Grievance. Defendants Phoenix and Baldwin affirmed Defendant Gans' denial of O'Neal's April 14, 2016 Grievance on March 7, 2017.

33.    Defendants have failed to provide the dietary accommodation to Mr. O'Neal and class members during the Lenten season.

34.    Defendants' failure to provide these dietary accommodations has caused Mr. O'Neal

**Facts related to John Lavelle**

35.    Plaintiff John Lavelle ("Mr. Lavelle") is a prisoner at HCC.

36.    Mr. Lavelle is a devout Catholic and his religious beliefs require that he refrain from eating meat on Fridays during Lent and on Ash Wednesdays.

37.    Mr. Lavelle has requested this dietary accommodation of HCC.

38.    After being denied the dietary accommodation, Mr. Lavelle filed a grievance on March 31, 2017 ("Lavelle's March 31, 2017 Grievance"), stating that despite his request for a dietary accommodation, "this issue has not been addressed" and that he had not "heard from [Defendant] Rojas." (Exhibit G).

39.    Lavelle's March 31, 2017 grievance also asserted that people "of the Muslin, Jewish, [and] Odinist faiths are accommodated[.]" (Exhibit G).

40.    Mr. Lavelle pursued this grievance to its conclusion and was denied at all levels

within IDOC.

41.     Mr. Lavelle has been denied, and continues to be denied, access to meatless meals on Lenten Fridays and Ash Wednesday despite his request for the dietary accommodation during Lent.

42.     On January 9, 2018, Mr. Lavelle attended a Catholic service at HCC at which Defendant Rodriguez stated that inmates at HCC would not receive a meatless diet during Lent, but that instead, Catholic inmates could either "eat around the meat, or . . . not eat meals served during Lent." (*See,* Affidavit of John Lavelle, Exhibit H, pp. 1-2).

43.     Defendants' failure to provide these dietary accommodations has caused Mr. Lavelle to suffer physical harm, including fatigue, hunger pains, and loss of sleep.

**Facts Common to Plaintiffs and Class Members**

44.     Defendants have failed to provide the dietary accommodation to Plaintiffs and class members during the Lenten season.

45.     Adhering to the requested Lenten diet is a central and essential tenet of Catholicism.

46.     Defendants have a pattern or practice of denying Catholic prisoners the dietary accommodation. *See,* Affidavits, Exhibit H.

**STATUTORY FRAMEWORK**

47.     RLUIPA, 42 U.S.C. § 2000cc, *et seq.,* provides, in pertinent part, that:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. 2000cc-1(a).

48.     The term "institution" is defined as any facility or institution that "is owned, operated, or managed by, or provides services on behalf of any State or political subdivision of a State" and includes, among other things, a "jail, prison, or other correctional facility." *See* 42 U.S.C. § 1997(1)(B)(ii).

49.     The term "religious exercise" is defined to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *See* 42 U.S.C. § 2000cc-5(7)(A).

50.     RLUIPA applies in any case in which "the substantial burden [on religious exercise] is imposed in a program or activity that receives Federal financial assistance." *See* 42 U.S.C. § 2000cc-1(b)(1).

51.     The DOC receives federal financial assistance and is therefore subject to the requirements of RLUIPA.

52.     RLUIPA states that:

> If a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of section 2000cc of this title, the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion.

42 U.S.C. 2000cc-2(b).

## COUNT I—Class Claim
## RLUIPA (42 U.S.C. §§2000cc, et seq.)

53.     Plaintiffs reallege and reincorporate paragraphs 1-51 and as if fully set forth herein.

54.     Plaintiffs bring this claim against all defendants in their official capacities as to plaintiffs' claims for declaratory and injunctive relief and in their individual capacities as to Plaintiffs' individual claims for nominal damages.

55.     RLUIPA, 42 U.S.C. §§ 2000cc, *et seq.* bars federally-funded institutions from imposing substantial burdens on prisoners' religious exercise, unless the government demonstrates that imposition of the burden furthers a compelling governmental interest *and* is the least restrictive means of furthering that interest.

56.     HCC receives financial assistance from the U.S. government.

57.     Defendants' policy of systematically denying Catholic prisoners the dietary accommodation described herein substantially burdens Plaintiffs' religious exercise and sincerely held religious beliefs.

58.     Defendants' policy and actions therefore violate RLUIPA.

59.     Plaintiffs have satisfied all legal, administrative, and procedural requirements for bringing an action under RLUIPA.

## COUNT II—Class Claim
## FIRST AMENDMENT
## RIGHT TO FREE EXERCISE OF RELIGION

60.     Plaintiffs reallege and reincorporate paragraphs 1-51 and as if fully set forth herein.

61.     Plaintiffs bring this claim against all defendants in their official capacities as to plaintiffs' claims for declaratory and injunctive relief and in their individual capacities as to Plaintiffs' individual claims for nominal damages.

62.     The Free Exercise Clause of the U.S. Constitution provides that Congress "shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const., amend. 1. This guarantee applies to the states through the Fourteenth Amendment to the Constitution.

63.     Defendants' policies and practices are neither neutral nor generally applicable.

64.     By failing to accommodate Plaintiffs' dietary and worship needs as described herein,

12

while accommodating the needs of similarly situated prisoners of other religious backgrounds, Defendants have violated Plaintiffs' free exercise rights under the First Amendment.

65.     Plaintiffs have satisfied all legal, administrative, and procedural requirements for bringing an action under the First Amendment.

<u>COUNT III—Class Claim</u><br><u>EQUAL PROTECTION</u>

66.     Plaintiffs reallege and reincorporate paragraphs 1-51 and as if fully set forth herein.

67.     Plaintiffs bring this claim against all defendants in their official capacities as to plaintiffs' claims for declaratory and injunctive relief and in their individual capacities as to Plaintiffs' individual claims for nominal damages.

68.     The Fourteenth Amendment to the U.S. Constitution guarantees that states must provide for the equal protection of law.

69.     By failing to accommodate Plaintiffs' dietary and worship needs as described herein, while accommodating the needs of similarly situated prisoners of other religious backgrounds, Defendants have violated Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment.

70.     By failing to accommodate Plaintiffs' dietary and worship needs as described above, Defendants have imposed a substantial burden on Plaintiffs.

71.     The burden placed on Plaintiffs is not in furtherance of a compelling governmental interest.

72.     The burden placed on Plaintiffs is not the least restrictive means of furthering any compelling interest.

73.     Plaintiffs have satisfied all legal, administrative, and procedural requirements for

13

bringing an action under the Equal Protection Clause.

## CLASS ALLEGATIONS AS TO COUNTS I-III

74.     Plaintiffs bring this action as a Class Action pursuant to Fed. R. Civ. P.23(a) and

23(b)(2) on behalf of the following two proposed classes:

> **Class I (Catholic Prisoner Class):**   All natural persons imprisoned at HCC who (1) have
> designated their religion with HCC as Catholic and (2) who have been denied meatless meals
> on Fridays during Lent and on Ash Wednesday (3) after making such a request for those
> religious dietary accommodations.
> **Class II (Future Catholic Prisoner Class):**  All persons who may in the future be denied
> religious dietary accommodations as described in Class I.

75.     Plaintiffs seek to represent the classes.

76.     On information and belief, the individuals in the classes are so numerous that joinder

of all members is impractical. Plaintiffs will obtain the exact number of class members during

discovery.

77.     There are questions of law and fact common to the claims of the classes. Among these

common questions are:

a.     Whether the failure to provide Catholic prisoners with dietary accommodations during Lent and Ash Wednesday as alleged herein is a custom or practice within HCC and by Defendants;

b.     Whether the alleged failure violates class members' statutory rights under the RLUIPA.

c.     Whether the alleged failure violates class members' Constitutional rights under the First and Fourteenth Amendments.

78.     Plaintiffs will fairly and adequately represent the interests of the class members.

Plaintiffs do not have any claims which are antagonistic to the class members. Plaintiffs have

14

retained skilled counsel with extensive experience in class action litigation to represent the Classes.

79.     Plaintiffs' claims are typical of the claims of the class members. Plaintiffs designated their religion with HCC as Catholic, requested a religious dietary accommodation of meatless meals on Fridays during Lent and Ash Wednesday, and were denied this religious dietary accommodation by Defendants.

80.     Defendants have acted or refused to act on grounds generally applicable to the classes, thereby making appropriate declaratory and injunctive relief with respect to the class as a whole.

### COUNT IV—Claim of Individual Plaintiff Aaron O'Neal
### FIRST AMENDMENT RETALIATION

81.     Plaintiff O'Neal realleges and reincorporates paragraphs 1-51 and as if fully set forth herein.

82.     The Free Exercise Clause of the U.S. Constitution provides that Congress "shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const., amend. 1. This guarantee applies to the states through the Fourteenth Amendment to the Constitution.

83.     The accommodation Defendants have denied to Plaintiff O'Neal is guaranteed to Plaintiff O'Neal under the First Amendment.

84.     When Plaintiff O'Neal filed grievances under DOC procedures and complained directly to Defendant Rojas that Plaintiff's First Amendment right to free exercise of religion had been violated, Defendant Rojas removed Plaintiff O'Neal from Cursillo, which substantially burdened Plaintiff O'Neal's religious worship.

85.     In doing so, Defendant Rojas retaliated against Plaintiff O'Neal for exercising Plaintiff O'Neal's First Amendment right to free exercise of religion.

86.     Plaintiff O'Neal has satisfied all legal, administrative, and procedural requirements for bringing an action alleging Defendant Rojas retaliated against Plaintiff O'Neal for asserting his rights under the First Amendment.

**WHEREFORE**, plaintiffs request that this Court enter the following relief in this cause:

i.      Accept jurisdiction of this case and set it for hearing.

ii.     As to Claims I-III the Court should enter judgment in favor of Plaintiffs and the class and against defendants for:

  a) Declaratory and injunctive relief;

  b) Certify a class action under Fed. R. Civ. P. 23 on behalf of all HCC prisoners as described above;

  c) Award plaintiffs their nominal damages against defendants in their individual capacities;

  d) Attorney's fees, litigation expenses and costs of suit;

  e) Such other and further relief as the Court deems proper.

iii.    As to Claim IV, the Court should enter judgment in favor of Plaintiff O'Neal and the class and against defendants for:

  a) Declaratory and injunctive relief;

  b) Attorney's fees, litigation expenses and costs of suit;

  c) Award plaintiff O'Neal his nominal damages against defendants in their individual capacities.

  d) Such other and further relief as the Court deems proper.

*/s/ Cassandra P. Miller*

Cassandra P. Miller

Daniel A. Edelman
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:   courtecl@edcombs.com

## CERTIFICATE OF SERVICE

I, Cassandra P. Miller, hereby certify that on December 18, 2018, I filed the forgoing document with the Clerk of the Court using the CM/ECF System, which caused to be sent notification of such filing to call counsel of record.

/s/Cassandra P. Miller
Cassandra P. Miller

Daniel A. Edelman
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

_____
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)