E-FILED
Tuesday, 07 April, 2020  05:27:01 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

AARON O'NEAL

    Plaintiff,

    vs.                                    Case No. 18-4063-SEM-TSH

MANUEL ROJAS, et al.,
    Defendant's.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

  NOW COME, Plaintiff, AARON O'NEAL, pro se, and pursuant to Federal Rule of Civil Procedure 56 and CDIL-LR 7.1(D), hereby submit his motion for summary judgment and provide the following memorandum of law in support thereof.

### INTRODUCTION

  Plaintiff filed his Complaint on March 28, 2018 pursuant to 42 U.S.C. § 1983. [Doc. 1] against Manuel Rojas, Robert Rodriquez, Joe LaHood, Freddie Britton, John Frost, Steve Gans, Stephanie Dorethy, Melissa Phoenix, and John Baldwin and concerns violations of Plaintiff's rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq., the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the Free Exercise Clause of the First Amendment to the United States Constitution, and Retaliation thereunder. Plaintiff's claims are brought nine (9) Defendant's, seven of which are Illinois Department of Corrections ("IDOC") employees, and two are Volunteers for the IDOC and are thus, agents of the IDOC..

1.

Plaintiff Aaron O'Neal ("Mr. O'Neal") entered Henry Hill Correctional Center ("HHCC") March of 2005 and declared his religious affiliation as "Catholic" on a IDOC form such as the form in Exhibit A and has regularly attended Catholic services ever since.

Mr. O'Neal's HHCC identification card identifies him as "Catholic" and according to Defendant's own policy, in Catholicism, the "Lenten season begins on Ash Wednesday and concludes on Holy Saturday (the day before Easter Sunday) ...During Lenten season, those 14 and older must abstain from meat all Fridays of Lent and also Ash Wednesday." Exhibits C. D. H-83

In February 2016, Mr. O'Neal complained to Defendant Rojas that Mr. O'Neal had been denied access to meatless meals on Lenten Fridays and Ash Wednesday despite Mr. O'Neal's request for the dietary accomodation during Lent. Mr. O'Neal stressed that the primary religious tenet for Catholics during Lent was meatless meals on Lenten Fridays. Defendant Rojas responded that he would "look into it," but never followed up with Mr. O'Neal.

Mr. O'Neal made numerous request to several other prison officials named in his complaint, either directly or through the grievance process, for a dietary accomodation of meatless meals on Ash Wednesday and Fridays during Lent in order to meet both his religious and dietary needs, to no avail.

On April 14, 2016, in accordance with HHCC policy, Mr. O'Neal submitted to HHCC a grievance against Defendant Rojas and the other named Defendant's ("O'Neal's April 2016 Grievance") Exhibit B. In his April 14 2016 Grievance(Exhibit B, pp. 4-11), Mr. O'Neal alleged First Amendment, Fourteenth Amendment, and RLUIPA violations based on the following facts, which he alleges in his complaint:

a. That Mr. O'Neal followed the procedures required to establish his religion with HHCC as "Catholic" and he is indeed an "active Catholic participant;"

b. That he, and other Catholic inmates,,,at [HHCC] for numerous years have been deprived an alternative meal during [Lent] which starts on Ash Wednesday and concludes on Easter Sunday...which prohibits [all] Catholics from consuming meat products on Fridays.";

c. The Dietary Department at HHCC, supervised by Defendant Britton, refused to accomodate alternative meals for Mr. O'Neal and other Catholics such as fish during Lent;

d. Mr. O'Neal spoke to the Dietary Department at HHCC about not having received the dietary accomodation, but was told that until Defendant Rojas

2.

provided the Dietary Department with a "needed list," there would be
no dietary accomodation. Mr. O'Neal then expressed that the Dietary
Department could and should instead refer to the back of each inmate's
indentification card, which shows inmates' religion, but that the
Dietary Department Supervisor, Defendant Britton, refused to do so, with
the stated reason that "if they...give those that state Catholic on the
back of their ID's alternative meals, and not those that don't[,] [it]
would be a form of discrimination.";

e. Mr. O'Neal alleges that Defendant Rojas should have prepared an alterna-
tive list for Lent to the Dietary Department but did not, depriving
Catholics from their proper Friday Lenten meals. That when Mr. O'Neal
approached Defendant Rojas alleging "indifference and discrimination
which has been pointed [specifically] at Catholic participants...at [HHCC],"
Defendant Rojas became visibly furious...and began to wag and point his
finger [in Mr. O'Neal's direction] in a menacing...fashion." That Mr.
O'Neal conveyed to Defendant Rojas that "[other] religious groups receive
what they [are entitled] to [,]" including "celebratory feasts after each
one of their tradition religious periods, but not [Catholics]" and that
Defendant Rojas responded that  Catholics "can have 'celebratory feasts'"
but that [the dietary issues] were "up to the Deacon" and not up to
Defendant Rojas;

f. That Mr. O'Neal conveyed the above exchange with Defendant Rojas to De-
fendant Rodriquez and O'tool (both Deacons). Other prisoners at HHCC had
also complained to the Deacons about Defendant Rojas' discrimination
against Catholics in the past;

g. That Cursillo/Ultreya ("Cursillo") is a Catholic service that takes place
every third Tuesday of each month which Mr. O'Neal ordinarily attends,
and that Defendant Rojas retaliated against Mr. O'Neal for his assertion
of his and others' right to the religious dietary accomodation by
taking Mr. O'Neal off of the Cursillo list, thus retaliatorily denying
him the right to worship.

h. That defendant Rojas has approved other religious dietary accomodation,
including for inmates who are Jewish, Muslim, Rastafarian, and Odinist,
but not for those who are Catholic, and;

i. That Defendant Dorethy has full knowledge of and approved of the conduct

3.

complained of and that Defendant Dorethy approved several other religious feasts at HHCC while denying the same to Catholics.

Examples of Defendants providing religious dietary accomodations to prisoners of other faith traditions include:

a. Allowing Muslim prisoners to eat at different times of the day than other prisoners during Ramadan. Feasting from dawn to sunset is a central and essential tenet of Islam.

b. Providing Kosher meals daily throughout the year to Jewish prisoners. Keeping Kosher is central and essential tenet of Judaism.

The unlawful behavior by Defendants described in Mr. O'Neal's April 14, 2016 Grievance continues up through the present.

On July 13, 2016, Defendant Frost transcribed a response to O'Neal's April 14, 2016 Grievance from Defendant Rojas, which stated, in part, that "Lent is an observance about giving up something that is important, not necessarily food." (Exhibit M). This does not reflect Mr. O'Neal's practice and understanding of Catholicism as expressed to numerous HHCC staff and officials, nor does it comport with HHCC's own policy regarding Lenten diatary restrictions. (Exhibit H). Moreover, during an investigation of Mr. O'Neal's Grievance at the initial phase Defendant Frost requested a statement from Defendant Rojas regarding Mr. O'Neal's allegations, instead of cooperating, Defendant Rojas provided Defendant Frost with a brief note stating that he was not speaking with anyone on the matter without his attorney present. Defendant Frost included Defendant Rojas' note with the counselors response and wrote in "Counselor's Response" section of the grievance; "See the attached response and include it with any further submissions of this grievance." (Exhibit M).

After receiving Defendant Rojas' July 13, 2016 rejection of Mr. O'Neals grievance and request for religious accomodations, Mr. O'Neal submitted his April 14, 2016 Grievance to Defendant Gans (HHCC Grievance Officer).

On August 4, 2016, Defendant Gans denied O'Neal's April 14, 2016 Grievance. (Exhibit O). And on August 4, 2016 Defendant Dorethy concurred with Defendant Gans' denial of his Grievance. (Exhibit O).

Mr. O'Neal subsequently appealed Defendant Gans' denial of O'Neal's April 14, 2016 Grievance. Defendant Phoenix and Defendant Baldwin affirmed Defendant Gans' denial of O'Neal's April 14, 2016 Grievance on March 7, 2017. Ex. Q.

4.

Defendant's have failed to provide the dietary accomodation that Mr. O'Neal requested. The Defendant's failre to provide these dietary accomodations has cause Mr. O'Neal to suffer physical harm; including fatigue, hunger pains, weight loss, and loss of sleep.

## STATEMENT OF UNDISPUTED FACTS

Defendant's Rojas, Dorethy, Britton, Frost, Gans, Phoenix, and Baldwin are employed by the Illinois Department of Corrections, and Defendant's LaHood and Rodriquez are State actors laboring under the color of state law as volunteers to the IDOC, (Declaration of Plaintiff) attached hereto as Exhibit #1 §§ 1-2.

2. Plaintiff transfered into Hill Correctional Center (HCC) from Stateville in 2005. Ex. 1 § 3.

When Plaintiff arrived at HCC he was a practicing Catholic and declared his religious faith as Catholic. Ex. 37 § 1.

4. Catholic's are required to give up something as a sacrament, such as meat, during Lent and Ash Wednesday. Ex. H-83 § 5 (Religious Practice Advisory Board Handbook on Religious Practice in IDOC); Doc. 000009 § 4.25.101. (E)(1).

5. During all times relevant to this complaint Mr. O'Neal requested meatless meals as a supplement to faithfully observe the Lenten tenets. Ex. #36 § 1.

6. The IDOC Religious Practice Advisory Board (RPAB) recognizes Lent as a Catholic observance/tenet and that the abstention from meat during the Lenten season for Catholic members ages 14 and older is recognized by the IDOC. Group Ex. H-82 §3 and H-83 § 5; Doc.#000054 § 425.70(a); Doc. #000009 § 4.25.101 (E)(1).

7. The IDOC RPAB has advocated a process by which a Catholic inmate may request a religious diet. Doc. 000050 § 425.40(a)(b)(1)(2)(B).

8. Each department of the IDOC has a copy of the RPAB handbook listing and detailing the the tenets of religious practices. Plaintiff's Ex. G, Administrative Directive 04.25.101(E)(3).

9. Plaintiff O'Neal requested that he be provided an meatless supplement to his dietary meals during the Lenten period; first by verbal and written request to Defendant Rojas, then verbally to Defendant Rodriques, and finally, in complaint form to Defendant's Frost, Gans, Dorethy, Phoenix, and Baldwin.

5.

Doc. #1, Compl. §§ 20-23; Ex. F Inmate Grievance; Doc. 1, Compl. §§ 32-34.

10. Defendant Rojas is required by IDOC protocol to know and understand the practices of religious faiths within the IDOC, specifically, HCC. Doc. 000005, §§ 2, 5; Doc. 000012, 04.25.101(F)(c)(2).

11. After Plaintiff O'Neal's repeated requests for Catholic's to be placed on the dietary list for supplemental meals during Lent, Defendant Rojas retaliated against Plaintiff by removing his name from the Catholic Cursisillo list, precluding him from attending that service. Ex. F, I , Inmate Grievance. Doc. #1, Compl. §§§ 35, 39, 40.

12. Subsequent to Plaintiff filing a grievance for the denial of a supplemental dietary meal, and retaliation Defendant Rojas responded to O'Neal in a memo stating that the reasons he removed him from the list was because Plaintiff had been attending Cursillo services the longest and that space was needed and therefore he was chosen, at that time, by Defendant Rojas to preclude him from attending that religious service. Doc. # 1, Compl §§§ 36-38.

13. Upon being asked by the counselor for HCC during his, Defendant Frost's investigation, for an explaination of Plaintiff O'Neal's allegation, Defendant Rojas stated reasons similar to what he had provided Mr. O'Neal in his memo, but went on to state that he would not answer any of 'his' (meaning O'Neal's questions) without legal representation, even though no legal actions had yet to be taken by Plaintiff. Ex. M.

14. Plaintiff O'Neal listed witnesses in his grievance to speak with regarding his allegations against Defendant Rojas to resolve the matter and supply him with the meatless diet he required during Lent. Ex. F, 1, 2, Inmate Grievance.

15. At no time during Plaintiff's grievance did either Defendant's Rojas, Frost, Gans, Dorethy, Phoenix, nor Baldwin confer with the IDOC RPAB Handbook or the RPAB itself in reoslving the issues in Plaintiff's grievance. Ex. O., & Q Grievance Officers report; See also, Doc. 000050, § 425.40 (a)(b)(1)(2)(A)(B).

16. Had either of the Defendant's, at anytime followed IDOC protocol and consulted with the RPAB the issue would have been resolved at the institutional level with no need for civil action.

17. Even though IDOC protocol states that a facility chaplain has the responsibility of approving and denying certain religious requests, including dietary request(Doc. 000014, § G(1)(a)), Defendant Rojas in his Response to

Plaintiff's Request for Admissions denied that it was his responsibility to approve or deny alternative religious meals. Defendant's Response to Admissions §§ 1, 2.; Doc. 000232; Ex. #3, Attached hereto, respectively.

18. Though stating that it is not his responsibility to approve or deny requests for religious diets, when confronted with the admission that he (Defendant Rojas) never sent Catholic inmates the required forms requesting meatless diet in observanve of Lent until 2018 (after Plaintiff filed suit) Defendant Rojas denied that 2018 was the only time he sent the required forms to Catholic inmates declaring their desire to receive a meatless substitute during the observance of the Lenten season. Defendantant's Response to Admissions § 3. Defendant Rojas further states that other religions at HCC are provided alternative meals consistentwith their religious practice. Def. Resp. to Adm. § 5; Doc. 000232; Ex. #3, Attached Herto, respectively.

19. The IDOC clearly recognizes prison inmates who are detained at their facilities, including HCC, right to practice, celebrate and observe each of their religious tenets, and said recognition includes Catholic inmates and their religious observances and makes no restriction simply because of their incarceration. Doc. 000054, § 425.70(a)(b)(c)(d)(e); Doc's 000009, 000010, 000011, 000012 §§§§ 04.25.101 (e)(1), (2)(a)(b)(c), (6)(4), and (F)(1)(c)(2); Group Ex.'s H-82, H-83, respectively.

20. Defendant's Frost, Gans, Dorethy, Phoenix, and Baldwin each disregarded IDOC protocol when investigating the denial of a religious request during the investigating process of Plaintiff's grievance. Doc. 000131, § Grievance Officer's Report et seq. (1)(2); Doc. 000126, Grievance Officer-504.820.

21. At neither level of the grievance process, from beginning through to appeals, Defendant's Frost, Gans, Dorethy, Phoenix nor Baldwin consulted with the RPAB, the RPAB handbook, nor either of the Catholic Church volunteers who provided volunteer services at HCC.

22. In response to Plaintiff's Request For Admissions that it is the general practice for Catholic's in a free society to practice Lent in connection with the dietary requirement of a meatless meal, Defendant LaHood stated, yes, but being incarcerated is an exception without clarifying why. Def. Resp. to Plain. Req for Adm. § 7. dated October 15, 2019. Attached Hereto.

23. In response to Plaintiff's Request For Admissions that it is the general practice for Catholic's in a free society to practice Lent in connection with

the dietary requirement of a meatless meal, Defendant Rodriquez stated, yes, but being incarcerated without clarafying why. Def. resp. to Plain Req for Adm. § 7, dated October 15, 2019. Attached Hereto.

24. Defendant LaHood's is of the belief that because an person is incarcerated that they forfeit their right to practice their tenet of observing the Lenten season;despite the fact that only Jesus Christ has the absolute authority to decide for an individual that his sacrament is no longer acceptable because that person is incarcerated/no longer redeemable. Def.Resp. to Plain 2nd set if Interrogatories, Jan. 23, 2020. §§ 10, 11. Hereto Attached.

25. Both, Defendant's LaHood and Rodriquez, would not, and indeed, could not, provide an explaination for why life long Catholics (due to their incarceration) are precluded from the support of the Catholic Church, and if, because of their incarceration their sacrament for Lent is less valuable to the Church than the sacrament of non-incarcerated persons. Def. Resp. to Plain. Interr. § 9, 10. Hereto Attached.

26. Defendant Britton failed to notify the Chaplaincy department that it had not supplied the dietary department with a list of those Catholic inmates who are approved for a meatless diet. Def. Resp. to Adm. §§ 1-9. hereto Attached.

27. Not one of the Defendant's made a good faith effort to clarify the actual status of Mr. O'Neal's religious rights by contacting any one of the 10 member panal of the RPAB, before nor after Plaintiff filed his grievance in an effort to resolve the issue, not only for himself, but for the entire Catholic Congregation at HCC. Def. Resp. to Plain Interr., Jan. 7, 2020. § 2, Def. Resp. Hereto Attached.

28. Finally, in the September 18, 2019 second set of plaintiff's request for interrogatories Defendant Frost states that he was not personally aware that Plaintiff O'Neal was removed from the list to participate in Cursillo when it is Defendant Frost who provided the grievance officer with Ex. M, of Defendant Rojas attempting to give a halfhearted explaination for why he did remove the Plaintiff from the Catholic Cursillo list. Hereto Attached September 18, 2019 Def. resp. to Plain 2nd set of Interr. And Req. for P.O.D. §§ Paragraph 10·11 Pages 3. 4.

ARGUMENT

I-Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, Summary
Judgment is proper if there is no genuine issue of material fact and the
moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P.
56(c). In evaluating a motion for summary judgment, the court must look beyond
the pleadings and assess the proof to determine whether or not there is a
genuine issue or need for a trial. Id. The party seeking summary judgment bears
the initial burden of proving there is no genuine issue of material fact may
meet his burden without coming forward with affirmative evidence to negate the
nonmoving party's claim, if it can show the nonmoving party has failed to
establish the existence of an essential element on which the nonmoving party
bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317,
322-23 (1986). The nonmoving party then must demonstrate by affidavit, depo-
sitions, answers to interrogatories, and admissions on file, there is agenuine
issue of material fact for trial. Celotex, 477 U.S. at 324-25. In determining
and evaluating a motion for summary judgment, the court views the evidence in
the light most favorable to the opposing party and draws all justifiable in-
ferrences in his favor. A mere scintilla of evidence in support of a party's
position is not sufficient to create a genuine issue of material facts.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

II-Religious Land Use and Institutionalized Person Act ("RLUIPA")

RLUIPA requires that the government shall not:

> impose a substantial burden on the religious exercise of a person
> residing in or confined to an institution...unless the government
> demonstrates that imposition of the burden on that person--
>> (1) is in furtherance of a compelling government interest; and
>> (2) is the least restrictive means of furthering and compelling
>>     governmental interest. 42 U.S.C. § 2000cc-1.

The plaintiff must produce a prima facie case showing that the government
practice is a substantial burden of Plaintiff's exercise of religion. Id.

9.

Although RULIPA does not provide a definition of "substantial burden," the Seventh Circuit has held it is a restriction "that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise... ...effectively impracticable." Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 761 (7th Cir. 2003). More specifically, "a prisoner's religious dietary practice is substantially burdened when the prison forces him to choose between his religious practice and adequate nutrition." Nelson v. Miller, 570 F.3d 868, 869 (7th Cir. 2009).

Once an inmate establishes "this prima facie case, the defendant's bear the burden of persuasion on any [other] element of the claim, namely, whether their practice is the least restrictive means of furthering a compelling governmental interest." Koger v. Bryant, 523 F.3d 789, 796 (7th Cir. 2008). The Seventh Circuit has ruled that government interest of controlling costs and managing the budget, preventing security risks, and a streamlined meal plan system are legitimate government objectives. Id. at 800 (requirement that religious prison clergy verify religious affiliation before providing nonmeat diet a legitimate concern); Al-Alamin v. Gramley, 926 F.2d 680, 686 (7th Cir. 1991) (quoting that both security and economic concerns are legitimate penological concerns).

In the cause now before this court there was no legitimate penological interest for the defendants to restrict Mr. O'Neal's exercise of his protected right to observe Lent and Ash Wednesday during the Lenten season. Moreover, there were no budgetary or security risk concerns where this Plaintiff, a Catholic, was concern,as the prison was providing dietary supplemental meals to other religious faith at the prison, prior to, during, since, and even now, the Plaintiff being house at Henry Hill Correctional Center. Therefore, there was absolutely no reason for the denial of Plaintiff and all other Catholic inmates at Hill a dietary supplemental, meatless meal durinig the brief yearly periods of Lent for no other reason than discrimination. The Illinois Department of Corrections has well established directives in place to prevent the discrimnation of religious practice, an d reenforced by the establishment of a ten member Religious Practice Advisory Board for such circumstances as that of which Mr. O'Neal was exposed to. From the least to the highest position of the IDOC those directives were ignored by each of the defendant's. Thus, the Defendant's had a duty to protect Plaintiff's constitutional right to religious freedom and each of them failed to do so.

III-Plaintiff Is Entitled To Summary Judgment As To all Claims:


For any claim brought under 42 US.C. 1983 the plaintiff must demonstrate
a casual connection between (1) The sued officials and (2) the alleged
misconduct. Carmody v. Board of Trustees of the University of Illinois, 893
F.3d 397, 401 (7th Cir. 2018). In other words, to prevail on his claim,
plaintiff must show that the names defendant's had "personal involvement"
in the alleged deprivation of rights. Id. Summary judgment in favor of a
defendant is appropriate where a plaintiff cannot show that defendant per-
sonally participated in the alleged deprivation or that the deprivation occured
at the defendant's direction or express consent.Id. See also DeLapaz v.
Richardson, 634 F.3d 895, 900 (7th Cir. 2011). Here, the deprivations occurred
through the personal participation and direction of each of the IDOC defendant's
and at the express consent of defendant's LaHood and Rodriques.Moreover, both
sets of defendant's concurred to not providing plaintiff a Lent
meal in their response to the complaint. (Doc's. #36, #37 ).Attached
hereto

IV-First Amendment:


To prevail on a free exercise claim, a plaintiff begins by showing that the
government placed a substantial burden on his observation of a central re-
ligious belief or practice. hernandez v. C.I.R., 490 U.S. 680, 699, 109 S.Ct.
2136 (1989). The burden then shifts to the government. While the bar is
normally whether a compelling government interest justifies the burden, in
the interest of affording significant deference to prison officials, courts
permit prison regulations that are reasonably related to legitimate penolo-
gical interests. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987).
Consequently, there was not legitimate penological interest for not allowing
plaintiff to observe the Lenten season when the IDOC itself was in support
of this observance through their Administrative Regulations.

Parentheticall, with respect to a First Amendment Claim of retaliation
specifically, plaintiff must prove an act taken in retaliation for exer-
cing a protected right violates the constitution. Dewalt v. Carter, 224
F.3d 607, 618 (7th Cir. 2000), citing Mt. Healthy City School Dist. Bd. of
Education v. Daye, 429 U.S. 247, 283-84 (1997). Prison employees may not

retaliate against inmates for complaining about their conditions of con-
finement. See, e.g. Walker v. Thompson, 288 F.3d 1005 (7th Cir. 2002);
Babcock v. White, 102 F.3d 267 (7th Cir. 1996); Cain v. Lane, 857 F.2d 1139
(7th Cir. 1988). Plaintiff must prove: (1) that he engaged in activity pro-
tected by the First Amendment; (2) he suffered a deprivation that would
deter First Amendment activity; and (3) that the First Amendment activity
was at least a motivating factor behind defendant's retaliation. Springer v.
Durfinger, 518 F.3d 479, 483 (7th Cir. 2008). See also Kidwell v. Eisenhauer,
679 F.3d 957 (7th Cir. 2012); bridges v. Gilbert, 557 F.3d 541, 547 (2008).
Such evidence require that the defendant acted with retaliatory animus. See
Goodloe v. Sood, 2020 U.S. App.LEXIS 1574 (7th Cir. 2020).

Plaintiff's First Amendment claim rests on the allegation that he was
removed from the list for attending the Cursillo Catholic service after
repeated inquiries to Defendant Rojas for why Catholics were not being pro-
vided the right to observe there tenet of Lent the same as other religios at
the prison were provided their rights to observe their tenets, some of which
included daily/yearly dietary supplements. Defendant Rojas' own admission
early on was that he removed plaintiff because of space availity, and when
confronted with the question of why he removed plaintiff from the Catholic
service, stated he did not remove the plaintiff from the list. This response
in the face of an admission speaks volumes of the credibility of defendant
Rojas; not to mention him being a man of the cloth.

It is for all the aforestated reason that the defendant's in this claim
knew or should have known they were violating clearly established laws that
protected the right of Catholic's at Henry Hill to observe the Lenten season
and those defendant's continue to do so up til the filing of this motion.

WHEREFORE, Plaintiff, Aaron O'Neal ask this Honorable court to grant
summary judgment in his favor by finding that there are no genuine issues of
material fact to be resolved by a jury and grant the relief requested in the
Complaint.

Date: April 7, 2020

MR. AARON O'NEAL, N53022
HENRY HILL CORR, CNTR.
P.O. BOX 1700
GALESBURG, IL. 61401.
Respectfully Submitted

/s/ Aaron O'Neal

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| AARON O'NEAL<br>PRO SE<br>PLAINTIFF | No. 18-CV-4063 |
| VS. | Judge Sue E. Myerscough |
| MANUEL ROJAS Et.Al.,<br>DEFENDANTS | Magistrate Judge Tom<br>Schanzle-Haskins |

# EXHIBITS ATTACHED HERETO RESPECTIVELY

ILLINOIS DEPARTMENT OF CORRECTIONS
**ADMINISTRATIVE DIRECTIVE**
04. 25. 101

No. 000005 **CMS**  ILLINOIS DEPARTMENT OF    POSITION
CENTRAL MANAGEMENT SERVICE  DESCRIPTION

No. 000009   ILLINOIS DEPARTMENT OF CORRECTIONS
ADMINISTRATIVE DIRECTIVE

No. 000010   ILLINOIS DEPARTMENT OF CORRECTIONS
ADMINISTRATIVE DIRECTIVE

No. 000011   ILLINOIS DEPARTMENT OF CORRECTIONS
ADMINISTRATIVE DIRECTIVE

No. 000012   ILLINOIS DEPARTMENT OF CORRECTIONS
ADMINISTRATIVE DIRECTIVE

No. 000014       ILLINOIS DEPARTMENT OF CORRECTIONS
                   ADMINISTRATIVE DIRECTIVE

No. 000050       JOINT COMMITTEE ON ADMINISTRATIVE RULES
                   ADMINISTRATIVE CODE 425.40

No. 000054       JOINT COMMITTEE ON ADMINISTRATIVE RULES
                   ADMINISTRATIVE CODE 427.00

No. 000126   DR 504 GRIEVANCE PROCEDURES   GRIEVANCE OFFICER
                                           504.820

No. 000131     GRIEVANCE OFFICER'S REPORT

No. 000232   ILLINOIS DEPARTMENT OF CORRECTIONS
               OFFENDER REQUEST FOR RELIGIOUS
               DIET.

**\* SUBJECT OF UNDISPUTED FACTS PARAGRAHS LISTED BELOW \***

4. DOC# 000009 § 4.25.101.(E)(1)

6. DOC# 000054 § 425.70 (a): DOC# 000009 § 4.25.101(E)(1).

7. DOC# 000050 § 425.40 (a)(b)(1)(2)(B).

8. ADMINISTRATIVE DIRECTIVE 04.25.101(E)(3).

10. DOC# 000005 §§ 2, 5; DOC# 000012, 04.25.101(F)(c)(2).

15. DOC# 000050 §§ 425.40 (a)(b)(1)(2)(A)(B).

2.

17. DOC.# 000014, § G(1)(a)), # DOC. 000232

18. DEFENDANT'S RESPONSE TO ADMISSION § 5; DOC.# 000232

19. DOC.# 000054, § 425.70 (a)(b)(c)(d)(e); DOC.'s # 000009, 000010, 000011, 000012 §§§§ 04.25.101 (e)(1), (2)(a)(b)(c), (6)(4), and (F)(1)(c)(2); Group Ex.'s H-82, H-83, respectively.

20. DOC.# 000131, § GRIEVANCE OFFICER'S REPORT et seq (1)(2); DOC.# 000126, GRIEVANCE OFFICER — 504.820

* Defendant Rojas's Response To Plaintiff's Request For Admissions : September 18, 2019

* Defendant Rojas's "State Of Illinois Memo" to Plaintiff O'Neal acknowledging Having Removed Plaintiff From Attending Cursillo Catholic Service : March 18, 2016. Exhibit I.

* Defendant Rojas's "RESPONSE" To Defendant Frost's Investigative Report Of Plaintiff's O'Neal Grievance Allegations, which Defendant Frost transcribed: July 13, 2016. Exhibit M.

3.

* Defendant Rojas's : Illinois Department Of Correc-
tions MEMORANDUM , "SUBJECT RELIGIOUS
DIET REQUESTOR FORMAL LETTER"... Stat-
ing to, it must be received by January 20, 2018
Attachments: DOC 0388 (Copy).

* Defendant Rojas's actual "Offender Request For
Religious Diet Form" which Plaintiff Xerox Copied
on January 19, 2018, in which Plaintiff O'Neal
tendered to The Office Of Henry Hill C.C.
Chaplaincy Department (1) day before meeting
its expiration date of : January 20, 2018.

* Defendant's Rojas, Dorethy, Nor The Dietary
Food Manager Of Henry Hill C.C. would ever
sign ones signature to : "The Offender
Request For Religious Diet Form"... for
thee Original Form After Having Been Turn
Into The Chaplaincy Department was
Never returned A Copy To Plaintiff O'Neal
As To Either Approving OR Denying Such
Sought Out Request.

* Defendants JOE LAHOOD AND ROBERT RODRIGUEZ
RESPONSE TO PLAINTIFF'S INTERROGATORIES
AND REQUEST FOR PRODUCTION OF DOCUMENTS

4.

(Received 10/15/19). Issued to Plaintiff on **1/23/20**

\* Defendants JOE LAHOOD AND ROBERT RODRIGUEZ, RESPONSE TO PLAINTIFF'S SECOND SET OF INTERROGATORIES AND PRODUCTION OF DOC-UMENTS (Received **9/23/19**). Issued to Plaintiff on **1/23/2020**.

\* DEFENDANT BRITTON'S RESPONSE TO PLAIN-TIFF'S REQUEST FOR ADMISSIONS SERVED SEPTEMBER 18, 2019 : Pages 1 of 3

\* DEFENDANT BRITTON HEREBY ADMITS IN HIS (BRITTON'S) RESPONSE TO PLAINTIFF'S RE-QUEST FOR ADMISSION ANSWERS PAGE **2**, and PAGES **3**, as to Plaintiff personally asking Defendant Britton To Be Fed a Non-meat Religious Lent Accommodation... and Defendant Britton's "<u>REFUSAL</u>" to pro-vide the Plaintiff with his highly requested religious tent Non-meat Lent Accommodation

\* Defendant Britton further "<u>CONCURRING</u>" with Plaintiff O'Neal, after having check to see if there ever was a list to feed Plaintiff O'Neal or any other practicing CATHOLIC Of Henry

**5.**

Hill C.C. with a Non-Meat Religious Lent Meal Accommodation? Defendant Britton Answered (NO)... there was no list for a CATHOLIC meal. Defendant Britton's Admissions Page. 2 served on September 18, 2019.

* DEFENDANT JOHN BALDWINS RESPONSE TO PLAINTIFF'S SECOND SET OF INTERROGA-TORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS SERVED SEPTEMBER 18, 2019. Issued to Plaintiff on 1/7/2020

* DEFENDANT FROST'S RESPONSE TO PLAINTIFF'S SECOND SET OF INTERROGATORIES AND RE-QUEST FOR PRODUCTION OF DOCUMENTS SERV-ED SEPTEMBER 18, 2019. Issued to Plaintiff on 12/30/2019.

* Defendants MANUEL ROJAS, STEPHANIE DORETHY, FREDDIE BRITTON, JOHN FROST, STEVE GANS, MELISSA PHOENIX-PELKER, and JOHN BALDWIN, ALL "CONCURRING" with Plaintiff O'Neal as To being CATHOLIC and having to be served a meatless meal on Fridays during Lent. ANS-WER AND AFFIRMATIVE DEFENSES... Served on to Plaintiff O'Neal on August 30, 2018 DOC# 36

6.

\* DEFENDANTS JOE LAHOOD AND ROBERT RODRIGUEZ
too... also "CONCURRING" with Plaintiff O'Neal
in their ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFF COMPLAINT: As to being CATHOLIC
and having previously requested to be served a
meatless meal on Fridays during Lent. Served
on to Plaintiff O'Neal on August 31, 2018. DOC#37

Date: _____

Aaron O'Neal

Aaron O'NEAL
N53022
HENRY HILL C.C.
P.O. BOX 1700
GALESBURG, IL.
  61401.

7.



Illinois Department of
CENTRAL MANAGEMENT SERVICES

POSITION DESCRIPTION

| 1. POSITION TITLE | WORKING TITLE (IF ANY) | Bilingual Code | Postion Title Option Code | 2. POSITION NUMBER | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Existing Position | | | | | | | | | |
| New/Revised Position | | | | | | | | | |
| Chaplain II | | 29 | SS | 06902-29-98-220-00-13 | | | | | |
| 3. AGENCY | 4. BUREAU/ DIVISION | | | 5 EXMT CODE | 6 WORK COUNTY | 7 AN AUTH | 8 AUDIT | | 9 OFFICE USE |
| Existing Position | | | | | | | | | |
| New/Revised Position | | | | | | | | | |
| Corrections | Hill Correctional Center | | | 4B | 048 | N | R | | |
| 10. SECTION | 11. UNIT | | | 12 TRANSACTION CODE | | | 13 EFFECTIVE DATE | | |
| Existing Position | | | | | | | 7-1-14 | | |
| New/Revised Position | | | | | | | | | |
| Programs | Chaplaincy | | | | | | | | |
| 14. WORK LOCATION | 15. BARGAINING/TERM CODE | | Rutan Exempt | ☐ MA021  ESTABLISH | | | | | |
| Existing Position | | | | ☐ MC022  EXEMPT CODE CHANGE | | | | | |
| | | | | ☐ MC024  POSITION NUMBER CHANGE | | | | | |
| | | | | ☒ MC026  CLARIFY | | | | | |
| | | | | ☐ MC027  ADDITIONAL IDENTICAL CHANGE | | | | | |
| | | | | ☐ MC028  WORK COUNTY CHANGE | | | | | |
| | | | | ☐ MD021  ABOLISH | | | | | |
| New/Revised Position | | | | ☐ MC149  DOWNWARD REALLOCATION | | | | | |
| Knox County | RC-063 | | N | ☐ MC150  LATERAL REALLOCATION | | | | | |
| | | | | ☐ MC158  UPWARD REALLOCATION | | | | | |

| % OF TIME | 16. COMPLETE, CURRENT AND ACCURATE STATEMENT OF POSITION ESSENTIAL FUNCTIONS |
|---|---|
| | Under administrative direction of the Asst. Warden of Programs, Sr. Public Service Admin, functions as Facility-head Chaplain; coordinates as a full-scale inter-faith religious program at the Correctional Center, provides arranges and coordinates adequate religious services, pastoral care and religious counseling for the entire inmate population; monitors provisions of contractual agreement.  Translates functions and procedures into Spanish for those individuals who cannot speak or read Spanish. |
| 20% | 1. As Facility- head Chaplain; directs and coordinates the work of all Chaplains and other assigned volunteer program personnel; conduct staff meetings to promote individual growth and to handle complaints and suggestions. |
| 20% | 2. Determines general goals, philosophies, policies and procedures for the institutional chaplaincy program and integrates these objectives with those of other services and programs; prepares reports and correspondence pertaining to chaplaincy area; updates Chaplaincy Manual; plans and directs weekly schedule of chapel activities in unison with other institutional programs; participates in gathering data and assists in preparing the budgets for the chapel area. |
| 15% | 3. Conducts individual and group counseling sessions for inmates; works closely with counseling staff assisting in problem areas of inmates; conducts orientation for newly arrived inmates; conducts regular visits to various areas of the facility, e.g., segregation, medical unit and orientation unit, assisting inmates and advising supervisor on issues.  Prepares and conducts formal religious services, sacramental rites and workshop services. |
| 10% | 4. Fills outside speaking engagements; conducts tours and other public relations functions; participates in community affairs and organizations as they relate to the ministry of the institution either for public relations or professional growth, including in-service training, inter-departmental, intra-departmental meetings; recruits, and trains community volunteers. |
| 10% | 5. Meets with Asst. Warden of Programs to review the activities of the chaplain area; prepares proposals for program expansion in this area; verifies manuals, department rules, Administrative Directives and Institutional Directives are current and in compliance. |

| DIRECTOR OF CMS SIGNATURE | IMMEDIATE SUPERVISOR SIGNATURE | AGENCY HEAD SIGNATURE | DATE |
|---|---|---|---|
| Simone McNeil | | | 9/5/14 |

CMS-104 (Rev 10/94) IL 401-0794          27

Rick Mayer 9/5/14



| | Illinois Department of Corrections |  |
|---|---|---|
| | **Administrative Directive** | |
| Number:<br>**04.25.101** | Title:<br>**Chaplaincy Services** | Effective:<br>**6/1/2018** |

| Authorized by: | |
|---|---|
| | *[Original Authorized Copy on File]*     **John R. Baldwin**<br>Acting Director |
| **Supersedes:** | 04.25.101 effective 5/1/2014 |

| Authority:<br>730 ILCS 5/3-2-2 and 3-7-2<br>20 IAC 425 | Referenced Policies:<br>DR 425 | Referenced Forms:<br>DOC 0536 - Religious Affiliation Sincerity Assessment |
|---|---|---|

I.    **POLICY**

The Department shall employ chaplaincy staff and permit religious program volunteers, as authorized by the Chief Administrative Officer, to oversee religious activities conducted at correctional facilities.

II.   **PROCEDURE**

A.    **Purpose**

The purpose of this directive is to establish written instructions to staff regarding chaplaincy services.

B.    **Applicability**

This directive is applicable to all correctional facilities within the Department.

C.    **Facility Reviews**

A facility review of this directive shall be conducted at least annually.

D.    **Designees**

Individuals specified in this directive may delegate stated responsibilities to another person or persons unless otherwise directed.

E.    **General Provisions**

1.    The Director shall appoint a Religious Practice Advisory Board to provide guidance to the Department regarding religious activities, to recommend changes in policies relating to religion and to review and make recommendations to the Director regarding religious issues in accordance with Department Rule 425.

    a.    The Board shall consist of at least seven individuals, including:

        (1)    At least three staff chaplains, representing at least three different religious affiliations; and

        (2)    Administrative staff.

        **NOTE:** Legal staff representatives shall serve as advisors to the Board.

    b.    The Director shall designate a chairperson, normally the Chief Chaplain, who shall maintain a list of religious faith groups and legal advisors from whom the Board may seek advice on religious issues.

| | Illinois Department of Corrections<br>Administrative Directive | Page 2 of 4 |
|---|---|---|
| Number:<br>04.25.101 | Title:<br>Chaplaincy Services | Effective:<br>6/1/2018 |

  c. The composition of the Board shall be reviewed at least annually, and the Director may appoint or reappoint members.

 2. The Religious Practice Advisory Board shall ensure an informational Chaplaincy Handbook, approved by the Director, is maintained and distributed to each facility. However, such approval shall not constitute endorsement or recognition of the designated religions or their activities. The handbook shall be reviewed at least annually, and shall be updated as necessary. The handbook, that shall act as a guide and not an authoritative source, may include:

  a. The main tenets of various religions, including rites and rituals self-reported by offenders;

  b. A listing of known religious holidays, their observances and work proscriptions; and

  c. Any known special diet, clothing or other religious articles required for the practice of the religious faiths included in the handbook.

 3. The Director shall designate a Chief Chaplain whose responsibilities may include:

  a. Establishing training programs for chaplains and religious program volunteers from the community;

  b. Scheduling and coordinating statewide chaplaincy programs or seminars as authorized by the Director;

  c. Providing guidance and advice to the Agency's Chaplaincy Program, the facility chaplains and the Chief Administrators concerning current and future policies;

  d. Directing expanded and enhanced facility programs and objectives statewide;

  e. Collaborating with interfaith agencies; and

  f. Overseeing training for the facility Chaplain I and Chaplain II positions, statewide.

 4. The Chief Administrative Officer (CAO) of each facility shall designate a Chaplain II as the Senior Chaplain who shall:

  a. Serve as the principal advisor to the CAO;

  b. Design and direct an accommodated multi-faith program within the facility;

  c. Schedule and coordinate approved religious activities at the facility, including identifying potential resources for conducting the activities. In scheduling approved religious activities, the following factors shall be considered, but not be limited to:

   (1) Availability of staff, time and space;

   (2) The need to proportionately share the available time and space among accommodated religious groups;

   (3) Safety and security concerns; and

   (4) Other scheduled activities at the facility.

  d. Prepare and submit a current schedule of all religious services and programs offered at the facility to the CAO for approval. The schedule shall contain the time, date, type and location of the activity. Any amendments to the schedule shall be

O'Neal v. Rojas, 18-4063 (C.D. Ill.) Document No. 000010

| | Illinois Department of Corrections<br>Administrative Directive | Page 3 of **4** |
|---|---|---|
| Number:<br>04.25.101 | Title:<br>Chaplaincy Services | Effective:<br>6/1/2018 |

submitted to the CAO for approval.  The approved schedule shall be made accessible to offenders.

e. Ensure Chaplaincy staff make regular rounds at the facility, including regular visits to any special housing unit such as the segregation unit.

5. Unless otherwise approved by the Senior Chaplain, offenders who are in general population, or who are otherwise approved by the CAO, may only be permitted to attend regularly scheduled, non-denominational and inter-denominational religious activities or religious activities for a specific faith group with which the offender has a designated affiliation.

    a. An offender's self-reported designated religious affiliation shall be entered in Offender 360 (O360) upon admission to the Department.  An offender may choose to designate no affiliation.  Self-reported designated religious affiliations do not constitute endorsement or recognition of that religion by the Department.

    b. If the designated religious affiliation is not currently available in Offender 360, the Senior Chaplain shall forward the designation request to the Religious Practice Advisory Board for review and recommendation.

    c. After orientation, the designation may only be changed, or affiliation added, in O360 as approved by the Senior Chaplain of the offender's parent facility.

    d. The Senior Chaplain may conduct a personal interview with the offender to assess the sincerity of the request to change the offender's religious affiliation.  The Senior Chaplain may refuse to change the affiliation if he or she determines that the change is being requested for other than religious reasons.  The Religious Affiliation Sincerity Assessment, DOC 0536, may be used to assist in determination.

6. Facility Chaplains shall:

    a. Provide for religious services on a regular basis and on specific religious holidays.

    b. Provide religious counseling at the request of offenders, staff or family members of offenders concerning their spiritual, social and family problems as determined necessary and appropriate, regardless of the person's religious beliefs or affiliation.

    c. Serve as a liaison between the facility and community religious organizations.

    d. Develop and conduct or facilitate educational and instructional religious programs.

    e. Coordinate the administration of religious rites, where appropriate.

    f. Provide offender orientation regarding:

        (1) Basic services available through the Chaplaincy Office;

        (2) The schedule of religious activities;

        (3) The procedure for attending services and contacting chaplaincy staff; and

        (4) The process for making religious requests.

    g. Have access to all offenders, regardless of their classification or status, and to all areas of the facility, including special housing units.

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

Aaron O'Neal
_____
Plaintiff/Petitioner  PRO SE

Vs.

MANUEL ROJAS ET.AL.,
_____
Defendant/Respondent

)
)
)
)  No. 18-CV-4063-SEM-TSH
)
)
)

## PROOF/CERTIFICATE OF SERVICE

THE CLERK OF THE U.S. DISTRICT COURTHOUSE 151 U.S. COURTHOUSE 600 E. MONROE ST. SPRINGFIELD, IL. 62701

TO: KWAME RAOUL
ATT. MR. CLAYTON J. ANKNEY
ATT. GENERAL STATE OF ILLINOIS
500 S. SECOND ST. SPRINGFIELD, IL.
62701

TO: HEYL, ROYSTER, VOELKER, & ALLEN
MR. DAVID A. PERKINS
300 HAMILTON BOULEVARD
P.O. BOX 6199 PEORIA, IL.
61601-6199

1. DECLARATION IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT. 1 THRU 3

2. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT 1 THRU 12
   DEFENDANT ROJAS RESPONSE TO PLAINTIFF'S REQUEST FOR ADMISSIONS 4-PAGES 1+16
3. ATTACHED MEMORANDUM REQUEST FORM LETTER + OFFICIAL OFFENDER REQUEST FOR RELIGIOUS DIET
   FORM. ALSO : (13-PAGES OF ADMINISTRATIVE DIRECTIVES/ 04.25.104 & OTHERS)
4. DEFENDANTS JOE LAHOOD AND ROBERT RODRIGUEZ RESPONSE TO PLAINTIFF'S INTER.
   AND REQUEST FOR PRODUCTION OF DOCUMENTS (RECEIVED 10/15/2019 AND SECOND SET OF
   INTERROGATORIES AND PRODUCTION OF DOCUMENTS (RECEIVED 9/23/2019, THOUGH ANSWER-
5. RED TO ON 1/23/2020 6-PAGES 1+11
   DEFENDANT FREDDIE BRITTON RESPONSE TO PLAINTIFF'S REQUEST FOR ADMISSIONS
   SERVED SEPTEMBER 18, 2019 3-PAGES 1+10, DEFENDANTS BALDWIN'S RESPONSE TO PLAINTIFF'S
6. REQUEST FOR INTER & P.O.D. SERVED OCTOBER 9, 2019 & ANSWERED ON 1/6/2020 DELIVERED 1/7/2020
   DEFENDANT JOHN FROST RESPONSE TO PLAINTIFF'S SECOND SET OF INTERR. AND REQUEST FOR P.O.D.
   SERVED SEPTEMBER 18, 2019 5-PAGES EXECUTED ON DECEMBER 30, 2019, MAILED JANUARY 3, 2020
   DOC#36, DOC#37, AUGUST 30, 2018 & AUGUST 31, 2018, ADMISSION TO HAVING NOT FED PLAINTIFF.

PLEASE TAKE NOTICE that on ___APRIL 7th___, 20_20_ I placed the attached or enclosed documents in the institutional mail at ___HENRY HILL___ Correctional Center, properly addressed to the parties listed above for mailing through the United States Postal Service.

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5 1-109, I declare, under penalty of perjury, that I am a named party in the above action, that I have read the above documents, and that the information contained therein is true and correct to the best of my knowledge.

Dated: April 7, 2020

/s/ Aaron O'Neal

Name: MR. AARON O'NEAL

IDOC# N53022

Address: P.O. BOX 1700 HENRY HILL C.C.
GALESBURG, IL.
61401