E-FILED
Tuesday, 07 April, 2020  05:27:02 PM
Clerk, U.S. District Court, ILCD

| Illinois Department of Corrections **Administrative Directive** | | |
|---|---|---|
| Number: 04.25.101 | Title: Chaplaincy Services | Effective: 6/1/2018 |

7. Each facility shall set aside a specific area, wherever feasible, such as a chapel, for religious activities. Religious symbols shall be covered or removed during religious activities for a faith which does not recognize such symbols. The religious activity area shall not contain any permanent or fixed religious symbols that cannot be covered or removed. Each facility shall provide an area to store religious materials for conducting religious activities.

F. **Offender Requests for Religious Accommodations**

1. The Senior Chaplain or facility chaplain shall review any offender requests regarding religious issues in accordance with Department Rule 425. This may include, but not be limited to, requests to:

   a. Meet with a chaplain or a religious program volunteer;

   b. Schedule a specific religious activity;

   c. Obtain approval for an alternative diet based on documented, sincerely held religious beliefs;

   d. Attend religious activities outside the offender's faith or change religious affiliation;

   e. Be relieved from an institutional program or assignment for a specific religious purpose; or

   f. Obtain religious articles and materials, including audio recordings not obtained directly from an approved manufacturer, retailer or distributor.

2. The Senior Chaplain shall ensure documentation is maintained of approval or disapproval of responses to religious requests.

G. **Requests to the Religious Practice Advisory Board**

The Chairperson of the Religious Practice Advisory Board shall review requests of a religious nature that have been referred to the Board and determine the course of review.

1. The request may be assigned to one or more Board members for review and recommendation.

2. The Board shall confer with religious leaders of other faith groups when it is determined necessary.

3. The Chairperson shall submit the recommendation to the individual who referred the request.

| | Illinois Department of Corrections **Administrative Directive** | Page 3 of 4 |
|---|---|---|
| Number:  04.25.101 | Title:  Chaplaincy Services | Effective:  6/1/2018 |

submitted to the CAO for approval.  The approved schedule shall be made accessible to offenders.

e.     Ensure Chaplaincy staff make regular rounds at the facility, including regular visits to any special housing unit such as the segregation unit.

5.     Unless otherwise approved by the Senior Chaplain, offenders who are in general population, or who are otherwise approved by the CAO, may only be permitted to attend regularly scheduled, non-denominational and inter-denominational religious activities or religious activities for a specific faith group with which the offender has a designated affiliation.

a.     An offender's self-reported designated religious affiliation shall be entered in Offender 360 (O360) upon admission to the Department.  An offender may choose to designate no affiliation.  Self-reported designated religious affiliations do not constitute endorsement or recognition of that religion by the Department.

b.     If the designated religious affiliation is not currently available in Offender 360, the Senior Chaplain shall forward the designation request to the Religious Practice Advisory Board for review and recommendation.

c.     After orientation, the designation may only be changed, or affiliation added, in O360 as approved by the Senior Chaplain of the offender's parent facility.

d.     The Senior Chaplain may conduct a personal interview with the offender to assess the sincerity of the request to change the offender's religious affiliation.  The Senior Chaplain may refuse to change the affiliation if he or she determines that the change is being requested for other than religious reasons.  The Religious Affiliation Sincerity Assessment, DOC 0536, may be used to assist in determination.

6.     Facility Chaplains shall:

a.     Provide for religious services on a regular basis and on specific religious holidays.

b.     Provide religious counseling at the request of offenders, staff or family members of offenders concerning their spiritual, social and family problems as determined necessary and appropriate, regardless of the person's religious beliefs or affiliation.

c.     Serve as a liaison between the facility and community religious organizations.

d.     Develop and conduct or facilitate educational and instructional religious programs.

e.     Coordinate the administration of religious rites, where appropriate.

f.     Provide offender orientation regarding:

(1)     Basic services available through the Chaplaincy Office;

(2)     The schedule of religious activities;

(3)     The procedure for attending services and contacting chaplaincy staff; and

(4)     The process for making religious requests.

g.     Have access to all offenders, regardless of their classification or status, and to all areas of the facility, including special housing units.

# CATHOLIC

## 1. THEOLOGY/BELIEFS/BASIC TEACHINGS

Catholics are Christians who believe that their baptism into the death and resurrection of Jesus Christ joins them to a community on earth, which is the church. The faith centers on the belief that Jesus Christ was sent by God to be their Redeemer. As a community they gather and celebrate this belief through the Mass with a Eucharist/ Communion. In the Mass, the faithful with the presiding priest or bishop participate in the proclamation and hearing of the Word of God and in the offering and reception of the Body and Blood of Christ, whom Catholics believe is really present under the appearance of bread and wine.

As an organization, the Catholic Church is made up of parishes under priest pastors which are grouped in dioceses under Bishops or Archbishops. The Catholic Church is lead by the Pope, as a successor of Peter, and Cardinals and Bishops appointed by the Pope. A Pope is deemed infallible when issuing declarations on matters of faith.

The beliefs of the Catholic Church are summarized in a creed, called The Apostles' Creed, which is recited at each Mass.

## 2. HOLY DAYS/CELEBRATIONS/ FEAST

Holy days include all Sundays and the following special liturgical days, called Holy Days of Obligation:

| | |
|---|---|
| December 25 | Feast of the Nativity (Christmas) |
| November 1 | All Saints Day |
| 40 days after Easter | Feast of the Ascension |
| August 15 | Feast of the Assumption |
| December 8 | Feast of the Immaculate Conception of the Blessed Mother |
| January 1 | Feast of Solemnity of Mary |

Some ethnic groups may celebrate saints' feast days that are significant to them. Such feasts should be addressed on a case-by-case basis.

Also celebrated are the special seasons of Advent and Lent. Advent, which begins each year on the fourth Sunday before Christmas, is a time of both penance and anticipation in preparation for the birth of Christ. The Lenten season begins on Ash Wednesday and concludes on Holy Saturday (the day before Easter Sunday). Ash Wednesday is observed as the first day of the Lent. On this day, Catholics receive blessed ashes to remind them of their own mortality as they begin the penitential season of Lent. Blessing and distribution of palms occurs on Palm Sunday, which is the Sunday preceding the Feast of the Resurrection (Easter Sunday).The last week in Lent, called Holy Week, commemorates the passion and resurrection of Christ. Holy Thursday commemorates the anniversary of the Last Supper, Good Friday commemorates the death of Christ on the cross, and Holy Saturday anticipates Christ's resurrection. Easter Sunday is the most solemn annual feast day and considered the center of the liturgical year.

### 3. HOLY BOOK/SACRED WRITING

The Holy Bible (the most frequently used versions would be the New American Bible and the revised standard version-Catholic Edition). A Missal, which includes prayers and readings for daily mass and other devotions.

### 4. SERVICE/WORSHIP

All Catholics have the obligation of attending Mass on all Sundays (52 Sundays each year) and on the listed 6 Holy Days of Obligation. There is no obligation to attend mass when the Feasts of Solemnity of Mary, Assumption or All Saints Day fall on a Saturday or Monday.
Sacraments:

There are 7 Sacraments which are: 1. Sacrament of Baptism, 2. Sacrament of Penance or Reconciliation (Confession), which must be received at least once a year if one has serious sin to confess, 3. Sacrament of Holy Communion, 4. Sacrament of Confirmation, 5. Sacrament of Marriage, 6. Sacrament of Holy Orders (ordination as a priest), and 7. Sacrament of Anointing of the Sick.

Catholics practice infant baptism. Any adult seeking admission to the Catholic Church must go through a period of formation called the Rite of Christian Initiating of Adults (RCIA), which is a four staged journey of conversion.

### 5. DIET

There are no general food restrictions. During the Lenten season, those 14 and older must abstain from meat all Fridays of Lent and also Ash Wednesday. All those over 18 and not yet 59 must fast on Ash Wednesday and Good Friday.

### 6. OTHER REQUIREMENTS

No headgear is required. No specific clothing is required. May wear a cross or religious medal with a chain. A rosary may be used as a form of devotion. A scapular (which is a pair of small cloth squares joined by shoulder tapes worn under clothing on the breast and back) may be worn. The colors and pictures or symbols on the scapular may vary.

### 7. PRACTIONERS/CLERGY

Ordained priest and deacons are the usual ministers of the sacraments. Only men can be ordained as priests or higher clergy (i.e. bishop, archbishop, cardinal, pope). Mass is always said by a priest, though non-ordained lay persons may preside over communion services.

| ADMINISTRATIVE DIRECTIVE | Effective 8/1/2014 | Page 2 of 6 | Number 04.25.102 |
|---|---|---|---|

3. Approved requests for religious diets shall begin the first day of the month and end on the last day of the month and shall be in effect for a minimum of one calendar month.

4. Offenders may grieve decisions regarding religious diets in accordance with 20 Ill. Adm. Code 504.

F. **Requirements**

The Chief Administrative Officer of each facility shall:

1. Ensure the Food Service Operations Manual provides a local procedure for menu planning and meal service for religious diets in accordance with Administrative Directive 05.02.145.

2. Ensure offenders are notified of the procedure for requesting religious diet accommodation via Warden's Bulletins, posted notices or the offender handbook.

G. **Processing Requests for Religious Diets**

1. Offender requests for religious diets or to receive a special religious meal for the observance of a specific holiday or ceremony shall:

   a. Be submitted to the facility Chaplain on an Offender Request for Religious Diet, DOC 0388.

   b. Be submitted at least 45 days in advance of the observance of the religious holiday or ceremony.

   c. Identify under what religion the diet is requested; provide a description of the specific dietary requirement, tenet or practice being requested; and provide an explanation demonstrating why the diet is being requested.

2. Upon receipt of the DOC 0388, the Chaplain shall review the request by verifying the offender's religious affiliation on Offender 360 and review the sincerity and the reason provided for the request. Other available information, including standard tenets of the religious affiliation, commonly exercised religious dietary practice and known religious dietary requirements may be reviewed in consideration of the request.

   **NOTE:** Changes to an offender's self-designated religious affiliation shall be processed and approved in accordance with Administrative Directive 04.25.101.

   a. If the request is incomplete or the information is inconsistent with the offender's self-designated religious affiliation, the Chaplain shall:

      (1) Request additional information from the offender; or

      (2) Deny the request and notify the offender.

   b. If the offender requests a diet other than a commonly exercised or acknowledged dietary practice of the particular religion, the offender may be requested to provide:

O'Neal v. Rojas, 18-4063 (C.D. Ill.) Document No. 000014

| Illinois | | Number | 04.25.102 |
|---|---|---|---|
| Department of | ***ADMINISTRATIVE*** | Page | 1 of 6 |
| **Corrections** | ***DIRECTIVE*** | Effective | 8/1/2014 |

| Section | 04 | Programs and Services |
|---|---|---|
| Subsection | 25 | Religious Issues |
| Subject | 102 | Religious Diets |

## I.  POLICY

### A.  Authority

730 ILCS 5/3-2-2 and 3-7-2

20 Ill Administrative Code 425, 501 and 504

### B.  Policy Statement

The Department shall permit the reasonable observance of bona fide religious dietary practice in accordance with Department Rule 425 and the procedures outlined herein.

## II.  PROCEDURE

### A.  Purpose

The purpose of this directive is to establish written instructions to staff for accommodating the religious diets of offenders.

### B.  Applicability

This directive is applicable to all correctional facilities, excluding Transitional Security Level facilities. Adult Transition Center Supervisors shall make arrangements for religious diets on a case-by-case basis in consultation with the Office of the Chief Chaplain.

### C.  Facility Reviews

A facility review of this directive shall be conducted at least annually.

### D.  Designees

Individuals specified in this directive may delegate stated responsibilities to another person or persons unless otherwise directed.

### E.  General Provisions

1.  Offenders may request a religious diet or a special religious meal for observance of a specific religious holiday or ceremony.

2.  All requests for religious meals for the observance of a religious holiday or ceremony shall be submitted, in writing, at least 45 days prior to the event.

O'Neal v. Rojas, 18-4063 (C.D. Ill.) Document No. 000013

# Joint Committee on Administrative Rules
# ADMINISTRATIVE CODE

## TITLE 20: CORRECTIONS, CRIMINAL JUSTICE, AND LAW ENFORCEMENT
## CHAPTER I: DEPARTMENT OF CORRECTIONS
## SUBCHAPTER d: PROGRAMS AND SERVICES
## PART 425 CHAPLAINCY SERVICES AND RELIGIOUS PRACTICES
## SECTION 425.40 RELIGIOUS PRACTICE ADVISORY BOARD

### Section 425.40  Religious Practice Advisory Board

a)      The Director shall appoint a multi-denominational Religious Practice Advisory Board comprised of legal, administrative, and chaplaincy staff.  One of the members of the Board shall be designated as chairperson.

b)      The Board shall, among other matters:

   1)      Provide guidance to the Department regarding religious activities.

   2)      Review and make recommendations regarding designated:

      A)      Religious grievances filed by committed persons;

      B)      Requests from committed persons for religious diets, non-traditional religious symbols, headgear, clothing, and other religious items;

      C)      Requests from committed persons for religious activities not currently offered at the correctional facility and for religious activities permitted under Section 425.60(f);

      D)      Requests from committed persons for relief from a work assignment or institutional program for specific religious reasons; and

      E)      Issues involving the training, screening, and reimbursement of religious volunteers.

c)      The Board shall confer with religious leaders or faith representatives from various faith groups regarding the validity and legitimacy of the religious request and the sincerity of the committed persons' beliefs, as the Board determines necessary.

(Source:  Added at 19 Ill. Reg. 6515, effective May 1, 1995)

## **Joint Committee on Administrative Rules**
# ADMINISTRATIVE CODE

### TITLE 20: CORRECTIONS, CRIMINAL JUSTICE, AND LAW ENFORCEMENT
### CHAPTER I: DEPARTMENT OF CORRECTIONS
### SUBCHAPTER d: PROGRAMS AND SERVICES
### PART 425 CHAPLAINCY SERVICES AND RELIGIOUS PRACTICES
### SECTION 425.30 ACCOMMODATION OF RELIGIOUS BELIEFS

---

### Section 425.30  Accommodation of Religious Beliefs

a)  Committed persons shall be provided reasonable opportunities to pursue their religious beliefs and practices subject to concerns regarding security, safety, rehabilitation, institutional order, space, and resources.

b)  Participation in or attendance at religious activities shall be voluntary.

c)  Committed persons shall not pressure or coerce other persons to join or participate in the activities of a particular religion.

d)  Committed persons shall not engage in religious activities which may encourage violence against others or are likely to disrupt institutional safety or operations.

e)  Committed persons shall be requested to designate their religious affiliation during the orientation process.  Such designation of religious affiliation does not constitute endorsement or recognition of that religion by the Department.

f)  Committed persons may only attend the religious activities of their designated religion or non-denominational religious activities, except as provided in subsection (g) of this Section pursuant to Section 425.60.

g)  Committed persons requesting to attend a religious activity of a faith other than their designated faith shall submit their written request to the facility chaplain who will determine whether their attendance at the activity can be accommodated based on factors such as security, safety, rehabilitation, institutional order, space, and resources.

h)  Committed persons desiring to designate their religious affiliation after the orientation process or to change their designated religious affiliation shall submit the written request to the facility chaplain.  The facility chaplain may refuse to change the affiliation if it is determined that the change is being requested for other than religious reasons.  This determination may be based, among other matters, on the frequency of changes or a pattern of changing religious affiliation prior to a particular faith group's scheduled holiday or celebration.

(Source: Added at 19 Ill. Reg. 6515, effective May 1, 1995)

O'Neal v. Rojas, 16-4063 (C.D. Ill.), Document No.    000049
www.ilga.gov/commission/jcar/admincode/020/020004250000300R.html

1/1

# Joint Committee on Administrative Rules
# ADMINISTRATIVE CODE

## TITLE 20: CORRECTIONS, CRIMINAL JUSTICE, AND LAW ENFORCEMENT
## CHAPTER I: DEPARTMENT OF CORRECTIONS
## SUBCHAPTER d: PROGRAMS AND SERVICES
## PART 425 CHAPLAINCY SERVICES AND RELIGIOUS PRACTICES
## SECTION 425.70 ACCOMMODATION OF RELIGIOUS DIETS

### Section 425.70  Accommodation of Religious Diets

a)   Committed persons shall be permitted to abstain from any foods the consumption of
which violates their required religious tenets.

b)   Any foods which contain pork or pork by-products shall be identified in accordance
with 20 Ill. Adm. Code 502.20.

c)   A committed person may submit a written request to the facility chaplain to receive
an alternative diet for specific religious reasons. The request must contain written
verification that the committed person is a member of a faith group that requires
adherence to a particular diet and the specific requirements of the diet. Eligibility to
receive an alternative diet for specific religious reasons shall be determined by the
facility chaplain who shall ordinarily confer with a religious leader or faith
representative of the faith group at issue. The facility chaplain and the religious
leader or faith representative may interview the committed person.

d)   A committed person requesting a dietary modification required by a specific
religious holiday or ceremony must submit a written request to the facility chaplain
45 calendar days before the holiday or ceremony. The request must contain
verification that the committed person is a member of a faith group requiring the
dietary modification and the specific requirements of the dietary modification.
Eligibility to receive an alternative diet for a specific religious holiday or ceremony
shall be determined by the facility chaplain who shall ordinarily confer with a
religious leader or faith representative of the faith group at issue. The facility
chaplain and religious leader or faith representative may interview the committed
person.

e)   A committed person who does not adhere to the alternative diet shall no longer
receive the alternative diet, unless otherwise approved by the Chief Administrative
Officer.

(Source: Added at 19 Ill. Reg. 6515, effective May 1, 1995)

4)    Written agreement by a chaplain, faith representative, or recognized religious leader of that faith group to provide general oversight and guidance of the religious activity is received;

5)    The Religious Practice Advisory Board recommends approval; and

6)    The committed person submits a copy of any proposed sermon or doctrinal interpretation to the Chief Administrative Officer or staff designated to supervise the religious activity for review and approval prior to delivery, based on safety and security concerns.

g)    The staff supervisor may call upon various committed persons to guide portions of the religious activity subject to safety and security concerns.

h)    Religious activities defined under subsection (f) of this Section shall be prohibited where based solely on the temporary or occasional unavailability of a chaplain or a religious program volunteer.

i)    The Chief Administrative Officer may limit, restrict, or discontinue religious activities permitted under subsection (f) of this Section based upon concerns such as security, safety, rehabilitation, institutional order, space, or resources and may require periodic rotation of committed persons permitted to guide portions of religious activities.

(Source:  Added at 19 Ill. Reg. 6515, effective May 1, 1995)

does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible. All grievances (except those on DR's) must be addressed and signed by Counselors before they are sent to the Grievance Officer.

Staff assistance shall be available as requested by those offenders who cannot prepare their grievances unaided, as determined by institutional staff. All offenders shall be entitled to file grievances regardless of their disciplinary status or classification. Additionally, each facility shall take reasonable steps to ensure that the grievance procedure is accessible to offenders who are impaired, disabled, or unable to communicate in the English language.

Offenders shall be informed of the grievance procedure at the admitting facility and may request further information regarding the procedure from their Counselors. The written procedure shall be available to all offenders (usually through the orientation manual). An offender unable to speak or read the English language may request that the procedure be explained in the individual's own language.

According to 730 ILCS 5/3-8-8, a record of the grievance and any decision made with respect to it shall be preserved for a period of one year. Offenders shall be allowed to communicate emergency grievances directly to the Director or designee outside of the institution or facility where the person is confined. Discipline shall not be imposed because of the use of grievances.

### Grievance Officer - 504.820

The Chief Administrative Officer shall appoint 2 or more employees who may serve as a Grievance Officer to attempt to resolve problems, complaints, and grievances that offenders have been unable to resolve through informal channels. No person who is directly involved in the subject matter of the grievance or who was a member of the Adjustment Committee that heard a Disciplinary Report concerning the grievance may serve as the Grievance Officer reviewing that particular case.

### Grievance Procedures - 504.830

A Grievance Officer shall review grievances at least weekly, provided that one or more grievances have been filed. Grievances on issues that are deemed without merit may be returned as denied to the sender without further investigation. No merit grievances include grievances that have previously been addressed for which there is no additional information, and issues that do not involve or affect the offender. The Grievance Officer shall promptly submit a copy of any grievance alleging discrimination based on disability or a request for an accommodation based upon disability to the facility ADA Coordinator. The facility ADA Coordinator shall conduct such investigation as deemed appropriate and make written recommendations to the Chief Administrative Officer for resolution of the grievance.

An offender may be afforded an opportunity to appear before the Grievance Officer unless the grievance is deemed without merit. The Officer may call witnesses as deemed appropriate.

The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer. The Chief Administrative Officer shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances. Responses to duplicate grievances on issues that are currently being grieved may be combined in one response.

DR 504 Grievance Procedures

# DR 504
## GRIEVANCE PROCEDURES

## GRIEVANCE OFFICER TRAINING
## PERFORMANCE OBJECTIVES

Upon completion of this training, participants shall be able to:

1. Describe the offender's rights and the role of grievances.

2. Demonstrate the ability to review "Committed Person's Grievances, DOC 0046" for content and logic.

3. Demonstrate the ability to accurately complete a "Response to the Committed Person's Grievance," DOC 0047.

4. Describe the responsibilities of the Grievance Officer.

5. Describe the process for forwarding grievances if they cannot be resolved at the institutional level.

## DR 504 SUBPART F: GRIEVANCE PROCEDURES FOR OFFENDERS - 504.800
This Subpart applies to adult and juvenile offenders assigned to correctional facilities within the Department of Corrections with complaints, concerns, or other issues that cannot been resolved informally.

### Filing of Grievances - 504.810
An offender shall first attempt to resolve incidents, problems, or complaints other than complaints concerning disciplinary proceedings through his or her counselor. If an offender is unable to resolve the complaint informally or if the complaint concerns a disciplinary proceeding, the individual may file a written grievance on a grievance form (DOC 0046) that shall be made available in all living units. The offender's Counselor must address the issue, or if it cannot be resolved document the specific reason. (The Counselor should not simply write "unresolved issue" on the Counselor section of the grievance form). A grievance shall be filed within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. However, if an offender can demonstrate that a grievance was not filed in a timely manner for good cause, the grievance shall be considered. The grievance procedure shall not be utilized for complaints regarding decisions that are outside the authority of the Department, such as parole decisions, clemency, or orders regarding length of sentence or decisions that have been rendered by the Director.

The grievance form shall be addressed to the Grievance Officer and shall be deposited in the living unit mailbox or other designated repository. The grievance shall contain factual details regarding each aspect of the offender's complaint including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision

DR 504 Grievance Procedures

## Proper Completion of the Grievance Form

To initiate the grievance process, an offender must complete the DOC 0046-Committed Person's Grievance and submit it in accordance with DR 504F (or G) guidelines.

## DOC 0046-Committed Person's Grievance
### Offender's Section

The offender completes the identifying information: date of submittal; name; register number; present facility and facility where the issue of the Grievance occurred. Common grievances categories can be checked to aid the Grievance Officer in categorizing the nature of the grievance. The narrative section allows the offender to explain the issue(s) being grieved and the "Relief Requested" section documents what the offender is requesting to resolve the issue. Offenders may only file grievances on their own behalf. Grievances cannot be filed as petitions.
There is no written requirement that "originals" be submitted. There is no requirement that separate grievances must be filed for each issue.

## Counselor's Response

All grievances (other than disciplinary process) should be submitted to the offender's Counselor prior to submittal to the Grievance Officer. Assistance in filing the grievance may be needed by those who are physically or mentally challenged or who can not communicate in English.

The Counselor should review the grievance issue(s) and relevant information, in an attempt to resolve the grievance at his/her level if possible; or indicate that the issue is outside the jurisdiction of the facility or otherwise unresolvable by the Counselor.

Counselors should address the issue in a professional manner. The grievance issue should be the focus of the review - not the relief requested. Counselors should avoid including personal opinions or judgmental statements.

## Grievance Officer's Report

The DOC 0047 (Grievance Response Form) should be completed by the Grievance Officer legibly, accurately, and thoroughly. Include the required information:
* Date Received
* Date of Review
* Grievance # (optional)
* Offender's Name and Register Number
* Nature of Grievance (DR date 5/1/01 by C.O. John Smith; Personal Property- damaged television; Staff Conduct- Excessive Force 5/1/01, etc.)

Facts reviewed should include a brief summary of the issue (s) being grieved by the offender through review of the written grievance or summary of verbal statement given to the Grievance Officer. The Grievance Officer then provides information pertaining to documentation reviewed and what the documentation indicated. Information should be organized as follows:

1. Offender's statement to Grievance Officer, or summary of Committed Person's Written Grievance and issue(s) being grieved.

2. Specific information and documentation reviewed by the Grievance Officer as well as what the documentation revealed. Summarize information (Disciplinary Reports, Adjustment

DR 504 Grievance Procedures

Committee Summaries, Shakedown Slips, Incident Reports, etc.) reviewed pertaining to the offender's grievance; Staff statements provided regarding the offender's concerns (include name and title of staff person as well as information provided); Reference Department Rules, Administrative or Institutional Directives, and/or facility bulletins with regard to the offender's grievance ensuring the institution is in compliance with established policies and procedures.

3. Provide a complete report of documentation as reviewed by the Grievance Officer with the basis of recommendation to affirm, deny or modify the offender's grievance.

Recommendation: Based upon a total review of all available information, provide a recommendation to the Chief Administrative Officer. (see page 53, "Recommendation Language").

Reviews should be completed in a responsive manner by both the counselor and the Grievance Officer. Avoid using language that would give the appearance of value judgments when considering the offender's explanation or defense. Grievance Officer reports may be reviewed as part of a litigation process. Reports should be completed in a professional manner. This is not the medium for expounding upon one's personal beliefs, opinions, etc. Do not indicate an offender's request for relief is inappropriate and the issue will not be reviewed. The relief requested is not the issue being grieved.

Upon completion of the Grievance Officer's review, a report of findings and recommendation is submitted in writing to the Chief Administrative Officer within a reasonable timeframe. A timely review by the Grievance Officer is most important in order to avoid losing pertinent documents, information, recollection of incidents by witnesses, etc. Additionally, the process becomes meaningless if corrective action cannot be initiated, nullifying the process.

**CAO Portion**
The Grievance Officer's report is forwarded to the CAO for review and approval. The CAO or designee shall:
1. concur with the recommendation;
2. remand the issue for further review; or
3. disapprove the recommendation.

Comments can be included. The CAO shall sign and date the decision. A copy of the CAO's decision shall be provided to the offender.

**Emergency Grievances**
Offenders may pursue issues they deem to be emergencies directly to the Chief Administrative Officer Emergency is described in DR 504 as:
• A substantial risk of imminent personal injury or
• Other serious or irreparable harm to the offender.
The CAO shall have the final determination as to whether the grievance is reviewed as an emergency. The Chief Administrative Officer is to expedite the grievance review and response.

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Request for Religious Diet

_____
Facility

I,_____, ID#: _____, hereby request a religious
    Offender Name (Last, First M.I.)

diet accommodation. I declare my religious affiliation as _____. This request is for:

☐ A _____ diet as an integral part of the practice of my declared religion.
    Type of diet (e.g. kosher, vegan, etc.)

☐ A religious meal for the observance of the following religious holiday or ceremony: _____
                                                             Specify name of holiday/ceremony

Justification or basis of request:
Examples of basis may include such things as documentation from religious textbook or faith leader, teaching of faith leader, interpretation of holy book, etc.)

_____

_____

### Conditions of Participation

I understand that participation in a religious diet must be based on a sincerely held religious belief. If my request is granted, I understand and acknowledge that:

- Receipt of the religious diet will begin on the first day of a month and the diet will be in effect for no less than one calendar month.
- I may request to terminate a religious diet at any time; however, the request must be submitted in writing on an Offender Request, DOC 0286, and will not be effective until the first day of the month following in which the request was received.
- I should not purchase or possess any food items that are not part of the religious diet and possessing food that violates the diet I requested may be deemed to demonstrate a lack of sincerity.
- I am prohibited from exchanging or giving away any religious diet food or tray or taking, accepting, or trading for a food tray or for food from a food tray other than my approved diet tray and the violation of such is grounds for discipline under Ill. Adm. Code 504.
- My commissary food purchases will be monitored by the Dietary Department and purchases of food that violate the diet I requested may be deemed to demonstrate a lack of sincerity.
- My mealtime attendance will be monitored and acceptance of the specially prepared diet tray is mandatory. I understand that I should not miss more than three meals per week, without providing written justification to the Chaplain or Dietary Manager. I understand that unjustified failure to attend meals may be deemed to demonstrate a lack of sincerity.

I affirm that I have read and understand these conditions for participation in a religious diet, and that I have signed voluntarily and without coercion.

_____     _____
Offender Signature                                Date

Official Use Only
☐ Approved  ☐ Denied

_____    _____    _____
Chaplain (Print Name)           Chaplain (Signature)            Date

☐ Approved  ☐ Denied

_____    _____    _____
Chief Administrative Officer (Print Name)   Chief Administrative Officer (Signature)   Date

If denied, provide reason: _____

Date received by Dietary:

If approved, religious diets shall begin on the first day of the month following that in which the Request was received.

O'Neal v. Rojas, 16-4063 (C.D. Ill.), Document No.    000232

ILLINOIS DEPARTMENT OF CORRECTIONS

## Notice to Discontinue Religious Diet

Offender Name: _____     ID#: _____

Type of Religious Diet: _____
(Kosher, vegan, etc.)

The above offender:

☐ Has submitted a request, in writing, to voluntarily discontinue participation in the previously approved religious diet.  (Attach copy of Offender Request, DOC 0286)

☐ Shall have his or her participation in the previously approved religious diet involuntarily discontinued.  Substantiation for the discontinuation is as follows:

_____

_____

_____

_____

_____

_____

_____

_____

_____

The religious diet for the above offender shall cease on the last day of _____.
Month, Year

_____          _____          _____
Chaplain (Print Name)                              Signature                          Date

_____          _____          _____
Chief Administrative Officer (Print Name)              Signature                          Date

Distribution:   Chaplain
Dietary Manager
Offender

Printed on Recycled Paper

DOC 0389 (Eff. 11/2012)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Aaron O'Neal, N53022, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-4063-SEM-TSH |
| | ) | |
| Manuel Rojas, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT BRITTON'S RESPONSE TO PLAINTIFF'S
### REQUEST FOR ADMISSIONS SERVED SEPTEMBER 18, 2019

Defendant, Freddie Britton, through his attorney, Kwame Raoul, Attorney General for the

State of Illinois, pursuant to Federal Rule of Civil Procedure 36, hereby provides his Response to

Plaintiff's Request for Admission Served September 18, 2019:

1. That he worked in the Hill Correctional Center (HCC) dietary department as a dietary food supervisor during all time relevant to this complaint.

**RESPONSE: Defendant admits he has worked at Hill Correctional Center in the dietary department for approximately the past 23 years.**

2. His job description include administering supplemental dietary food trays to qualifying inmates at HCC.

**RESPONSE: Defendant admits that if an offender is approved for a specific diet tray and is on the list to receive that diet tray, it is among Defendant's duties to provide that diet tray. Defendant denies he is solely responsible for providing diet trays to offenders.**

3. Among the dietary trays he administers to prisoners at HCC are for religious purposes

**RESPONSE: Defendant admits he has provided diet trays for religious purposes to offenders at Hill Correctional Center.**

4. Including, but not limited to Hebrwe Israelites, Kosher, and among others.

I

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

Aaron O'Neal, N53022,                            )
                                                 )
                    Plaintiff,                   )
                                                 )
    v.                                           )            No. 18-4063-SEM-TSH
                                                 )
Manuel Rojas, *et al.*,                          )
                                                 )
                    Defendants.                  )

### CERTIFICATE OF SERVICE

Clayton J. Ankney, Assistant Attorney General, herein certifies that he has served a copy of the foregoing *Defendant Rojas' Response to Plaintiff's Interrogatories and Request for Production of Documents Served September 20, 2019* upon:

Aaron O'Neal #N53022                 Syed Ahmad, Brad Keller,
Hill Correctional Center             David Perkins, & Seth Uphoff
PO Box 1700                          Heyl Royster Voelker & Allen
Galesburg, IL 61401                  300 Hamilton Boulevard
                                     PO Box 6199
                                     Peoria, IL 61601-6199

by mailing a true copy thereof to the above addresses in an envelope duly addressed, bearing proper first class postage, and deposited in the United States mail at Springfield, Illinois on January 3, 2020.

By: _____

Clayton J. Ankney, No. 6320224
Assistant Attorney General

7

**RESPONSE: Defendant denies there is a special Hebrew Israelite diet tray. Defendant admits there is a kosher tray. Defendant admits there are other special diet trays, such as vegan trays.**

5. To receive a supplemental dietary food trtay for religious tenets, the recepient must firt be approved by the institutional Chaplain, and subsequently ratified by the institutional warden or his/her designate.

**RESPONSE: Defendant admits that for an offender to receive a special diet tray, Plaintiff must receive approval from the facility Chaplain and the Warden or her designee.**

6. Once an inmate is approved for a supplemental dietary food tray based on religious tenets, the inmates is then placed on a list that is maintained in various locations, including the dietary department/chow hall.

**RESPONSE: Defendant admits that the names of offenders approved to receive specific diet trays are given to the dietary department and those names are placed on a list of offenders approved to receive that specific diet tray. Defendant further admits the list of offenders approved for a specific diet tray is maintained in the dietary department and in the chow hall.**

7. Plaintiff, Aaron O'Neal has, on ocassion, requested that he be given a supplemental dietary food tray in observence of his religious tenets.

**RESPONSE: Defendant admits that on one occasion, Plaintiff asked Defendant for a Catholic meal.**

8. The last time plaintiff O'Neal made such a request of you, you checked the list and informed him that Chaplain Rojas had not yet provided the dietary department with a list for Catholic's observing their religious tenets, and that you could not give him a dietary food supplemental tray (meatless) for that reason.

**RESPONSE: Defendant admits that on the one occasion Plaintiff asked Defendant for a Catholic meal, Defendant checked to see if there was a list for a Catholic meal. Defendant further admits there was no list for a Catholic meal. Defendant admits he cannot provide special diet trays to offenders if they are not on a list to receive a special diet tray.**

9. There has been times, however, during the course of your employment as a dietary food supevisor that the plaintiff, during the observence of his religious tenets has requested a supplemental dietary food tray and there was a list for Catholics containing the plaintiff's O;Neal's name.

2

**RESPONSE: After a reasonable inquiry, Defendant lacks knowledge or information sufficient to admit or deny this request.**

10. Your immediate food supervisor, the dietary manager, is responsible for posting such a list to become available to his subordinates.

**RESPONSE: Defendant admits that after receiving information about who is approved for a special diet tray, the Dietary Manager posts a list of individuals approved for a special diet tray.**

Respectfully submitted,

Freddie Britton,

Defendant,

Kwame Raoul, Illinois Attorney General,

Attorney for Defendant,

By

Clayton J. Ankney, No. 6320224
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62701
(217) 785-4555 Phone
(217) 524-5091 Fax
Email: cankney@atg.state.il.us

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

Aaron O'Neal, N53022,                    )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )      No. 18-4063-SEM-TSH
                                         )
Manuel Rojas, *et al.*,                  )
                                         )
            Defendants.                  )

## DEFENDANT FROST'S RESPONSE TO PLAINTIFF'S SECOND SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS SERVED SEPTEMBER 18, 2019

Defendant, John Frost, through his attorney, Kwame Raoul, Attorney General for the State

of Illinois, pursuant to Federal Rules of Civil Procedure 33 and 34, hereby provides his Response

to Plaintiff's Second Set of Interrogatories and Request for Production served September 18, 2019:

1.     State the duties of defendant Baldwin, Director of Corrections of the Illinois

Department of Correction (IDOC). If those duties are set forth in any job description or other

document, produce the document.

**RESPONSE: Defendants refer Plaintiff to Defendants' objections to Plaintiff's Second Set of Interrogatories and Request for Production. Subject to and without waiving said objections, Defendant Baldwin is not the current Director of the IDOC. However, the duties of the Director of the Illinois Department of Corrections are contained in 730 ILCS 5/3-2-3. The Director's duties may also be detailed in Illinois Department of Corrections Administrative Directives.**

2.     State whether defendant Baldwin is responsible for or involved in compiling a

Religious Practice Advisory Board for establishing religious tenets for prison inmates, and list the

names any any (sic) persons from the Catholic church who may participate in or sit on the

1

referenced board in any fashion. If those duties are set forth in any job description or other

document, produce the document.

**RESPONSE: Defendants refer Plaintiff to Defendants' objections to Plaintiff's Second Set of Interrogatories and Request for Production. Subject to and without waiving said objections, Defendant Baldwin is not the current Director of the IDOC. However, Plaintiff is referred to Administrative Directive 04.25.101 Chaplaincy Services, Bates stamped 000009-000012 and 20 Ill. Admin. Code 425.40 *et seq.*, Bates stamped 000045-000061.**

3. Defendant Baldwin is responsible for the actions of any IDOC staff who is

subordinate to him who does not comply with any and all well establish IDOC Rules,

Administrative and Departmental Directives.

**RESPONSE: Defendants refer Plaintiff to Defendants' objections to Plaintiff's Second Set of Interrogatories and Request for Production.**

4. Defendant Baldwind (sic) acquiesced to the finding of defendant's Phoenix,

Dorethy, Frost, and Gans' finding's regarding Plaintiff's grievance complaining of denial of equal

Catholic worship as relevant to this complaint.

**RESPONSE: Defendants refer Plaintiff to Defendants' objections to Plaintiff's Second Set of Interrogatories and Request for Production.**

5. A proper investigation by defendant's Dorethy, Phoenix, Frost and Gans would

have directed them to the Religious Practice Advisory Boards findings for Catholic Tenets would

have resolved the grievance in terms of whether plaintiff religious tenets required a supplemental

meatless diet during the month of Lent/Ash Wednesday.

**RESPONSE: Defendants refer Plaintiff to Defendants' objections to Plaintiff's Second Set of Interrogatories and Request for Production.**

6. As an employee of the IDOC, defendant Rojas, as Chaplain is required to

participate in any investigation where his department (Chaplaincy) is a subject of to resolve any

matters in dispute. If those duties are set forth in any job description or document, produce the

document.

2

**RESPONSE: Defendants refer Plaintiff to Defendants' objections to Plaintiff's Second Set of Interrogatories and Request for Production. Subject to and without waiving said objections, generally, every IDOC employee is required to report unusual incident and cooperate with any internal or external investigations.**

7.     If a prison inmates request that witness' be called in defense of his allegations, those

witnesses are to be consulted with or a reason given as to why there is no need to consult those

witness. If that procedure is set forth in any document related to the grievance process, produce

the document.

**RESPONSE: Defendants refer Plaintiff to Defendants' objections to Plaintiff's Second Set of Interrogatories and Request for Production. Subject to and without waiving said objections, to the extent Plaintiff seeks documents which show the grievance process and procedure, Plaintiff is referred to Administrative Directive 04.01.114 Local Offender Grievance Procedures. Bates stamped 000019-000025, and 20 Illinois Administrative Code 504, Subpart F: Grievance Procedures for Offenders, Bates stamped 000031-000042.**

8.     Defendant Rojas' refusal to participate in the grievance investigation related to the

plaintiff, stating he would not make a statement without his attorney contravened IDOC's rules

directives. If those duties are the subject set forth in any job description, produce the document.

**RESPONSE: Defendants refer Plaintiff to Defendants' objections to Plaintiff's Second Set of Interrogatories and Request for Production.**

9.     Defendant's Frost and Gans willfully ignored the proper protocol for investigating

a prisoners grievance and denied the plaintiff's grievance without any supporting evidence for

such denial, indicative of bias toward the plaintiff.

**RESPONSE: Defendants refer Plaintiff to Defendants' objections to Plaintiff's Second Set of Interrogatories and Request for Production.**

10.     Defendant Rojas, in removing plaintiff from the Curssillo list did not provide

plaintiff with any alternative means of practicing Curssillo.

**RESPONSE: Defendants refer Plaintiff to Defendants' objections to Plaintiff's Second Set of Interrogatories and Request for Production. Subject to and without waiving said objections, I am not personally aware of whether Plaintiff was removed from the list to participate in Cursillo or if Manuel Rojas removed Plaintiff from that list.**

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| Aaron O'Neal, N53022, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 18-4063-SEM-TSH |
| | ) |
| Manuel Rojas, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

Clayton J. Ankney, Assistant Attorney General, herein certifies that he has served a copy of the foregoing *Defendant Frost's Response to Plaintiff's Second Set of Interrogatories and Request for Production of Documents Served September 18, 2019* upon:

Aaron O'Neal #N53022
Hill Correctional Center
PO Box 1700
Galesburg, IL 61401

Syed Ahmad, Brad Keller,
David Perkins, & Seth Uphoff
Heyl Royster Voelker & Allen
300 Hamilton Boulevard
PO Box 6199
Peoria, IL 61601-6199

by mailing a true copy thereof to the above addresses in an envelope duly addressed, bearing proper first class postage, and deposited in the United States mail at Springfield, Illinois on January 3, 2020.

By

Clayton J. Ankney, No. 6320224
Assistant Attorney General

6

**RESPONSE: Defendants refer Plaintiff to Defendants' objections to Plaintiff's Second Set of Interrogatories and Request for Production. Subject to and without waiving said objections, generally, every IDOC employee is required to report uuusual iucident and cooperate with any internal or external investigations.**

7.    If a prison inmates request that witness' be called in defense of his allegations, those

witnesses are to be consulted with or a reason given as to why there is no need to consult those

witness. If that procedure is set forth in any document related to the grievance process, produce

the document.

**RESPONSE: Defendants refer Plaintiff to Defendants' objections to Plaintiff's Second Set of Interrogatories and Request for Production. Subject to and without waiving said objections, to the extent Plaintiff seeks documents which show the grievance process and procedure, Plaintiff is referred to Administrative Directive 04.01.114 Local Offender Grievance Procedures. Bates stamped 000019-000025, and 20 Illinois Administrative Code 504, Subpart F: Grievance Procedures for Offenders, Bates stamped 000031-000042.**

8.    Defendant Rojas' refusal to participate in the grievance investigation related to the

plaintiff, stating he would not make a statement without his attorney contravened IDOC's rules

directives. If those duties are the subject set forth in any job description, produce the document.

**RESPONSE: Defendants refer Plaintiff to Defendants' objections to Plaintiff's Second Set of Interrogatories and Request for Production.**

9.    Defendant's Frost and Gans willfully ignored the proper protocol for investigating

a prisoners grievance and denied the plaintiff's grievance without any supporting evidence for

such denial, indicative of bias toward the plaintiff.

**RESPONSE: Defendants refer Plaintiff to Defendants' objections to Plaintiff's Second Set of Interrogatories and Request for Production.**

10.    Defendant Rojas, in removing plaintiff from the Curssillo list did not provide.

plaintiff with any alternative means of practicing Curssillo.

**RESPONSE: Defendants refer Plaintiff to Defendants' objections to Plaintiff's Second Set of Interrogatories and Request for Production. Subject to and without waiving said objections, I am not personally aware of whether Plaintiff was removed from the list to participate in Cursillo or if Manuel Rojas removed Plaintiff from that list.**

11.　　Such denial as stated in paragraph 10 was in retaliation of plaintiff requesting a

dietary meatless substitute to comply with the Catholic religious tenets of Lent/Ash Wednesday.

**RESPONSE: Defendants refer Plaintiff to Defendants' objections to Plaintiff's Second Set of Interrogatories and Request for Production. Subject to and without waiving said objections, I am not personally aware of whether Plaintiff was removed from the list to participate in Cursillo or if Manuel Rojas removed Plaintiff from that list.**

Respectfully submitted,

John Frost,

　　　Defendant,

Kwame Raoul, Illinois Attorney General,

　　　Attorney for Defendant,

By: _Clayton J. Ankney_____

Clayton J. Ankney, No. 6320224
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62701
(217) 785-4555 Phone
(217) 524-5091 Fax
Email: cankney@atg.state.il.us

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| Aaron O'Neal, N53022, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 18-4063-SEM-TSH |
| | ) |
| Manuel Rojas, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

Clayton J. Ankney, Assistant Attorney General, herein certifies that he has served a copy of the foregoing *Defendant Frost's Response to Plaintiff's Second Set of Interrogatories and Request for Production of Documents Served September 18, 2019* upon:

Aaron O'Neal #N53022
Hill Correctional Center
PO Box 1700
Galesburg, IL 61401

Syed Ahmad, Brad Keller,
David Perkins, & Seth Uphoff
Heyl Royster Voelker & Allen
300 Hamilton Boulevard
PO Box 6199
Peoria, IL 61601-6199

by mailing a true copy thereof to the above addresses in an envelope duly addressed, bearing proper first class postage, and deposited in the United States mail at Springfield, Illinois on January 3, 2020.

By: _____

Clayton J. Ankney, No. 6320224
Assistant Attorney General

6

**UNITED STATES DISTRICT COURT**    )        *O'Neal v. Rojas, et al.*

                                     )

**CENTRAL DISTRICT OF ILLINOIS**    )           **No. 18-4063**

## DECLARATION

Pursuant to 28 U.S.C. § 1746, I, John Frost, declare under penalty of perjury that the facts and information contained in ***Defendant Frost's Response to Plaintiff's Second Set of Interrogatories and Request for Production of Documents Served September 18, 2019***, are true and accurate to the best of my knowledge, information, and belief.

Executed on this 20th day of December 2019

_____
John Frost

E-FILED
Thursday, 30 August, 2018 10:47:39 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| AARON O'NEAL, #N53022, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-4063-SEM-TSH |
| | ) | |
| MANUEL ROJAS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### ANSWER AND AFFIRMATIVE DEFENSES

NOW COME Defendants Manuel Rojas, Stephanie Dorethy, Freddie Britton, John Frost,

Steve Gans, Melissa Pelker, and John Baldwin, by and through their attorney, Lisa Madigan, Attorney

General for the State of Illinois, and pursuant to the Court's Merit Review Opinion [Doc. 14], hereby

submit their Answer and Affirmative Defenses to Plaintiff's Complaint [Doc. 1], stating as follows:

### Allegations[1]

1.      Plaintiff is Catholic and has requested to be served a meatless meal on Fridays during

lent.

**ANSWER: Defendants admit Plaintiff identifies as Catholic and has previously
requested to be served a meatless meal on Fridays during Lent.**

2.      When his request was denied, Plaintiff confronted Defendant Rojas (the Chaplain at

Hill Correctional Center), whereupon Defendant Rojas retaliated against Plaintiff by removing

Plaintiff as a participant in a special Catholic service known as Cursillo.

**ANSWER: Defendant Rojas admits he is the Chaplain at Hill Correctional Center.
Defendant Rojas denies the remaining allegations in this paragraph. The remaining
Defendants lack knowledge or information sufficient to form a belief as to the allegations
in this paragraph.**

---

[1] Pursuant to Local Rule 16.3(E)(2) for the Central District of Illinois, "the answer and subsequent pleadings will be
to the issues stated in the Case Management Order."

1

3.      All the other Defendants acquiesced or played a part in these denials.

**ANSWER: Defendants deny the allegations in this paragraph.**

4.      At this point, the Court cannot rule out claims under the First Amendment (right to practice religion), Fourteenth Amendment (equal protection), and the Religious Land Use and Institutionalized Persons Act (right to practice religion).

> **ANSWER: Defendants deny violating Plaintiff's rights under the First Amendment, the Fourteenth Amendment, or the Religious Land Use and Institutionalized Persons Act, and Defendants deny violating any of Plaintiff's rights whatsoever. Defendants deny Plaintiff is entitled to any relief whatsoever.**

5.      Plaintiff may also state a retaliation claim against Defendant Rojas, which will proceed for further development.

> **ANSWER: Defendant Rojas denies retaliating against Plaintiff and denies violating Plaintiff's rights whatsoever. The remaining Defendants lack knowledge or information sufficient to form a belief as to the allegations in this paragraph.**

**Relief Requested**

Defendants deny Plaintiff is entitled to any relief whatsoever.

**Jury Demand**

Defendants demand a trial by jury.

**Affirmative Defenses**

**A.      Sovereign Immunity**

Under the Eleventh Amendment, Plaintiff's claims for monetary damages against the Defendants in their official capacities are barred by sovereign immunity. To the extent Plaintiff is suing Defendants for injunctive relief that is not intended to address ongoing constitutional or statutory violations, the Eleventh Amendment and sovereign immunity bar such claims.

**B.   Administrative Exhaustion.**

Plaintiff filed this lawsuit regarding the conduct of correctional officials while in the custody of the Illinois Department of Corrections and has failed to exhaust administrative remedies prior to filing his suit. Plaintiff's suit is therefore barred by 42 U.S.C. 1997e(a).

**C.   Qualified Immunity.**

At all times relevant to the Plaintiff's claims, the defendants charged herein acted in good faith in the performance of their official duties without violating Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have been aware. Defendants are therefore protected from liability by the doctrine of qualified immunity.

**D.   Statutes of Limitations.**

Plaintiff's claims arising more than two years before filing to which tolling does not apply are barred by the applicable statutes of limitations.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this honorable Court deny Plaintiff any relief whatsoever.

MANUEL ROJAS, STEPHANIE DORETHY, FREDDIE BRITTON, JOHN FROST, STEVE GANS, MELISSA PELKER, and JOHN BALDWIN,

Defendants,

Clayton J. Ankney, #6320224          LISA MADIGAN, Illinois Attorney General,
Assistant Attorney General
500 South Second Street              Attorney for Defendants,
Springfield, Illinois 62701
(217) 782-2077 Phone                 By: s/ Clayton J. Ankney
(217) 524-5091 Fax                   Clayton J. Ankney
Email: cankney@atg.state.il.us       Assistant Attorney General

3

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| AARON O'NEAL, #N53022, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-4063-SEM-TSH |
| | ) | |
| MANUEL ROJAS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on August 30, 2018, the foregoing document, ***Answer and Affirmative Defenses***, was electronically filed with the Clerk of the Court using the CM/ECF system which will electronically send notice to:

Brad William Keller: bkeller@heylroyster.com

and I hereby certify that on the same date, I caused a copy of the foregoing described document to be mailed by United States Postal Service, in an envelope properly addressed and fully prepaid, to the following non-registered participant:

Aaron O'Neal, N53022
Hill Correctional Center
Inmate Mail/Parcels
P.O. Box 1700
Galesburg, IL 61401

s/ Clayton J. Ankney
Clayton J. Ankney
Assistant Attorney General

4