E-FILED
Monday, 20 July, 2020  11:46:23 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Aaron O'Neal, N53022, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-4063-SEM-TSH |
| | ) | |
| Manuel Rojas, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION FOR SUMMARY JUDGMENT

Defendants, Manuel Rojas, Stephanie Dorethy, Freddie Britton, John Frost, Steve Gans, Melissa Pelker, and John Baldwin, through their attorney, Kwame Raoul, Attorney General for the State of Illinois, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.1(D), hereby move for summary judgment and provide a memorandum of law in support:

## INTRODUCTION

On March 22, 2018, Plaintiff filed his Complaint. [Doc. 1]. Plaintiff was allowed to proceed on a First Amendment claim concerning his right to practice his religion, a Fourteenth Amendment equal protection claim, a Religious Land Use and Institutionalized Persons Act claim, and a First Amendment retaliation claim.

Specifically, Plaintiff: (1) claims Defendants Rojas, Dorethy, Britton, Frost, Gans, Pelker, and Baldwin violated his First Amendment rights by failing to provide him with meatless meals on Fridays during Lent; (2) claims Defendants Rojas, Dorethy, Britton, Frost, Gans, Pelker, and Baldwin provided offenders with other religious affiliations with special religious diets but refused to provide special religious diets to Catholics during Lent; (3) claims Defendant Rojas retaliated against Plaintiff for complaining about a religious diet by removing Plaintiff from the list of individuals allowed to participate in Cursillo; and (4) claims the Religious Land Use and

1

Institutionalized Persons Act requires Plaintiff to be provided a meatless meal on Fridays during Lent.

Defendants Baldwin, Britton, Frost, Gans, and Pelker are entitled to summary judgment because they were not personally involved in any of the alleged constitutional violations. Defendants are entitled to summary judgment on Plaintiff's First Amendment free exercise claim because the evidence on the record establishes Plaintiff's religious practice was not substantially burdened. Defendants are entitled to summary judgment on Plaintiff's Fourteenth Amendment equal protection claim because Plaintiff cannot provide any evidence showing Defendants intentionally and purposefully discriminated against Plaintiff. Defendant Rojas is entitled to summary judgment on Plaintiff's First Amendment retaliation claim because Plaintiff cannot establish a causal connection between his alleged protected activity and the alleged adverse actions of Defendant Rojas. Plaintiff's injunctive relief claims pursuant to the Religious Land Use and Institutionalized Persons Act and constitutional claims should be dismissed as moot because there is no relief that is actually necessary to remedy a statutory or constitutional violation, and the relief requested by Plaintiff is barred by sovereign immunity and the Prison Litigation Reform Act. Finally, Defendants are entitled to qualified immunity on all of Plaintiff's constitutional claims.

## UNDISPUTED MATERIAL FACTS

### *Meatless Meals on Fridays During Lent*

1.     Plaintiff alleges his religion requires him to abstain from eating meat on Fridays during Lent.

2.     With a few exceptions, Plaintiff has not eaten meat on Fridays; instead has abstained from eating meat on Fridays. [Ex. 1, Deposition of Plaintiff, 58:10- 59:15].

2

3.     During the timeframe relevant to this lawsuit, Plaintiff was able to abstain from eating meat on about 95% of Fridays. [Ex. 1, Deposition of Plaintiff, 60-7-10, 125:21-126:5].

4.     In 2016, Plaintiff was able to purchase meatless food products at the Hill Correctional Commissary during Lent, including, at least:

    a.  On February 19, 2016: two cookies, two cashews, one oatmeal, two cereals, two tortillas, eight sodas, eight chili refried beans and rice, one cheese jalapeno, three coffee, eight BBQ sauce, one instant milk, two apple pies, and two fudge dip granola;

    b.  On March 7, 2016: one instant milk, three tuna with jalapenos, two popcorns, two cereals, five sour cream and onion chips, two nutty bars, four refried beans and rice, one cashews, one coffee,  one tortillas, six BBQ sauce, and six sodas; and

    c.  On March 18, 2016: two popcorn, two sour cream and onion chips, two cheese jalapeno, two tortillas, two tuna, two mayo, two Kool Aid, one cookie, one cashews, two sodas. [Ex. 4, Plaintiff's Inmate Commissary Fund, pp. 1-3].

5.     During Lent in 2016, Plaintiff also purchased numerous food items containing meat. [Ex. 4, Plaintiff's Inmate Commissary Fund, pp. 1-3].

6.     In 2017, Plaintiff was able to purchase meatless food products at the Hill Correctional Commissary during Lent, including, at least:

    a.  On March 22, 2017: two tortilla chips, one nacho cheese chips, four brown rice, two peanuts, two cheese jalapeno, six BBQ sauce, two Hawaiian Punch, two salsa, two coffee, two tortillas, two cookies, eight tuna, one vegetable flakes, one Skittles; and

    b.   On April 5, 2017: twenty-four chili noodles, ten sodas, two chocolate chips, two cheese jalapeno, one vegetable flakes, one Atomic Fireballs candy, four Skittles, two Snickers, six BBQ sauce, two tortillas, four cheesy rice, one coffee, two salsa, two mixed nuts, one cappuccino, two sour cream and onion chips, one tortilla chip, three BBQ potato chip, one oatmeal, and one teabags. [Ex. 4, Plaintiff's Inmate Commissary Fund, pp. 14-16].

7.    During Lent in 2017, Plaintiff also purchased numerous food items containing meat. [Ex. 4, Plaintiff's Inmate Commissary Fund, pp. 14-16].

8.    In 2018, Plaintiff was able to purchase meatless food products at the Hill Correctional Commissary during Lent, including, at least:

    a.   On March 9, 2018: two cookies, two BBQ potato chip, one corn chip, one sour cream and onion chips, three sugar free drink singles, three coffee, four honey bun, one chili with beans, one cappuccino, one peanut butter, twelve chili noodles, two peanuts, two banana granola bar, one cheese jalapeno;

    b.   On March 21, 2018: two peanut butter crème cookies, four soda, and two double dipped peanuts. [Ex. 4, Plaintiff's Inmate Commissary Fund, pp. 23-24].

9.    During Lent in 2018, Plaintiff also purchased numerous food items containing meat. [Ex. 4, Plaintiff's Inmate Commissary Fund, pp. 23-24].

10.    Since approximately a year prior to November 1, 2019, the date of Plaintiff's deposition, fish has been provided every Friday for at least one meal per day. During this time, at least one meal per Friday during Lent contained meat. [Ex. 1, Deposition of Plaintiff, 55:2-56].

11.     During each Friday during Lent in 2020, offenders at Hill Correctional Center were offered meatless meals at all three meals without having to sign up for a special meal. [Ex. 2, Declaration of Karen Norman Rees, ¶ 2].

12.     The current Chaplain of Hill Correctional Center intends to have the facility provide three meatless meal options each Friday during Lent in future years. [Ex. 2, Declaration of Karen Norman Rees, ¶ 3].

13.     Plaintiff complained to Defendant Rojas, then-Chaplain of Hill Correctional Center, every year from 2005 until Defendant Rojas's retirement in 2018, about wanting a religious diet during Lent. [Ex. 1, Deposition of Plaintiff, 69:13-70:7; Ex. 3, Declaration of Manuel Rojas, ¶ 21].

### *Cursillo and Ultreya*

14.     Plaintiff alleges that Defendant Rojas removed Plaintiff from the list to participate in Cursillo due to eleven years of complaints about wanting a religious diet during Lent. [Ex. 1, Deposition of Plaintiff, 69:13-70:7].

15.     Cursillo is a weekend retreat that occurs once a year. Ultreya is a reunion group, based on the Cursillo retreat, that occurs the third Tuesday of every month. [Ex. 2, Declaration of Karen Norman Rees, ¶ 2; Ex. 3, Declaration of Manuel Rojas, ¶ 1].

16.     The Cursillo retreat and Ultreya are held in the Chapel of Hill Correctional Center. [Ex. 2, Declaration of Karen Norman Rees, ¶ 5; Ex. 3, Declaration of Manuel Rojas, ¶ 2].

17.     The Hill Correctional Center Chapel has a maximum occupancy of 100. [Ex. 2, Declaration of Karen Norman Rees, ¶ 6; Ex. 3, Declaration of Manuel Rojas, ¶ 3].

18.     During the Cursillo retreat, there can be as many as 30 volunteers, or more, who come to Hill Correctional Center to participate in the retreat. [Ex. 2, Declaration of Karen Norman Rees, ¶ 7; Ex. 3, Declaration of Manuel Rojas, ¶ 4].

19.     The number of offenders who are allowed to participate in the Cursillo retreat is limited by the maximum occupancy of the Hill Correctional Center Chapel. [Ex. 2, Declaration of Karen Norman Rees, ¶ 8; Ex. 3, Declaration of Manuel Rojas, ¶ 5].

20.     Defendant Rojas, while Chaplain, received offender requests to participate in the Cursillo retreat in excess of the amount of space available in the chapel after accounting for the maximum occupancy requirement and the number of volunteers. [Ex. 3, Declaration of Manuel Rojas, ¶ 6].

21.     There were also times when Defendant Rojas received requests to participate in the Ultreya service in excess of the amount of space available in the Chapel. [Ex. 3, Declaration of Manuel Rojas, ¶ 7].

22.     Due to the occupancy limit and the number of volunteers, Defendant Rojas had to limit the number of offenders who could participate in the Cursillo retreat and the Ultreya services. [Ex. 3, Declaration of Manuel Rojas, ¶ 8].

23.     Defendant Rojas did not remove Mr. O'Neal, or other offenders who wanted to participate, from the list of individuals who wanted to participate in Cursillo and Ultreya. [Ex. 3, Declaration of Manuel Rojas, ¶ 9].

24.     However, due to the number of individuals who were on the list to participate, not all the offenders who requested to attend were able to attend every Cursillo and Ultreya. [Ex. 3, Declaration of Manuel Rojas, ¶ 10].

25.     When there were too many requests to participate in Cursillo or Ultreya, the decision was made to allow newer offenders who had not previously been able to attend Cursillo or Ultreya to participate in those events. If everyone who requested was allowed to attend these events, the number of individuals in the Chapel would exceed the maximum occupancy limit of the Chapel. [Ex. 3, Declaration of Manuel Rojas, ¶ 11].

26.     When there were too many requests, Defendant Rojas's clerk would go through the list of individuals who wanted to participate, determine who was eligible to participate, and Defendant Rojas would issue call passes to those individuals so they could attend. [Ex. 3, Declaration of Manuel Rojas, ¶ 12].

27.     This decision affected some individuals who, like Plaintiff, had been participating in these events for longer periods of time. [Ex. 3, Declaration of Manuel Rojas, ¶ 13].

28.     Plaintiff was only unable to attend one Cursillo retreat held in early 2016 and one Ultreya service, which was a continuation of the early 2016 Cursillo retreat, because the number of individuals who had requested to participate exceeded the number of spaces available in the Chapel. [Ex. 3, Declaration of Manuel Rojas, ¶ 14].

29.     Any complaints Mr. O'Neal may have made concerning Lent meals, or any other topics, played no role in the decision about would be able to participate in Cursillo or Ultreya. [Ex. 3, Declaration of Manuel Rojas, ¶ 15].

30.     Even though Mr. O'Neal was not able to participate in these services, Mr. O'Neal was able to practice his religion in other ways: he could obtain copies of the paperwork distributed at Cursillo and Ultreya in order to complete them in his cell; he could engage in individual prayer in his cell; he could read the Bible and any other religious texts he had in his possession; he was allowed to attend the other Catholic Tuesday services; he could watch Catholic mass on the

institutional television; and he could watch other Catholic programing on the institutional television. [Ex. 3, Declaration of Manuel Rojas, ¶ 16].

31.     Defendant Rojas did not prevent Mr. O'Neal from participating in other Cursillo retreats or Ultreya services. [Ex. 3, Declaration of Manuel Rojas, ¶ 17].

32.     Defendant Rojas did not prevent Mr. O'Neal from participating in other Catholic services. [Ex. 3, Declaration of Manuel Rojas, ¶ 18].

33.     For an offender to participate in regular Catholic Tuesday services, Defendant Rojas did not need to issue call passes to that offender. As long as the offender was listed as Catholic on his assignment sheet, and there was not a another reason, such as an offender being in segregation or the facility being on lockdown, that offender would have been allowed to participate in regular Tuesday Catholic services. [Ex. 3, Declaration of Manuel Rojas, ¶ 19].

34.     According to Mr. O'Neal's Assignment History, Mr. O'Neal has been listed as a Catholic participant for regular Catholic Tuesday services since March 27, 2015. [Ex. 3, Declaration of Manuel Rojas, ¶ 20; Ex. 3-1 Assignment History].

35.     The day before a regular Catholic Tuesday service, the shift commander would print a list of individuals who were listed as Catholic participants for regular Catholic Tuesday services and distribute those lists to the cell houses so those offenders could attend those services. [Ex. 3, Declaration of Manuel Rojas, ¶ 21].

36.     Defendant Rojas was not involved in generating the lists of individuals who could attend the regular Catholic Tuesday services on a weekly basis. [Ex. 3, Declaration of Manuel Rojas, ¶ 22].

37.     Based on Plaintiff's Assignment History listing him as a Catholic participant since March 27, 2015, Plaintiff would have been allowed to attend those services. [Ex. 3, Declaration of Manuel Rojas, ¶ 23].

38.     During the time relevant to this lawsuit, Plaintiff was able to attend Tuesday Catholic services "a good 90 percent" of the time. [Ex. 1, Deposition of Plaintiff, 60:11-17].

39.     Plaintiff missed approximately 10 percent of the Tuesday Catholic services due to the institution being on lockdown or Plaintiff being in segregation. [Ex. 1, Deposition of Plaintiff, 60:14-24].

### ***Plaintiff's Alternative Religious Practice***

40.     Since being at Hill Correctional Center, Plaintiff has been going to service every Tuesday, whether that service be Cursillo, Ultreya, or regular Catholic services, unless the facility was on lockdown. [Ex. 1, Deposition of Plaintiff, 48:2-22].

41.     While at Hill Correctional Center, Plaintiff had access to a Bible. [Ex. 1, Deposition of Plaintiff, 49:7-14].

42.     When Plaintiff did not attend Cursillo, Plaintiff was able to engage in the following aspects of religious practice:

> a.     Plaintiff was able to speak with the individuals who attended Cursillo to discuss what occurred at the event;
>
> b.     Plaintiff was always able to receive the paperwork concerning the three questions that were discussed at Cursillo;
>
> c.     Plaintiff was able to go over the Cursillo paperwork and the three questions in his head as he would have had he attended Cursillo; and
>
> d.     Plaintiff was able to read his Bible; [Ex. 1, Deposition of Plaintiff, 81:15-82:9].

### *Defendants Baldwin, Pelker, Gans, Frost*

43.     Plaintiff's claim against John Baldwin solely relates to John Baldwin's alleged involvement in the grievance procedure. [Ex. 1, Deposition of Plaintiff, 113:11-116:22].

44.     Plaintiff is suing Melissa (Phoenix) Pelker solely due to her involvement in the grievance procedure. [Ex. 1, Deposition of Plaintiff, 112:10-12].

45.     Plaintiff's is suing Steve Gans because Defendant Gans did not investigate Plaintiff's concerns regarding his religious diet in the way Plaintiff would have liked him to after Plaintiff filed a grievance concerning his religious diet. [Ex. 1, Deposition of Plaintiff, 99:16-103:4].

46.     Plaintiff's claim against John Frost is related to the grievance process and is the same as his claim against Steve Gans. [Ex. 1, Deposition of Plaintiff, 107:16-108:13].

47.     Defendant Frost provided Plaintiff with the Chaplain's response to Plaintiff's April 14, 2016 grievance, in which Chaplain Rojas indicated that he had not discriminated against Plaintiff or the other offenders who were not allowed to attend Cursillo because Cursillo was not a mandatory Catholic service, that some individuals were not allowed to participate in one Cursillo event due to safety and security concerns, and that a decision had been made to allow newer Cursillo participants to participate. [Ex. 6, Plaintiff's April 16, 2016 Grievance, p. 37].

48.     In that response, Chaplain Rojas also explained that Deacon Joe LaHood, the Prison Ministry Coordinator for the Archdiocese of Peoria, explained to him that Lent was about giving up something important, not necessarily food. [Ex. 6, Plaintiff's April 16, 2016 Grievance, p. 37].

49.     Chaplain Rojas further explained that Lent observance at Hill Correctional Center was not disallowed and that dietary offered fish on Fridays. [Ex. 6, Plaintiff's April 16, 2016 Grievance, p. 37].

50.     Grievance Officer, Steve Gans, then found that, based on a review of all available information, which included Chaplain Rojas's response,  there was no factual basis to substantiate Plaintiff's claims that he had been discriminated against or that his rights had been violated. [Ex. 6, Plaintiff's April 16, 2016 Grievance].

### *Stephanie Dorethy*

51.     Plaintiff alleges Stephanie Dorethy denied him a religious diet by not signing off on Plaintiff's religious diet request form in 2018. [Ex. 1, Deposition of Plaintiff, 91:5-16].

52.     Plaintiff has never spoken to Stephanie Dorethy about his request for a religious diet. [Ex. 1, Deposition of Plaintiff, 91:14-16].

53.     Stephanie Dorethy delegated her duties concerning signing off on religious requests to her assistant warden. [Ex. 1, Deposition of Plaintiff, 26:7-17; Ex. 5, Dorethy September 20, 2019 Interrogatory Responses, Response 3].

### *Freddie Britton*

54.     Plaintiff alleges Freddie Britton knew that Catholic Prisoners at Hill Correctional Center were not being provided their Catholic meal and did not do anything to help them. [Ex. 1, Deposition of Plaintiff, 94:18-95:2].

55.     Freddie Britton could not provide special diet meals unless he had a list from the Chaplain. [Ex. 1, Deposition of Plaintiff, 98:3-7].

56.     For an offender to receive a special diet tray, an offender must receive approval from the facility Chaplain and the Warden, or her designee. [Ex. 7, Defendant Britton's Response to Plaintiff's September 18, 2019 Request for Admissions, Response 5].

57.     Furthermore, on the one occasion Plaintiff asked Defendant Britton for a Catholic meal, Defendant Britton checked to see if there was a list for a Catholic meal. [Ex. 7, Defendant Britton's Response to Plaintiff's September 18, 2019 Request for Admissions, Response 8].

58.     Because there was no list for a Catholic meal, Defendant Britton could not provide Plaintiff a special diet tray, since he cannot provide special diet trays to offenders if they are not on a list to receive a special diet tray. [Ex. 7, Defendant Britton's Response to Plaintiff's September 18, 2019 Request for Admissions, Response 8].

### *Compensatory Damages*

59.     Plaintiff did not suffer any physical harm from not being able to attend Tuesday Catholic services. [Ex. 1, Deposition of Plaintiff, 61:1-19].

60.     The only physical injury Plaintiff alleges he suffered from not being served meatless meals every Friday is weight loss. [Ex. 1, Deposition of Plaintiff, 63:22-64:14].

61.     The most weight Plaintiff alleges he lost was "like maybe 5 pounds or something." [Ex. 1, Deposition of Plaintiff, 64:11-14].

62.     No doctor has ever told Plaintiff that the weight loss he suffered was a result of Plaintiff not getting meatless Fridays. [Ex. 1, Deposition of Plaintiff, 65:10-15].

## SUMMARY JUDGMENT STANDARD

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party only if there is a genuine dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id., at* 550 U.S. at 380 (emphasis original). An issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The nonmovant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Bd of Sch. Trs. of N. Newton Sch.*, 278 F.3d 693, 699 (7th Cir. 2002) (internal quotiations omitted).

A defendant moving for summary judgment on the grounds that a plaintiff cannot prove an essential element of the case plaintiff must prove at trial, has no burden to support his motion with affidavits or other evidence negating the plaintiff's claim. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168–70 (7th Cir. 2013). Instead, a defendant may simply point out to the Court the absence of evidence to support the claim plaintiff bears the burden of proving at trial. *Modrowski*, 712 F.3d at 1168. The Seventh Circuit has found that the United States Supreme Court has "expressly rejected" the argument that a defendant moving for summary judgment bears the burden of producing evidence to negate an element of the plaintiff's case. *Green v. Whiteco Industries, Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994).

## ARGUMENT

Plaintiff claims: (1) Defendants Rojas, Dorethy, Britton, Frost, Gans, Pelker, and Baldwin violated his First Amendment rights by failing to provide him with meatless meals on Fridays during Lent; (2) Defendants Rojas, Dorethy, Britton, Frost, Gans, Pelker, and Baldwin provided offenders with other religious affiliations with special religious diets but refused to provide special religious diets to Catholics during Lent; (3) Defendant Rojas retaliated against Plaintiff for complaining about a religious diet by removing Plaintiff from the list of individuals allowed to

participate in Cursillo; and (4) claims the Religious Land Use and Institutionalized Persons Act requires Plaintiff to be provided a meatless meal on Fridays during Lent.

## 1. Defendants Baldwin, Pelker, Gans, Frost, Dorethy, and Britton were not personally involved in the alleged First or Fourteenth Amendment violations.

Plaintiff claims against Defendants Baldwin, Pelker, Gans, Frost, Dorethy, and Britton, in their individual capacities, relate solely to his allegation that he was not provided a special religious diet on Fridays during Lent. Specifically, Plaintiff claims these Defendants violated his rights under the First and Fourteenth Amendments by failing to provide him with meatless meals on Fridays during Lent. However, Plaintiff cannot provide any evidence showing these Defendants were personally involved in these alleged constitutional deprivations.

## a. Plaintiff cannot provide any evidence showing and of the grievance defendants were personally involved in the alleged constitutional deprivations.

Plaintiff's claims against Defendants Baldwin, Pelker, Gans, Frost solely concern their alleged involvement in the grievance procedure related to the April 14, 2016 grievance filed by Plaintiff. [Exhibit 1, Deposition of Plaintiff, 113:11-116:22, 112:10-12, 99:16-103:4, 107:16-108:13; Ex. 6, Plaintiff's April 16, 2016 Grievance].  Part of Plaintiff's claim against Defendant Dorethy may concern her alleged involvement in the grievance procedure related to the April 16, 2016 grievance filed by Plaintiff.

Liability under § 1983 arises only when a plaintiff can show that a defendant "was personally responsible for a deprivation of a constitutional right." *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996). The doctrine of *respondeat superior* does not apply to § 1983 actions. *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690-95 (1978); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). "Liability depends on each defendant's knowledge and actions,

not the knowledge and action of persons they supervise." *Burks v. Raemich*, 555 F.3d 592, 594 (7th Cir. 2009).

Furthermore, participation in the prison grievance procedure, including ruling against an offender in a grievance does not cause or contribute to a constitutional violation. *Williams v. Raemisch*, 545 Fed. Appx. 525, 529 (7th Cir. 2013); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.").

Here, Plaintiff's claims are against Defendants Baldwin, Pelker, Gans, Frost are solely related to their responses to Plaintiff's April 14, 2016 grievances and grievance appeals. [Exhibit 1, Deposition of Plaintiff, 113:11-116:22, 112:10-12, 99:16-103:4, 107:16-108:13; Ex. 6, Plaintiff's April 16, 2016 Grievance]. However, this is insufficient to establish liability against them for Plaintiff's claims.

Here, the correctional counselor, John Frost, contacted Chaplain Rojas in order to respond to Plaintiff's April 14, 2016 grievance. Defendant Frost provided Plaintiff with the Chaplain's response, in which Chaplain Rojas indicated that he had not discriminated against Plaintiff or the other offenders who were not allowed to attend Cursillo because Cursillo was not a mandatory Catholic service, that some individuals were not allowed to participate in one Cursillo event due to safety and security concerns, and that a decision had been made to allow newer Cursillo participants to participate. [Ex. 6, Plaintiff's April 16, 2016 Grievance, p. 37].

In that response, Chaplain Rojas also explained that Deacon Joe LaHood, the Prison Ministry Coordinator for the Archdiocese of Peoria, explained to him that Lent was about giving up something important, not necessarily food. [Ex. 6, Plaintiff's April 16, 2016 Grievance, p. 37]. Chaplain Rojas further explained that Lent observance at Hill Correctional Center was not

disallowed and that dietary offered fish on Fridays. [Ex. 6, Plaintiff's April 16, 2016 Grievance, p. 37].

Grievance Officer, Steve Gans, then found that, based on a review of all available information, which included Chaplain Rojas's response,  there was no factual basis to substantiate Plaintiff's claims that he had been discriminated against or that his rights had been violated. [Ex. 6, Plaintiff's April 16, 2016 Grievance]. Plaintiff alleges that, subsequently, Stephanie Dorethy, Melissa Pelker, and John Baldwin concurred with Defendant Gans's determination that Plaintiff's claims were unsubstantiated and denied his grievance.

In *Saleh v. Pfister*, the plaintiff alleged the warden-defendant was aware of the alleged constitutional violation through the prison grievance procedure. 2020 WL 2197838, *2 (N.D. Ill. May 6, 2020). The Court found the plaintiff's allegation that the warden-defendant was aware of the situation through the grievance procedure was insufficient to establish personal involvement, especially since he concurred with the grievance officer's conclusion that the plaintiff's grievance was unsubstantiated. *Id.*

Here, like in *Saleh*, based upon Chaplain Rojas's explanations, each grievance and grievance appeal respondent concurred with Defendant Gans's conclusion that Plaintiff's claims were unsubstantiated. Defendants Baldwin, Pelker, Gans, Frost, and Dorethy had no involvement in the constitutional violations allegedly suffered by Plaintiff, their participation in the grievance procedure is insufficient to establish their personal involvement, and they are entitled to summary judgment in their favor.

**b. Plaintiff cannot provide evidence showing Defendant Dorethy was personally involved in denying Plaintiff a religious diet during Lent.**

Plaintiff further alleges that Defendant Dorethy, as Warden of Hill Correctional Center denied him a religious diet by not signing off on Plaintiff's religious diet request form in 2018.

[Ex. 1, Deposition of Plaintiff, 91:5-16]. However, Defendant Dorethy delegated her duties concerning signing off on religious requests to her assistant warden. [Ex. 1, Deposition of Plaintiff, 26:7-17; Ex. 5, Dorethy September 20, 2019 Interrogatory Responses, Response 3]. Therefore, because Defendant Dorethy was not responsible for signing off on religious diet requests, Plaintiff cannot establish Defendant Dorethy was personally involved in this alleged deprivation and Defendant Dorethy is entitled to summary judgment in her favor.

### c. Plaintiff cannot provide evidence showing Defendant Britton was personally involved in denying Plaintiff a religious diet during Lent.

Plaintiff alleges Freddie Britton knew that Catholics at Hill Correctional Center were not being provided their Catholic meal and did not do anything to help them. However, Plaintiff cannot provide any evidence showing Defendant Britton had the authority to provide offenders specific meals without approval from the Chaplain and the Warden, or her designee.

For an offender to receive a special diet tray, an offender must receive approval from the facility Chaplain and the Warden, or her designee. [Ex. 7, Defendant Britton's Response to Plaintiff's September 18, 2019 Request for Admissions, Response 5]. Plaintiff cannot provide evidence that he was ever approved for a diet tray and that Defendant Britton denied him that special diet tray. Furthermore, on the one occasion Plaintiff asked Defendant Britton for a Catholic meal, Defendant Britton checked to see if there was a list for a Catholic meal. [Ex. 7, Defendant Britton's Response to Plaintiff's September 18, 2019 Request for Admissions, Response 8]. Because there was no list for a Catholic meal, Defendant Britton could not provide Plaintiff a special diet tray, since he cannot provide special diet trays to offenders if they are not on a list to receive a special diet tray. [Ex. 7, Defendant Britton's Response to Plaintiff's September 18, 2019 Request for Admissions, Response 8].

Plaintiff cannot provide any evidence showing Defendant Britton had the authority to provide Plaintiff with a special diet tray for Lent or was in any way involved in depriving Plaintiff of such a tray. As such, Defendant Britton is entitled to summary judgment in his favor.

**2. The lack of a special Lent meal did not impermissibly burden Plaintiff's religious exercise in violation of the First Amendment.**

Plaintiff cannot provide evidence showing that the alleged failure to provide Plaintiff with three meatless meals each Friday during Lent constituted a substantial burden on Plaintiff's exercise of religion. "[A] prisoner's religious dietary practice is substantially burdened when the prison forces him to choose between his religious practice and adequate nutrition." *Nelson v. Miller*, 570 F.3d 868, 880 (7th Cir. 2009).

In *Nelson*, the Seventh Circuit found that the failure to provide the plaintiff with a non-meat diet on Fridays and during Lent substantially burdened the plaintiff's religious practice because there was evidence on the record establishing that there was likely insufficient nutrition in the regular diet if all meat were skipped, and the plaintiff pointed to evidence of the severe consequences of his abstention from meat during Lent. *Id.* Specifically, the plaintiff provided undisputed testimony that during Lent, when he abstained from all meat, he lost so much weight that he had to be hospitalized, and he further testified that he felt hungry, his bones began to protrude, he was cold, and he was depressed and anxious. *Id.* Because of the evidence produced by Plaintiff, the Seventh Circuit found that plaintiff would be required to forgo adequate nutrition on Fridays and during the forty days of Lent in order to comply with his sincerely held religious beliefs, and therefore, the denial of a non-meat diet substantially burdened his religious exercise. *Id.*

Here, unlike in *Nelson*, the evidence shows Plaintiff was not forced to choose between his religious practice and daily nutrition. With a few exceptions, Plaintiff has not eaten meat on

Fridays; instead, he has abstained from eating meat on Fridays. [Ex. 1, Deposition of Plaintiff, 58:10- 59:15]. During the timeframe relevant to this lawsuit, Plaintiff was able to abstain from eating meat on about 95% of Fridays. [Ex. 1, Deposition of Plaintiff, 60-7-10, 125:21-126:5].

Plaintiff cannot provide any evidence showing this abstention from meat on Fridays during Lent caused him any adverse health effects whatsoever. The only physical harm Plaintiff alleges he suffered from not being served meatless meals every Friday is weight loss. [Ex. 1, Deposition of Plaintiff, 63:22-64:14]. However, the most weight Plaintiff alleges he may have lost was "like maybe 5 pounds or something." [Ex. 1, Deposition of Plaintiff, 64:11-14]. Regardless, no doctor has ever told Plaintiff that the weight loss he suffered was a result of Plaintiff not getting meatless meals on Fridays, and Plaintiff cannot provide any verifiable medical evidence connecting his alleged weight loss to the failure to provide three meatless meals during Lent. [Ex. 1, Deposition of Plaintiff, 65:10-15].

Furthermore, Plaintiff was able to supplement his diet on Fridays through commissary purchases. In 2016, Plaintiff was able to purchase meatless food products at the Hill Correctional Commissary during Lent, including, at least: on February 19, 2016, two cookies, two cashews, one oatmeal, two cereals, two tortillas, eight sodas, eight chili refried beans and rice, one cheese jalapeno, three coffee, eight BBQ sauce, one instant milk, two apple pies, and two fudge dip granola; on March 7, 2016, one instant milk, three tuna with jalapenos, two popcorns, two cereals, five sour cream and onion chips, two nutty bars, four refried beans and rice, one cashews, one coffee,  one tortillas, six BBQ sauce, twelve chili noodles, and six sodas; and on March 18, 2016, two popcorn, two sour cream and onion chips, two cheese jalapeno, two tortillas, two tuna, two mayo, two Kool Aid, one cookie, one cashews, two sodas. [Ex. 4, Plaintiff's Inmate Commissary Fund, pp. 1-3]. During Lent in 2016, Plaintiff also purchased numerous food items containing

meat. [Ex. 4, Plaintiff's Inmate Commissary Fund, pp. 1-3]. It is clear that Plaintiff was able to completely supply himself with alternate meals during Lent had he desired to not eat meat on Fridays. Plaintiff was similarly able to purchase food sufficient to provide himself with meatless meals on Fridays during Lent in 2017 and 2018. [Ex. 4, Plaintiff's Inmate Commissary Fund, pp. 14-16; 23-24]. Additionally, since at least approximately a year prior to November 1, 2019, the date of Plaintiff's deposition, fish has been provided every Friday for at least one meal per day. During this time, at least one meal per Friday during Lent contained meat. [Ex. 1, Deposition of Plaintiff, 55:2-56].

Because Plaintiff cannot provide evidence that the alleged failure to provide three meatless meals on Fridays forced him to choose between his daily nutrition and his religious exercise, Plaintiff's religious exercise was not substantially burdened. *Nelson*, 570 F.3d 868, 880 (affirming district court's determination that the plaintiff's religious exercise was not substantially burdened because he was not put to a choice between his religious beliefs and adequate nutrition where avoidance of the meat of four-legged animals would leave the plaintiff with adequate nutrition if all meals with four-legged animals were skipped); *Walker v. Wright*, 2010 WL 4068945, *2-3 (C.D. Ill. Oct. 15, 2010) (granting summary judgment in favor of defendants on Frist Amendment claim that the plaintiff was denied a diet that met his religious and nutritional needs because the plaintiff failed to provide evidence showing, *inter alia*, that the food provided to him substantially burdened his religious practice or failed to provide him with adequate nutrition). Here, Plaintiff cannot provide evidence showing he would have lacked adequate nutrition if he avoided all meals on Fridays during Lent which contained meat, especially in light of the amount of food he was able to purchase at the commissary, and in light of the fact that fish was provided on Fridays during Lent. [Ex. 6, Plaintiff's April 16, 2016 Grievance, p. 37].

Therefore, because Plaintiff's religious exercise was not substantially burdened, Defendants are entitled to summary judgment on Plaintiff's First Amendment free exercise claim.

### 3. Plaintiff cannot provide any evidence showing Defendants intentionally and purposefully discriminated against him in violation of the Fourteenth Amendment.

"A prison administrative decision may give rise to an equal protection claim only if the plaintiff can establish that the prison officials intentionally and purposefully discriminated against him. *Meriwether v. Faulkner*, 821 F.2d 408, 415 n. 7 (7th Cir. 1987). To prove that defendants violated plaintiff's rights to equal protection, plaintiffs must show that defendants' actions both had a discriminatory effect and were motivated by a discriminatory intent. *Chavez Illinois State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001). A person bringing an action under the Equal Protection Clause may not merely show that he was treated unfairly as an individual; "the gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of person aggrieved by the state's action. *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982). The decisionmaker must have selected or reaffirmed a particular course of action at least in part because of, not merely in spite of its adverse effects upon an identifiable group." *Webb v. Budz*, 480 F. Supp. 2d 1050, 1056-57 (N.D. Ill. 2007) (internal quotations omitted).

Here, Plaintiff cannot provide any evidence that Defendants acted with discriminatory intent, that Defendants' actions had a discriminatory effect on his specific religion, or that Defendants acted because of the adverse effects that their actions would have on an identifiable group.

The evidence on the record shows Defendant Rojas did not purposefully and intentionally discriminate against Plaintiff, and Plaintiff cannot provide evidence showing Defendant Rojas's alleged actions were motivated by discriminatory intent. Instead, Defendant Rojas looked into Plaintiff's concerns and spoke with the individuals who would be aware of the requirements of the

Catholic religion. Defendant Rojas responded to Plaintiff's concerns about a special Lent meal by contacting Deacon Joe LaHood to determine the appropriate course of action. Defendant Rojas explained to Plaintiff that it was his understanding, based on his conversation with Deacon LaHood, that Lent did not specifically require a Catholic offender to give up meat for Lent or have a special meal. Even if Defendant Rojas's understanding of the requirements of Lent for Catholics is incorrect, Plaintiff cannot show that his alleged actions were taken with discriminatory intent. At most, Defendant Rojas's alleged actions would be considered negligent. Therefore, Defendant Rojas is entitled to summary judgment in his favor on Plaintiff's Fourteenth Amendment Equal Protection claim.

Similarly, the remaining Defendants are entitled to summary judgment because the record is completely devoid of and Plaintiff cannot provide any evidence showing that they took any action which discriminated against Plaintiff and Catholic offenders or that they took any of those alleged actions because they were motivated by an intent to discriminate against Plaintiff and Catholic offenders.

### 4. Plaintiff cannot provide evidence showing Defendant Rojas retaliated against him in violation of the First Amendment.

Plaintiff claims Defendant Rojas removed Plaintiff from the list to participate in Cursillo and Ultreya because Plaintiff complained to Defendant Rojas about not being provided meatless meals during Lent. "To establish a prima facie case of unlawful retaliation, a plaintiff must show: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 2020 WL 3781148, *2 (7th Cir. 2020) (internal quotations omitted).

Here, solely for the purpose of summary judgment, Defendant Rojas does not dispute that Plaintiff repeatedly complained to Defendant Rojas about the lack of Lent meals over the course of thirteen years—from 2005 to the time Defendant Rojas retired in 2018—and therefore, engaged in speech protected by the First Amendment. However, Plaintiff cannot establish a causal connection between the eleven years of complaints leading up to Plaintiff's temporary exclusion from Cursillo and Ultreya on March 15, 2016.

"To demonstrate the requisite causal connection in a retaliation claim, [a] plaintiff[] must show that the protected activity and the adverse action are not wholly unrelated." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000). Suspicious timing alone does not support a reasonable inference of retaliation. *Dace v. Smith-Vasquez*, 658 F.Supp.2d 865, 881 (S.D. Ill. 2009). "[I]nstead, plaintiffs must produce evidence that somehow ties the adverse [action] to the plaintiff's protected actions. The fact that one event preceded another does nothing to prove the first event caused the second." *Id.* (internal citation omitted); *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008) ("mere temporal proximity is not enough to establish a genuine issue of material fact.") (internal quotation omitted).

Here, Plaintiff alleges he complained to Defendant Rojas about Lent meals—the protected speech—for more eleven years prior to Plaintiff allegedly being removed from the list to participate in Cursillo on March 15, 2016. [Ex. 1, Deposition of Plaintiff, 69:13-70:7; Ex. 6, Plaintiff's April 16, 2016 Grievance]. Because of the lengthy history of Plaintiff's complaints, Plaintiff cannot establish a causal connection between his complaints and Defendant Rojas's preventing Plaintiff from attending Cursillo and Ultreya on March 15, 2016. No reasonable inference can be made that eleven years of complaints led to Plaintiff's temporary exclusion from Cursillo and Ultreya in March 2016.

Plaintiff is further unable to establish a causal connection between the protected speech and Plaintiff's inability to participate in Cursillo and Ultreya because Plaintiff's inability to participate in Cursillo and Ultreya would have occurred regardless of Plaintiff's complaints and Plaintiff's temporary exclusion from Cursillo participation was due to safety and security concerns related the maximum occupancy limit of the Hill Correctional Center Chapel. [Ex. 3, Declaration of Manuel Rojas, ¶¶ 2-15].

During the Cursillo retreat, there can be as many as 30 volunteers, or more, who come to Hill Correctional Center to participate in the retreat. [Ex. 2, Declaration of Karen Norman Rees, ¶ 7; Ex. 3, Declaration of Manuel Rojas, ¶ 4]. The number of offenders who can be allowed to participate in the Cursillo retreat is limited by the maximum occupancy of the Hill Correctional Center Chapel. [Ex. 2, Declaration of Karen Norman Rees, ¶ 8; Ex. 3, Declaration of Manuel Rojas, ¶ 5]. Defendant Rojas, while Chaplain, received offender requests to participate in the Cursillo retreat in excess of the amount of space available in the chapel after accounting for the maximum occupancy requirement and the number of volunteers. [Ex. 3, Declaration of Manuel Rojas, ¶ 6]. Due to the occupancy limit and the number of volunteers, Defendant Rojas had to limit the number of offenders who could participate in the Cursillo retreat and the Ultreya services. [Ex. 3, Declaration of Manuel Rojas, ¶ 8].

Defendant Rojas did not remove Mr. O'Neal, or other offenders who wanted to participate, from the list of individuals who wanted to participate in Cursillo and Ultreya. [Ex. 3, Declaration of Manuel Rojas, ¶ 9]. However, due to the number of individuals who were on the list to participate, not all the offenders who requested to attend were able to attend every Cursillo and Ultreya. [Ex. 3, Declaration of Manuel Rojas, ¶ 10]. When there were too many requests to participate in Cursillo or Ultreya, the decision was made to allow newer offenders who had not

previously been able to attend Cursillo or Ultreya to participate in those events. If everyone who requested was allowed to attend these events, the number of individuals in the Chapel would exceed the maximum occupancy limit of the Chapel. [Ex. 3, Declaration of Manuel Rojas, ¶ 11]. Defendant Rojas's clerk would go through the list of individuals who wanted to participate, determine who was eligible to participate, and Defendant Rojas would issue call passes to those individuals so they could attend. [Ex. 3, Declaration of Manuel Rojas, ¶ 12].

Here, Defendant has pointed to a specific safety and security concern—maximum occupancy limitations of the Hill Correctional Center Chapel—and specific non-retaliatory reasons—a neutral rule allowing newer offenders to participate in Cursillo and Ultreya when too many offenders requested to participate—for Plaintiff's specific temporary exclusion from Cursillo and Ultreya. This safety and security concern has been corroborated by the current Chaplain of Hill Correctional Center. [Ex. 2, Declaration of Karen Norman Rees, ¶¶ 5-8]. Therefore, Plaintiff cannot provide evidence sufficient to establish a causal connection between his protected activity and the allegedly adverse action, and Defendant Rojas is entitled to summary judgment on Plaintiff's First Amendment retaliation claim.

## 5. Plaintiff's Injunctive Relief Claim Should be Dismissed.

While not entirely clear, it appears Plaintiff seeks injunctive relief to force Hill Correctional Center to provide him with meatless meals during Lent. Because meatless meals are now provided at Hill Correctional Center during Lent and because there is no ongoing violation to remedy, this claim for injunctive relief is moot, barred by sovereign immunity, and barred by the Prison Litigation Reform Act.

It does not appear Plaintiff seeks injunctive relief with respect to his participation in Cursillo, but, to the extent he does, his claim should be dismissed because Plaintiff admits it is moot and that there is no chance that he will be unable to participate in Cursillo in the future.

### a. Plaintiff's Claim for Injunctive Relief is Moot.

Plaintiff's claim for injunctive relief for alleged violations of RLUIPA and the First and Fourteenth Amendments with respect to his allegation that he was deprived of meatless meals on Fridays during Lent is moot. Under Article III of the Constitution, cases that do not involve actual, ongoing controversies are moot and must be dismissed due to lack of jurisdiction. *Fed'n of Advert. Indus. Represetnatives, Inc. v. City of Chicago*, 326 F.3d 924, 928-29 (7th Cir. 2003), citing S*totts v. Cmty. Unit Sch. Dist. No. 1*, 230 F.3d 989, 990-91 (7th Cir. 200). "A court's power to grant injunctive relief only survives if such relief is actually needed." *Nelson v. Miller*, 570 F.3d 868, 882 (7th Cir. 2009).

When the source of plaintiff's prospective injury has been removed, there is no effectual relief whatsoever that the court can order. *Ozinga v. Price*, 855 F.3d 730, 734 (7th Cir. 2017), citing *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992). "Only when there is a substantial likelihood that the offending policy will be reinstated if the suit is terminated will a court recognize that the controversy remains live." Id. "Otherwise, [the Court] presume[s] that government officials have acted in good faith in repealing the challenged law or policy." *Id*.

Here, the individual who Plaintiff alleges was primarily responsible for depriving him of meatless meals on Fridays during Lent—Chaplain Rojas—is retired. Furthermore, each Friday during Lent in 2020, offenders at Hill Correctional Center were offered meatless meals at all three meals without having to sign up for a special meal. [Ex. 2, Declaration of Karen Norman Rees, ¶ 2]. According to the new Chaplain at Hill Correctional Center, it is her intent to have Hill

Correctional Center provide three meatless meal options each Friday during Lent in future years. [Ex. 2, Declaration of Karen Norman Rees, ¶ 3].

In *Bey v. Haines*, the plaintiff sued to force his current prison to keep a full-time dentist on staff to reduce long wait times. 802 Fed. Appx. 194, 200 (7th Cir. 2020). The district court dismissed the plaintiff's injunction claim as moot. *Id.* Because it was undisputed that the Department of Corrections had hired a full-time and a part-time dentist for his prison and that wait times had been reduced, the Seventh Circuit found that the plaintiff's request for injunctive relief was moot and affirmed dismissal of the plaintiff's claim.

Here, as in *Bey*, the requested injunctive relief has already been granted by Hill Correctional Center, and Plaintiff cannot provide any evidence showing there is a substantial likelihood that he will again be subjected to the alleged violation of his rights under RLUIPA. Therefore, Plaintiff's injunctive relief claim should be dismissed. Because the only remedy available to Plaintiff under RLUIPA is injunctive relief, Plaintiff's RLUIPA claim should be dismissed in its entirety.

**b. Plaintiff's Claim for Injunctive Relief is Barred by the Principles of Sovereign Immunity.**

The Eleventh Amendment expressly recognizes the limitations of jurisdiction of the federal courts imposed by the sovereignty of the states, see *Alden v. Maine*, 527 U.S. 706, 729-30 (1999), and, thus, "an unconsenting State is immune from suits brought in federal courts by its own citizens as well as by citizens of another state." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Simply put, sovereign immunity extends to prohibit all suits by individuals against a State in federal court, irrespective of the relief sought. *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (1988). In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court established a limited exception to a State's sovereign immunity in cases where a plaintiff challenges the constitutionality

of a state official's action in enforcing the law. *Green v. Mansour*, 474 U.S. 64, 68 (1985), citing *Ex parte Young*, 209 U.S. at 155-60. Specifically, the Eleventh Amendment does not prohibit a federal court "from granting prospective injunctive relief to prevent a [state official's] continuing violation of federal law." *Id.* However, a federal court remains without jurisdiction to grant retrospective injunctive relief against a State or state official. *Id.*; *see Stewart*, 131 S. Ct. at 1638 (providing that the *Ex parte Young* doctrine does not apply when a State, and not a state official, is "the real, substantial party in interest").

"A federal court possesses broad powers to remedy constitutional violations, but those powers are not boundless." *Al-Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir. 1991). When no continuing violation of federal law can be proven, "injunctive relief is not part of a federal court's remedial powers." *Id.*, citing *Green*, 474 U.S. at 71. Even in cases where the exception to sovereign immunity enunciated in *Ex parte Young* would seem otherwise applicable, a state official may still be able to avail himself of a State's sovereign immunity. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).

The Eleventh Amendment and the encompassing doctrine of sovereign immunity prevent federal courts from granting injunctive relief where there is no continuing violation of federal law. *Green v. Mansour*, 474 U.S. 64, 69 (1985); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102-03 (1984). A federal court's remedial power is limited by the Eleventh Amendment to prospective injunctive relief. *Edelman v. Jordan*, 415 U.S. 651, 677 (1974) (citing *Ex parte Young*, 209 U.S. 123 (1908)). An inmate seeking an injunction must show that there is a contemporary violation that will likely continue in the future. *Farmer v. Brennan*, 511 U.S. 825, 845-46 (1970).

Here, it is undisputed that Hill Correctional Center provided offenders with meatless meal options on Fridays during Lent in 2020 and that the current Chaplain of Hill Correctional Center intends to have Hill Correctional Center continue to provide meatless meal options during Lent. Because Plaintiff cannot show a contemporary violation of federal law that will likely continue into the future, his claim for injunctive relief is prohibited by the Eleventh Amendment.

### c. Plaintiff's requested injunctive relief is also prohibited by the Prison Litigation Reform Act.

Furthermore, Plaintiff's requested injunctive relief is barred by the Prison Litigation Reform Act. The Prison Litigation Reform Act provides that "prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1)(A). Here, Plaintiff cannot claim that he is presently suffering any violation of a federal right related to this action. In addition to the limitations imposed by Article III of the Constitution and by the Eleventh Amendment, the Prison Litigation Reform Act adds another layer of protection to Defendants. If there is nothing to remedy, there can be no prospective relief ordered. *Westefer v. Snyder*, 2013 WL 1286971, at * 2 (S.D. Ill. Mar. 27, 2013) (court vacated injunction in accordance with 18 U.S.C. § 3626(a)(1)(A) where the facility at issue was closed and there was nothing left to remedy). Plaintiff's request for injunctive relief cannot overcome the limitations imposed by the PLRA.

### d. To the extent Plaintiff seeks injunctive relief with respect to Cursillo attendance, Plaintiff's claim should be dismissed.

Plaintiff admits there is no chance he will be removed from the list to participate in Cursillo or Ultreya and has been participating consistently. [Ex.1, Deposition of Plaintiff, 148:6-17]. Therefore, as discussed above, any injunctive relief sought with regards to this claim is moot,

barred by sovereign immunity, and barred by the Prison Litigation Reform Act, and Plaintiff claim for injunctive relief should be dismissed.

**6. Defendants are entitled to summary judgment on Plaintiff's claims for compensatory damages.**

Even if the Court allows Plaintiff's claims to proceed, Defendants are entitled to summary judgment on Plaintiff's claims for compensatory damages. Section 1997e(e) of the Prison Litigation Reform Act ("PLRA") provides that "[n]p federal action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody **without a prior showing of physical injury**." (emphasis added).

**a. Cursillo and Ultreya Attendance**

Here, Plaintiff cannot provide any evidence showing he suffered any physical injury as a result of being prohibited from attending Cursillo and Ultreya. In fact, Plaintiff admits that he did not suffer any physical injury as a result of not being able to attend any Tuesday Catholic services. [Ex. 1, Deposition of Plaintiff, 61:1-19]. Therefore, Defendants are entitled to summary judgment on Plaintiff's claims for compensatory damages related to his alleged inability to attend these Catholic services. *See Grayson v. Goetting*, No. 15-981-SMY-RJD (July 18, 2017) (finding the Prison Litigation Reform Act bars Plaintiff's prayer for compensatory damages for the alleged violation of his First Amendment right of religious exercise related to the forcible shearing of his dreadlocks because the plaintiff cannot recover damages for emotional an mental harm and the record contained no evidence of physical injury).

**b. Religious Diet on Fridays During Lent**

The only physical injury Plaintiff alleges he suffered from not being served meatless meals every Friday is weight loss. [Ex. 1, Deposition of Plaintiff, 63:22-64:14]. The most weight Plaintiff alleges he lost was "like maybe 5 pounds or something." [Ex. 1, Deposition of Plaintiff, 64:11-

14]. No doctor has ever told Plaintiff that the weight loss he suffered was the result of Plaintiff not being provided meatless meals on Fridays during Lent. [Ex. 1, Deposition of Plaintiff, 65:10-15]. Furthermore, Plaintiff cannot provide any evidence connecting uncorroborated allegation of weight loss to a lack of meatless meals on Fridays during Lent. Even if Plaintiff could provide such evidence, Plaintiff's alleged minor weight loss is insufficient to support his assertion that he suffered a physical injury. *See Pearson v. Wellborn*, 471 F.3d 732, 744 (7th Cir. 2006) (a plaintiff's unelaborated claim that he was mentally and physically depressed and lost at least 50 pounds was insufficient to support the plaintiff's assertion that he suffered a physical injury); *Winger v. Pierce*, 2011 WL 13131248, *7 (C.D. Ill. Oct. 24, 2011) (finding the plaintiff's vague complaints of weight loss, lethargy, headaches, aches, and pains are too *de minimis* to constitute a showing of physical injury under Section 1997e(e)); *Davis v. District of Columbia*, 158 F.3d 1342, 1349 (C.A.D.C. 1998).

Therefore, Plaintiff's claims for compensatory damages are barred by the Prison Litigation Reform Act and Defendants are entitled to summary judgment in their favor on those claims.

**7. Defendants are entitled to judgment in their favor on Plaintiff's claims for punitive damages.**

Even if the Court finds there is a question of material fact which precludes judgment in favor of Defendants on any of Plaintiff's claims, Defendants are still entitled to summary judgment on Plaintiff's claims for punitive damages because Plaintiff cannot provide any evidence Defendants took any action with evil motive or intent or in reckless disregard of Plaintiff's federally protected rights. *See Calhoun v. DeTella*, 319 F.3d 936 (7th Cir. 2003) ("Punitive damages are awarded to punish and deter reprehensible conduct[]" and "may be awarded under § 1983 upon a showing of evil motive or intent, or reckless or callous indifference to the federally protected rights of others."); *Ollie v. Atchison*, 753 Fed. Appx. 406, 407-08 (7th Cir. 2019) (finding

the plaintiff was not entitled to punitive damages on his claim that he was denied access to congregate religious services).

Because the record is devoid of any evidence supporting a claim that Defendants acted with evil motive or intent, Defendants are entitled to summary judgment on Plaintiff's claims for punitive damages. *See Sangraal v. Godinez*, 2018 WL 1318923, *5 (S.D. Ill. Mar. 13, 2018) (granting summary judgment in favor of defendants on punitive damages claim where the record contained "no facts that would suggest religious animus motivated [d]efendants or that [d]efendants acted with the knowledge or intent to violate [the plaintiff's] constitutional rights.").

Here, as discussed *supra*, Defendant Rojas's actions were informed by Deacon Joe LaHood, were based on his understanding of Lent requirements for Catholics, and were informed by his understanding that Plaintiff was able to have meatless Fridays during Lent if he chose to do so.  At most, the evidence on the record concerning Plaintiff's allegations relating to his request for meatless meals on Fridays during Lent, if true, would amount to mere negligence on behalf of Defendant Rojas, not intentional discrimination. The remaining Defendants had no involvement in the alleged constitutional violations, and Plaintiff cannot provide any evidence they acted with evil motive or intent or with reckless disregard of Plaintiff's rights. Therefore, Defendants are entitled to summary judgment on Plaintiff's claims for punitive damages.

**8. Defendants are Entitled to Qualified Immunity.**

Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *White v. Pauly*, 137 S. Ct. 548, 551 (2017). To determine whether an official is entitled to qualified immunity, a two part

inquiry is required: (1) whether a constitutional right would have been violated on the facts alleged, and (2) whether the right alleged to have been violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). Courts may exercise their discretion in deciding which of the two prongs should be addressed first in light of circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 233 (2009).

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal citations and quotations omitted). This is a high bar. *Kramer v. Pollard*, 497 Fed. Appx. 639, 642 (7th Cir. 2012). Existing precedent must have placed the statutory or constitutional question beyond debate. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). An official who makes a reasonable mistake as to what the law requires is entitled to the defense of qualified immunity. *Saucier*, 533 U.S. at 205. Courts may grant qualified immunity on the ground that a purported right was not clearly established by prior case law, without resolving the often more difficult question whether the purported right exists at all. *Reichle*, 566 U.S. at 664.

Here, under the first prong of the analysis, the facts alleged do not give rise to a violation of Plaintiff's rights under the First or Fourteenth Amendments. As analyzed in the preceding sections, Defendants Baldwin, Pelker, Gans, Frost, and Dorethy were not personally involved in the alleged constitutional violations. Under the second prong of the analysis, Defendants are also entitled to qualified immunity because if they were to be held liable despite no evidence of personal involvement, it would constitute a heightened standard under current law.

Defendants are entitled to qualified immunity on Plaintiff's First Amendment free exercise claim. Under the first prong of the analysis, the evidence on the record shows Plaintiff's religious practice with respect to his request for meatless meals on Fridays during Lent was not substantially

burdened by Defendants, a showing requisite to a finding of liability. Under the second prong of the analysis, Defendants are entitled to qualified immunity because if they are held liable for a First Amendment free exercise violation absent evidence they substantially burdened Plaintiff's religious exercise, it would constitute a heightened standard under current law.

Defendants are entitled to qualified immunity on Plaintiff' Fourteenth Amendment equal protection claim. Under the first prong of the analysis, it is clear that Plaintiff cannot provide any evidence showing Defendants intentionally and purposefully discriminated against Plaintiff and cannot provide any evidence that Defendants acted with discriminatory intent, that Defendants' actions had a discriminatory effect on his specific religion, or that Defendants acted because of the adverse effects that their actions would have on an identifiable group. Under the second prong of the analysis, Defendants are entitled to qualified immunity because if they are held liable for a Fourteenth Amendment equal protection violation absent these requisite showings, it would constitute a higher standard under current law.

Furthermore, Defendant Rojas is entitled to qualified immunity on Plaintiff's First Amendment retaliation claim. Under the first prong of the analysis, the evidence on the record established Defendant Rojas did not retaliate against Plaintiff by precluding him from participation in Cursillo and Ultreya. Instead, Plaintiff's temporary exclusion from these activities was based on legitimate safety and security concerns related to the maximum occupancy limit of the Hill Correctional Center Chapel. Plaintiff cannot provide evidence showing that his eleven years of complaints concerning Lent meals was a factor that motivated Plaintiff's temporary exclusion from Cursillo and Ultreya. Without such a showing, Plaintiff cannot prove Defendant Rojas engaged in retaliation. Under the second prong of the analysis, Defendant Rojas is entitled to qualified immunity because if Defendant Rojas were found liable for retaliation absent evidence connecting

Plaintiff's protected speech to an adverse action by Defendant Rojas, it would constitute a heightened standard. Furthermore, Defendant Rojas would be entitled to qualified immunity because it is not clearly established that making a decision to limit participation in a religious service based on safety and security concerns related to maximum occupancy limits of the space in which the events were held or that determining who be allowed to participate based on a neutral reason would constitute retaliation under the First Amendment.

Wherefore, Defendants respectfully request this honorable Court grant summary judgment in their favor and deny Plaintiff any relief whatsoever.

Respectfully submitted,

Manuel Rojas, Stephanie Dorethy, Freddie Britton, John Frost, Steve Gans, Melissa Pelker, and John Baldwin,

Defendants,

Kwame Raoul,
Illinois Attorney General,

Attorney for Defendant,

Clayton J. Ankney, No. 6320224
Assistant Attorney General
500 South Second Street
Springfield, Illinois  62701
(217) 785-4555 Phone                    By:  s/Clayton J. Ankney_____
(217) 782-8767 Fax                            Clayton J. Ankney
Email: cankney@atg.state.il.us                Assistant Attorney General

35

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

Aaron O'Neal, N53022,           )
                                       )
       Plaintiff,              )
                                       )
       v.                    )     Case No. 18-4063-SEM-TSH
                                       )
Manuel Rojas, *et al.*,         )
                                       )
       Defendants.           )

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 20, 2020, the foregoing document, ***Defendants' Motion for Summary Judgment***, was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record, and I hereby certify that on the same date, I caused the foregoing to be mailed by United States Postal Service, in an envelope properly addressed and fully prepaid, to the following:

Aaron O'Neal, N53022
Hill Correctional Center
P.O. Box 1700
Galesburg, IL 61401

<u>s/Clayton J. Ankney</u>
    Clayton J. Ankney
    Assistant Attorney General