E-FILED
Friday, 18 September, 2020 01:27:37 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

AARON O'NEAL,
     Plaintiff,

vs.

MANUAL ROJAS, et al.,
     Defendant's

Case No. 18-CV-4063-
Judge: Sue E. Myerscough
Magistrate Judge Tom Schanzle-Haskins

PLAINTIFFS' RESPONSE TO DEFENDANT MOTION FOR SUMMARY JUDGMENT

COMES NOW, Plaintiff, AARON O'NEAL, pro se, and for his response to the Defendant's, MANUAL ROJAS, ET AL, Motion for Summary Judgment, state as follows:

INTRODUCTION

On March 22, 2018, Plaintiff, an inmate within the Illinois Department of Corrections filed this case under 42 U.S.C. §1983. Plaintiff alleges he was denied the right to the free practice of his religious tenets by Defendant's Manual Rojas, Freddie Britton, John Frost, Steve Gans, Stephanie Dorethy, Melissa Phoenix, and John Baldwin in violation of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. §2000cc et seq., the Equal Protection Clause of the Fourteenth Amendment to the United States Con-

stitution, and Retaliation by a single Defendant (Rojas). The seven Defendant's herein are employed by the Illinois Department of Corrections. Plaintiff O'Neal assert 1) Defendant's Rojas, Britton, Frost, Gans, Dorethy Phoenix, and Baldwin denied him the well established IDOC protocol of receiving a meatless diet on Fridays during Lent, thus violating his Fisrt Amendment and RULIPA; 2) Defendant's Rojas, Britton, Frost, Gans, Dorethy, Phoenix, and Baldwin did so while offender's of other religious affiliations with their specially required religious diets while refusing Plaintiff O'Neal his special religious diet during Lent; 3) Defendant Rojas retaliated against the Plaintiff for complaining about Catholic's not being provided their religious diet during the Lenten season by removing him from the list to participate in the religious programing, Cursillo/Ultreya

Defendant's Rojas, Britton, Frost, Gans, Dorethy, Phoenix, and Baldwin each directly participated in denying Plaintiff the aforestated constitutional guarantees when they chose to disregard well established IDOC protocol of providing Catholic offenders supplimental dietary meals during recognized religious holidays, such as Lent, and the mandate for religious meals outlined in the Illinois Code of Corrections and are therefore personally involved in each of the asserted constitutional violation's.

The Defendant's now seek summary judgment on Plaintiffs' First and Fourteenth Amendment claims and his claim under RULIPA for denying him the free exercise of his religion in not providing him a meatless supplimental and for retaliating against him for having questioned why Catholic's at Hill Correctional Center were not being provided meatless supplimental meals during the season of Lent. As discussed more fully below, Defendants' are not entitled to summary judgment and their motion should be denied.

2.

## RESPONSE TO UNDISPUTED MATERIAL FACTS

1. As a devout Roman Catholic Plaintiffs' religion require him to abstan from meat during the season of Lent on Fridays. [Ex. 3 at par. 6 and 7].

2. Mr. O'Neal has practiced his religiously held beliefs faith and has abstained from meet products on all Fridays of the year, but particularly during the season of Lent even though the Illinois Department of Corrections (IDOC) failed to provide a supplimental meatless meal. Defendant's allege in their motion for summary judgment that there have been a few exceptions where Plaintiff has eaten meat during Lenten season and on Fridays and rely on Plaintiffs deposition to support their allegation [Defen. Ex. 1, Deposition of Plaintiff, 58: 10-59: 15] that he may have comprimised the tenets of his religious based faith. However, on the date of the deposition, November 21, 2019, Plaintiff informed counsel for the defendant's prior to the taking of the deposition that he was requesting beforehand a copy of the deposition. [Defen. Ex. 1, Deposition of Plaintiff, 4: 6-8]. The purpose of his request was to go over the deposition and if it became necessary to timely contest any error with deposition itself. Defendant's counsel never honored his request to receive an advanced copy of his deposition. In fact, Mr. O'Neal did not receive his copy of his deposition from the Defendants' It was only after he received the Defendants' motion for summary judgment that he for the first time read the contentens of his allege statement in the deposition. It is for the aforestated reasons that the Plaintiff move this court to strike Defendants exhibit 1 in in its entirety, as Plaintiff never made any such allegation that he has eaten meat on Fridays during Lent on any occasion.

3. For the same reasons as stated in paragrap 2 of this response, Plaintiff move this court to strike Ex. 1, Deposition of Plaintiff, 60-7-10, 125:21-126:5] as Plaintiff never stated during his deposition that he was able to abstain from eating meat on about 95% of Fridays.

4. The fact that Plaintiff was able to purchase meatless food products at the Hill Correctional Commissary during Lent is inconsequential and does not relieve Defendants of their obligatory lawful responsibility to provide him with a meatless meal on Fridays during Lent. [Group Ex. H-82 §3 and H-83 §5] [Doc. 000054 §425.70(a)][Doc 000009 §425.101(E)(1)][Doc 000050 §425.40(a)(b) (1)(2)(B)][Doc 000005 §§ 2 & 5][Doc 000012 § 04.25.101(F)(c)92)][Doc 000014 §G (1)(a)][Doc 000054 §425.70(a)(b)(c)(d)(e)][Doc 000010, 000011, 000012 §§§ 04. 25.101(e)(1), (2)(a)(b)(c), (6)(4), and (F)(1)(c)(2)]. Plaintiff move the court to strike Defendants' summary judgment at 4.

5. Counsel for the Defendants fail to understand the true nature of the claims raised and that the claims have absolutely nothing to do with Plaintiff being vegatarian or the implication that Plaintiffs' purchase of meat products somehow make his religious beliefs less sincere. The season of Lent is about giving up something of value to the participant. There is nothing of greater significance, than food, Plaintiff can give up in recognition of Christs sacrifice for all mankind that would be practical in a prison setting; thus, Plaintiff choose to give up eating meat products at brea kfast, lunch and dinner on Fridays during the Lenten season. The IDOC at Hill permit offenders to shop for items they may need twice per month, every 2 weeks. Plaintiff O'Neal must avail himself of the opportunity to purchase food item to eat during the times other than Lent: Saturday's through Thursday's to sustain his dietary need for 12 of the 14 days he he is able to eat as he choose. Mr O'Neal's 2016 food

4.

purchases are irrelevant and inconsequential to this claim. As these facts are disputed by Plaintintiff he move this court to strike Defendants summary judgment undisputed material fact at 5-9.

6. Refer to Plaintiffs disputed material fact at 5 of this response.

7. Refer to Plaintiffs disputed material fact at 5 of this response.

8. Refer to Plaintiffs disputed material fact at 5 of this response.

9. Refer to Plaintiffs disputed material fact at 5 of this response.

10. Defendants point to the fact that beginning in November 2018 fish was being provided every Friday for at least one meal each Friday. Discounting the fact that Defendants admit that until recently they have not being providing Catholic's non-animal products to eat on Fridays and then only for one meal instead of all 3 meals, supporting Plaintiffs' allegation that meatless meals have not been being provided to Catholic offenders on Fridays since he arrived at Hill Correctional Facility in 2005 until late 2018.

Plaintiff O'Neal object to the characterization by Defendants counsel presented at paragraphs 20 through 28 of Defendant's summary judgment.Defendant's counsel would have this court believe offenders participation in Catholic services Cursillo and Ultreya was managed on a first come first served request basis. Whereas, once an offender was on the Ultrea list for services that persons name remained on the list of Catholic's attending the service until, either the offender missed a certain number of appearances at the service, either transfered, or mandated to segregation for a disciplinary infractions of IDOC rules. It is at that point that the number of volunteers to be permitted to attend the Ultrea services would be managed based on the number of offenders participating for the reason that it is the offender's spiritual health and growth that mattered most over the number of volunteers desiring to attend at the facility. Moreover, it does not take 30 volunteers to conduct the monthly

5.

Ultrea service and never has. Furthermore, Cursillo/Ultreya is a reunion
group that take place the third Tuesday of each month. Regular Cursillo takes
place just once a year; generally around November of a given year. Defendant
Rojas removed Plaintiff O'Neal in 2016 from the list to attend Cursillo/Ultreya.
Plaintiff remained removed from that list for 9 months. Said removal came on
the heels of Plaintiff questioned Defendant Rojas during Catholic Service in
the presence of Defendant Rodriquez and Deacon O'Tool. [Ex. F. Offender Grie-
vance at 18; Ex. F. Offender Grievance at 11-14], [Ex. O.1. Declaration of
Aaron O'Neal at 12. respectively.

12. During the times that Plaintiff O'Neal was not permitted to attend the
Cursillo/Ultreya service every third Tuesday of the month Defendant made no
effort to provide him with copies of the materials distributed at the
Cursillo/Ultreya services even though Defendant Rojas was personally aware of
Plaintiffs' desire to attend those services. [Ex. O.1. Declaration of Aaron
O'Neal at 15.

13. The decision to preclude any offender from participating in any services
at any IDOC facility, particularly, Hill is an administrative decision and
can never be mandated by a prison offender. [Ex. O.1. Declaration of Aaron
O'Neal at 14. To do so would be tantamount to an offender issuing a direct
order to the prison shift commander to prepare a list of Catholic participants
for regular Catholic Tuesday services. [See Defen. Summary Judgment at 26-28
and Defen. Ex. 3 at 12-14], [Defen. Summ. Judg. at 30-36, and Defen. Ex. 3 at
16-22]. respectively.

14. In clarifying Plaintiffs' claims against Defendant's Baldwin, Phoenix,
Gans, and Frost. Plaintiffs' allegations against those Defendant's, as it
relate to this claim is that neither defendant followed their own IDOC proto-
col for investigating grievance issues. Had either of them done so they would

6.

became aware that Plaintiff O'Neal's religious practice and tenets were
sanctioned by the Religious Practive Advisory Board or that the IDOC Admini-
strative Directives also sanctioned those practices and would have had no
choice but to find the grievance issue in favor of Plaintiff and direct Defen-
dant Rojas to comply with Departmental Rules and Policies. [Here Plaintiff Rely
on Each Exhibit And Document Listed in Para. #4 of This Response]. That De-
partmental Rule or Policy would have been to permit Plaintiff the free practice
of his religious tenets and allow him to properly observe the Lenten season by
authorizing his request for a supplemental meatless meal during breakfast, lunch,
and dinner during Lent, a thing Defendant Rojas was aware of at the times but
use the denial as an instrument of retaliation. [see Defe. Summ. Judg. at 49].

15. Defendant Dorethy alleges she delegated her duties concerning signing
off on grievances, but never state by name who she delegated those duties to.
[Defen. Summ. Judg. at 53]. Nevertheless, whomever she delegated her duties to
was obviously also delegated the authority to sign her name in the required
section of the grievance that indicated Chief Administrative Officers signature.
There is no such space at the lower portion of the grievance summary that is-
dicate chief administrative officer's designee. The grievance response was
intentionally signed; Warden S. Dorethy, not designee of warden Dorethy. [Plain.
Ex. O]. It is clear from all the evidence in the case that the Defendant's
would have this court believe that Mr. O'Neal was not required to be provided
an alternative meatless meal in observance of his religious tenets to abstain
from meat products during Lent as stated in the IDOC Administrative Rules and
Policies on religious tenets, the Religious Practice Advisory Board, or the
Code of Correction, or that Mr. O'Neal and other Catholic offender's were re-
quired to be provided meatless meals during the Lenten season and that a notice
was required to be posted in the offender dining hall and chose not to provide

7.

such a list to the dietary department at Hill; thus not providing Plaintiff with the requested dietary supplement of a meatless meal and finding his valid complaints as being moot. [Ex. 7, Defendant Britton's Response to Plaintiff's September 18, 2019 Request for Admissions at 8.].

16. Over the period of time Plaintiff O'Neal, as a Catholic, was being denied a meatless dietary supplemental meal for breakfast, lunch, and dinner during Lent, those Friday's of Lent and general Friday's, including ash Wednesday translate into 52 meals times three, plus one each year. Multiplied by the eleven years Defendant Rojas has been denying Catholic offender's Illinois Code of Corrections, Illinois Department of Corrections Administrative Rules, and Religious Practice Advisory Board approved meals in recognition of the Catholic celebration of Lent. Plaintiff has been being denied meatless meals in observance of his religious practice through to the year he filed his grievance. Without factoring in the years 2017 thru 2020, Plaintiff was denied 1,731 meals by Defendant Rojas, meals that were exclusively connected to his religious observance. Without evidentiary proof that Plaintiff did not suffer physical harm because of these denials, Defencannot rightly claim he never suffered physical har where Plaintiff has claimed he lost weight because of because of having to fast because of having been served meat by Defendant's on Fridays and during Lent. Once again, Plaintiff object to Defendant's characterization drawn from the deposition  of  the most weight he lost was; "five pounds or something." Plaintiff never described his weight loss in that manner or amount. As a result Plaintiff request that the deposition taken by the Defendant's counsel November 21, 2019 be striken in its entirety.

8.

ADDITIONAL MATERIAL FACTS

Plaintiff incorporate indisputed material facts 1-28 from his Motion for Summary Judgment as if fully set forth herein.

ARGUMENT

A. Summary Judgment Standard:

When a motion for summary judgment is filed by a party that will bear the ultimate burden of proof at trial, the motion must be supported by evidence that, if not controverted, would entitle the party to a directed verdict at trial. Colotex Corp. v. Catrett, 477 S. 317, 331 (1986). A court may only consider only admissible evidence in assessing a motion for summary judgment. Parker v. Four Seasons Hotels, 845 F.3d 807, 812 n. 3 (7th Cir. 2017). The evidence ruled upon at the summary judgment stage must be competent evidence of a type otherwise admissible at trial. Gunsville v. Walker, 583 F.3d 979, 985 (7th Cir. 2009) (citing Bombard v. Fort Wayne Newspapers, Inc., 92 F3d 560, 562 (7th Cir. 1996) Affidavits and declarations used in support of a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify to matters stated." Fed. R. Civ. P. 56(c)(4). In determining whether there are any genuine issues of material fact, the court must draw all inferences in the light most favorable to the non-movant. Krchnavy v. Limagrain Genetics Corp, 294 F.3d 871, 875 (7th Cir. 2002).

B. Personal Involvement:

Defendant's who directly participate in a constitutional violation may be held liable for their own actions. Martin v. Lane, 766 F.Supp. 641, 649-50 (N.D. Ill. 1991); See also Conner v. Reinhard, 847 F.2d 384, 397 (7th Cir.), cert.

9.

488 U.S. 856 (1988); accord, Greason v. Kemp, 891 F.2d 829, 836 (11th Cir. 1990)("a supervisor can be held liable under section 1983 when a reasonable person in the supervisor's position would have known that his conduct infringed the constitutional rights of the plaintiff,...and his conduct was causually related to the constitutional violation committed by his subordinate... ...")(footnote and citations omitted). The Defendant's in this cause are each directly involved in the violation's of Plaintiff's constitutional rights, and thus, are liable because they failed to carry out IDOC policies and procedures outlined in the Illinois Code of Corrections, Administrative Directives, and the Religious Practice Advisory Board. See 730 ILCS 5/3-2-2, 3-8-8, and 3-10-9, 20 Ill. Adm. Code 504 (E)(1)(a)(b)(Administrative Review Board Proceedings 04.01. 115(E)(1)(a)(b), Document #000026); 730 ILCS 5/3-1-1 and 3-7-2, 20 Ill. Adm. Code 425 and 504(Religious Diets 04.25.102(E)(1)(2), Document 000013); 20 Adm. Code 502.20 (Accomodation of Religious Diets 425.70(a), Document #000054); 730 ILCS 5/3-2-2 and 3-7-2, 20 Ill.Adm. Code, 501 and 504 (Religious Diets 04.25.102(E) (1)(2)(4)(F)(2)(G)(2)(b). Document #000013-000014); 730 ILCS 5/3-2-2 and 3-7-2 20 Ill. Adm. Code 425 (Chaplaincy Services/Religious Practice Advisory Board(E) (1)(c)(2)(a)(b)(c)(4)(e)(6)(c)(f)(4)(7)(F)(2)(G)(2) Document's #000009, 00001- 12)04.01.114(2)(5)(6)(Grievance Officers Procedures, Document #000023); and Illinois Department of Central Management Services(2)(5), Document #000005.

   The aforestated laws, policies, and procedures are required knowledge for every IDOC employee and were readily accessable to to them. Following the egregious act of Defendant's Rojas and Britton, the other Defendant's, Frost, Gans, Dorethy, Phoenix, and Baldwin exacerbated the constitutional violation of denying Plaintiff O'Neal and other Catholic offender's their right to the free practice of their religion when they failed to act in their capacity as investigators and enforce IDOC policies to protect and or prevent the consti-

10.

tutional violations against Mr. O'Neal. "acts of omission are actionable to
the same extent as acts of commission. Smith v. Ross, 482 F.2d 33, 36 (6th Cir.
1978), accord, Alexander v. Perrill, 916 F.2d 1392, 1395 (9th Cir. 1990)
(prison officials "can't just sit on your duff and not do anything" to prevent
violations of rights.). Officials or employees who know or, reasonably should
know, of a constitutional violation may be held liable if they fail to do any-
thing about it. Al-Jundi v. Mancusi, 926 F.2d 235, 240 (2d Cir. 1991)(Super-
visor who knew of brutality or purportedly avoided finding out about it could
be held liable); Smith v. Rowe, 761 F.2d 360, 369 (7th Cir.1985). Each of the
Defendant's in this cause maintain positions that enabled them to correct the
unconstitutional violation against Mr. O'Neal and failed to do so. Prison
officials who know, or should know,that a prison employee is utilizing uncon-
stitutional procedures may be held liable if they fail to correct the violation
by continuing the custom of due process violation. Williams v. Smith, 781 F.2d
at 324. The administrative Defendant's failed to conduct even a minimal inves-
tigation, and thus, are liable where they failed to properly conduct and
correct due process violations they had notice of. Lewis v. Smith, 855 F.2d 736,
738 (11th Cir. 1988). Instead of refering to IDOC policies and procedures on
religious practice and diets and or confering with Plaintiffs list of witnesses
on his grievance form Defendant's Frost and Gans erroneous found Plaintiff's
complaintof constitutional violation to be moot. Their finding was supported
by Defendant Dorethy (or her alleged designee whom she never named). And like
wise, Defendant's Phoenix and Baldwin turned a blind eye to the very policies
they either ecreated or were aware of and denied Plaintiff's grievance without
the slightest effort of investigation.

Since there is no question raised concerning Plaintiff O'Neal's sincerly
held religious beliefs Mr. O'Neal will move beyond citing authority to that

11.

regard. However, the First Amendment to the Constitution protects the "free
exercise" of religion. U.S. Const. Amend. I. Consequently, the Supreme Court
has held that "reasonable opportunities must be afforded to **all** prisoners to
exercise the religious freedom guaranteed by the first and Fourteenth Amend-
ments without fear of penalty.<u>Cruz v. Beto</u>, 405 U.S. 319,322 n 2, 92 S.Ct. 1079
(1972). See also the Religious Land Use and Institutionalized Persons Act, 42
USC § 2000cc, et seq.

The evidence of personal involvement and liability is clear. Defendant Rojas
should have never abdicated his obligation to follow the Illinois Code of
Corrections, Administrative Directives, Policies, Rules, and Religious Practice
Advisory Board and instead, eleven years later state he relied on information
from the codefendant's Robert Rodriquez and Joseph LaHood determine if he would
allow Plaintiff to observe the tenets of his faith.

At every turn Mr. O'Neal was met with opposition by either the Defendant's
or agents of the Defendant's in his effort to establish his right to the free
exercise of his religion and how it was wreaking havoc on his spiritual, mental,
and physical health. During the times relevant to his claim Plaintiff sought to
see a dietician due to the inordinate weight loss and how it was causing him to
feel because of it. Plaintiff was told by various agents of the Defendant's
that no dietician was working at Hill Correctional Facility. Inspite of that
Mr. O'Neal was not deterred and sought to obtain information concerning the
name of the dietician for the IDOC to establish that his weight loss was and
constant sick feeling was due to the missed meals during Fridays and during the
Lent season. [at. Plaintiff's verified Declarations of Aaron O'Neal para. 18-20.
Dietician elcosed documents 2 of whom are Co-Defendants see. Dieti-
Plaintiff did, at first, try to suppliment his meatless meal requirement with cian
food items from personal store bought meatless item. However, a good 99% of exhibits
the offender commissary items are heavily infused with sodium for preservative

12.

purposes. It did not take Mr. O'Neal very long to recognize the increase in

his blood pressure by the way he was feeling due to dizziness, headaches, etc.

that amout of sodium 3 times per day became obvious it was unhealthy, par-

ticularly because of his ethnicity and a history of hypersion in his family

background. Consequently, requiring Mr. O'Neal to provide for his own meat-free

meals substantially burdened his right to the free exercise of his religion,

and substantially burdened the free exercise of his religious practice when his

when his well established right was burdened by each of the Defendant's in this

cause·by the denial of his meatless diet at each level he appealed to.

It was as much a violation of RULIPA as it was of the First Amendment to con-

dition Plaintiff's meatless meal on his proving that he had a right to observe

the tenets of Lent when the Illinois Code of Corrections, Administrative

Directives on Rules and Policies, and the Religious Practice Advisory Board

clearly set forth that the only requirement necessary to observe the Lenten

season was to request that he be provided·a meatless meal in observance of his

religious practice. However, the Defendant's conditioned his practice to be

established by other means of proof, while at the same time making no such

requirement of the various other religions at Hill Correctional Facility who

were freely being provided their religious diets.

Section 3 of RULIPA provides that; "No government shall impose a substantial

burden on the religious exercise of a person residing in or confined to an

institution...even if the burden results from a rule of general applicability,

unless the government demonstrates that imposition of the burdern on the person

is (1) is in futherence of a compelling governmental interest.; and (2) is the

least restrictive means of furthering that compelling governmental interest."

Here, the Defendant's cannot demonstrate either of the 2 prongs in Section

3 of RLUIPA. (42 U.S.C. § 2000cc-1(a)). Furthermore, the Establishment Clause

precludes the government from favoring one religion over another without a

legitimate secular reason. <u>Linnemeir v. Bd. of trustees of Purdue Univ.</u>,

260 F.3d 757, 759 (7th Cir.2001); <u>Metzl v. Leininger</u>, 57 F.3d 618, 621 (7th

Cir. 1995). The tye First Amendment states that "Congress shall make now law

respecting an establishment of religion..." <u>Lemon v. Kurtzman</u>, 403 U.S. 602,

612-13, 91 S.Ct. 2105 (1971). Failing to provide Mr. O'Neal and other Catholic's

with meatless meals during Fridays and Lent, while disregarding well estalished

law, by-laws, Policies and Rules they knew of, while proving dietary religious

meals for other religious organization's at Hill completely turned a blind-eye

mandated in the Establishment Clause and the First Amendment to the U.S. Con-

stitution.

C. First Amendment Standard

An act in retaliation for exercising a constitutionally protected right

violates the Constitution. <u>DeWalt v. Carter</u>, 224 F.3d 607, 618 (7th Cir. 2000),

citing, <u>Mt. healthy City Sch. Dist. Bd. of Educ. v. Doye</u>, 429 U.S. 274, 283-84,

(1997)). Prison officials may not retaliate against inmates for complaining about

their conditions of confinement. See, e.g., <u>Walker v. Thompson</u>, 288 F.3d 1005

(7th Cir. 2002); <u>Babcock v. White</u>, 202 F.3d 267 (7th Cir. 1996); <u>Cain v. Lane</u>,

857 F.2d 1139 (7th Cir. 1988). A Plaintiff must prove: (1) that he engaged in

activity protected by the First Amendment; (2) he suffered a deprivation that

would likely deter First Amendment activity; and (3) that the First Amendment

activity was at least a motivating factor behind Defendants' retaliation.

<u>Springer v. Durflinger</u>, 518 F.3d 479, 483 (7th Cir. 2008; see also, <u>Kidwell v.</u>

<u>Eisenhauer</u>, 679 F.3d 957 (7th Cir. 2012); <u>Bridges v. Gilbert</u>, 557 F.3d 541,

547 (2008).

Throughout the many years that Plaintiff has been attending Ultreya, at least

11, there has never been a circumstance where an offender had to be removed

from the attendance list for Ultreya every third Tuesday of the month. It was

only after Plaintiff O'Neal continuesly pressed the issue of Catholic

14.

offender's being restricted from observing the practice of their religious
faith, and only because Plaintiff confronted Defendant Rojas in front of Deacon
Joe LaHood and Defendant Rodriquez. [Declaration of O'Neal at 11]. Subsequent
To Mr. O'Neal speaking with Defendant Rojas, he wagged his finger in Plain-
tiff's face and stared intently at his idenfication card clipped on the lapel
of his shirt. [Declaration of O'Neal at 12], [Doc. #1, Complaint at 26-35],
[Plaintiffs' Ex. F., at 11].

D. Damages:

 This court should find that their exist a question of material fact as to
whether the Plaintiff suffered some sort of injury as a direct result of the
Defendants' invidious acts of discrimination against him in disallowing him
to freely exercise his religious tenets when they contravened the Illinois Code
of Corrections, Administrative Directives on Rules and Policies, and the
guidance of the Religious Practice Advisory Board and not feeding him according
to his religious madate. It is obvious the length of time this complaint covers
the denial of Plaintiff being fed that physical injury would occur. And as the
Plaintiff made an attempt to establish that an injury was occuring, he was
met with direct resistence by either Defendants' themselves or their agents in
not providing him the needed information to discern who and how to contact the
IDOC dietician. Where the Plaintiff's injury is impossible to measure because
of the length of time of these violations, Plaintiff would encourage the court
to consider allowing the Plaintiff to recover "Presumed" damages. In Memphis
Community School Dist. v. Stachura, 477 U.S. at 310, it has been suggested that
presumes damages are particularly appropriate in First Amendment cases. Walje
v. City of Winchester, Ky., 827 F.2d 10, 12-13 (6th Cir. 1987); see also
Hessel v. OHearn, 977 F.2d 299 301 (7th Cir. 1992). Moreover, In Nolley v.

County of Lee, , 802 F.Supp. 898,905 (W.D.N.Y. 1992), there the court found in favor of the plaintiff and awared presumptives damages in the amount of $10 a day for invasion of privacy. Thus, the Defendants' are not entitle to summay judgment on compensatory damages, as there remains a material issue of genuine fact regarding Plaintiff injury.

The Defendants' are not entitled to judgment in their favor regarding punitive damages. Section 1997e(e) is not a bar on the recovery of punitive damages. The Seventh Circuit has found that, even though a prisoner may be precluded from compensatory damages, a prisoner may persue all other claims. Cassidy v. Dept. of Corr., 199 F.3d 374, 376-77 (7th Cir. 2000); see also, Zehner v. Trigg, 133 F.3d 459, 462-63 (7th Cir. 1997)

E. Qualified Immunity:

The Defendants' in this cause each had a duty to correct the constitutional violations now before the court. Where the Defendants' had a duty, pursuant to Illinois Code of Corrections, Administrative Directives on Rules and Policies, and the Religious Practice Advisory Board, any claim of qualified immunity is defeated. Feagan v. Broglin, 693 F.Supp. 736, 739 (N.D. Ind. 1988). Clearly established laws were set in place in the First and Fourteenth Amendments to the United States Constitutiona, Religious Land Use of institutionalized Persons Act, Illinois Code of Corrections, Illinois Department of Corrections Administrative Directives governing Rules and Policies over Religious Practices and Diets, and the guidance of the Illinois Department of Correction Religious Practice Advisory Board. (1st and 14th Const. Amend.; 730 ILCS 5/3-2-2, 3-8-8, 3-10-9; 730 ILCS 5/3-1-1, 3-7-2; 20 Illinois Administrative Code 504(E)(1)(a)(b); 20 IAC 04.25.101(E)(1)(2); 20 IAC 425.70(a), and 20 IAC 425 (E)(1)(2)(4)(F)(2)(G) (2)(b), respeectively). Consequently, the Defendants' argument for qualified immunity must fail where the above authority clearly outline that an offender's

clearly established religious rights are protected. Koger v. Bryant, 523 F.3d
789, 803 (7th Cir. 2008); see also, Foster v. Runnels, 554 F.3d 807, 815-16
(9th. Cir. 2009).

Finally, Plaintiff O'Neal dispute Defendants' counsel disin-
genuous characterization of his claim's of retaliation by Defendant
Rojas for removing his name from the Ultrea list. Defendant's
counsel Cursillo and Ultreya interchangebly which creates the
appearance that Mr. O'Neal was denied attending Cursillo, a yearly
retreat, only once that specific year, while mentioning Ultreya
services and an appearant single denial. However, Defendant Rojas'
act of retaliation by removing his name from the Ultreya list lasted
for a period of 9 months. Plaintiff never stated he was denied
attendance to the Cursillo retreat. Plaintiffs' claim is, and has
always been that Defendant Rojas retaliated against him by removing
his name from the Ultreya service attendance list. [Compl. at Par.
35.]. Cursillo is a program all to itself. Cursillo/Ultrea  is a
program independant of Cursillo which occur one per year and Ultreya
(or Cursillo/Ultreya) occur the third Tuesday of the month. Thus,
Plaintiff disput Defendants' claims at 14, 15, 26, and 28 of their
motion for summary judgment. Plaintiff dispute the allegation's
raised by declarant Karen Norman Rees at 2, 7, 8, 9, and 10 of her
declaration. Plaintiff nor Catholic's were provided meatless meals
at Hill without having to sign up. It is a policy requirement that
offender's submit a DOC 0388 form (Offender Request For Religious
Diet). Declarants' allegations about Cursillo are insignificant to
Plaintiff's claims. Moreover, the diet request process cannot be
abrogated by low level employees.The Declarant recently denied

Plaintiff's request for a non-meat vegan Friday's meal and his request for a religious diet concerning the up-coming 2021 Lent observance was recently denied by Declarant Karen Norman Rees. [Offender Request for Religious Diet, Hereto Attached]. Interestingly though, she go on to state; "In 1983 the revised Code of Cannon Law was put in place which states, 'Abstinence [is] to be observed on Ash Wednesday and the Friday of the passion and Death of out Lord Jesus Christ' (Cannon 1251). 'All persons who have completed their fourteenth year are bound by the law of abstinence' (Cannon 1252. The U.S. Catholic Conference of Bishops (USCCB) extended this law to include all Fridays in Lent. No mention is made of Fridays out-side of Lent after Vatigan II." It must be infered that this same information was also available to Defendant Rojas. Mr. O'Neal is **Bound** by the Cannons of Catholic law to observe and practice Lent. (Cannon 1252). It is for the above reasons that Plaintiff ask this court to strike Declarant Rees' declaration in its entirety, or alternatively, strike paragraphs 2, 7, 8, 9, and 10.

Plaintiff Defendant Dorethy's claims at 51 and 53 of Defendants' summary judgment. while Defendant alleges she delegated the authority to her assistant warden to sign off on the denial of Plaintiffs' request for a religious diet, she never identifies who that person is. Hill Correctional Facility has 2 assistant wardens. Furthermore, her allegation of delegating her duty to someone else to refuse Plaintiff a religious diet does not relieve her of any responsiblity related to liaby in this claim for the reasons stated in the Personal Liability section of this response. Whereas, Defendant Dorethy has never responded to her actions in denying

Mr. O'Neal grievance in support of her subordinates.

The is no absence of evidence supporting this courts' ruling against the defendant's. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Anderson v. Libby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). Plaintiffs' religious as a Catholic is clearly on file at the prison and has been confirmed by Defendant's in this claim. Thus entitling him to a meatless diet during all times relevant to this claim. Additionall it was completely unnecessary for the grievance officer's and Defendant Dorethy to disregard the use of administrative tools set in place to remedy such a complaint. Plaintiffs' grievance served to notify the IDOC administration of the problem of him being denied his nonmeat religious diet and an opportunity to correct it. Instead of correcting the problem through the means made available to do so, the process was abused by the defendants as well as Plaintiffs' clearly established constitutional rights.

WHEREFORE, Plaintiff respectfully move this Honorable Court to deny Defendants' summary judgment and gran t Plaintiff the relief as specified in his complaint.

STATE OF ILLINOIS)
COUNTY OF KNOX  )

Subscribed And Sworn To Before Me

on the 15th Day of September, 2020. by
                                    Aaron O'Neal

_____
NOTARY PUBLIC

Respectfully Submitted,

Aaron O'Neal PLAINTIFF
AARON O'NEAL N53022 PRO SE
HENRY HILL CORRECTIONAL CENTER
P.O. BOX 1700 GALESBURG, IL
                              1401.

SALLY A HUFFER
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
December 26, 2022

-19-