4:18-cv-04063-SEM-TSH   #120-2   Page 1 of 47
PLAINTIFF'S GROUP EXHIBIT "B."

E-FILED
Friday, 18 September, 2020  01:27:38 PM
Clerk, U.S. District Court, ILCD

AARON O'NEAL, PLAINTIFF-APPELLANT

V.

CHAPLAIN MANUEL ROJAS,
chief ADMINISTRATIVE
officer/WARDEN STEPHANIE
DORETHY, Food AdMINISTRATO
Lt. CROTHERS, et al,
DefendANTS-APPELLEES.

# SWORN AFFIDAVIT

I, OTIS JACKSON B57008, the undersigned, After first being DULY
Sworn under oath, who reside At the following respectiv
Address: HENRY HIII C.C. P.O. Box 1700 GAlesBurg, Illino
depose and state the following Matters are trUe ANI
correct both in substance and fact to the best of My
own PersoNal KNowledge and belief, and Further
State that my relation to the plaintiff is as such:
A FEIIow BRETHREN OF CATHOIIC FAITH.

I attest to the fact that upon My arrival at HeNry
Hill C.C. on date 11-11-2010. I hereby entered the
INStItutIoN as a Practicing Member of Catholic FaIth
After having attended the "Catholic cursillo 3rd TuesdAy
Service" for over 3 Years. I Personally spoke with Deacol
Joe o Toole who was the lead Deacon of Service at the
time at Hill C.C. and Chaplain Rojas, three Years later
To Deacon Robert Rodriquez in who had later becaus
Deacon of Service at Hill C.C. about receiving first bein
Provided with an alternative Non-Meat Religious

Chaplain Rojas, stated "He's Looking into it!"

However, there has never been any religious diet Meals prepared nor given to any catholic Parishioners during Lent Fridays here at Hill c.c."

## FURTHER AFFIANT SAYS NOT:

Dated: August 1, 2017    Signature: _Jackson, Otis_
B-57008

Subscribed and Sworn to Before Me on

THis _25_ day of _Augt_ 2017

_[signature]_

NOTARY PUBLIC

OFFICIAL SEAL
**KASSIDY L. TIMMONS**
Notary Public - State of Illinois
My Commission Expires 9/28/2019

IN THE UNITED STATES DISTRICT COURT OF KNOX COUNTY, PEORIA, ILLINOIS

Aaron O'Neal, Appellant.

      v.

Chaplain Rojas, chief
Administrative Officer/                   CaseNo._____
Warden Stephanie Dorethy,
Food Administrator, Lt.
Crothers of Internal affairs,
et al, appellees

## AFFIDAVIT

Now Comes your affiant, Mr. BERNADE MOLINA and swears to and affirms
as follows:

I am a born Catholic in whom Has attended Catholic school since Childh-
ood, and has entered Henry Hill C.C. on JUNE 16 2012 in which I off-
icially attended all catholic Services here as well.

However, I have constantly complained to Chaplain Rojas, Deacon Joe and
Deacon Robert Rodriguez about thee importance of "Approvin A NoN-Meat
RELIGIOUS DIET MEAL FOR LENT FRIDAYS "

In which chaplain Rojas always went on to state:
"The Lent Meal Issues Are Being Discussed!"

However, to this very day and year August, 2017 (nothing) has ever become of this, for Catholic Members of Henry Hill C.C. has yet to be fed throughout every passing year, during lent fridays.

Henry Hill C.C. was and is suppose to provide all Catholic Parishioners with an alternative non-meat religious diet meals, for thee entire day of Lent fridays during Breakfast,Lunch,and Dinner.

The problem here is: chapalin Rojas at the end of day is the one who is suppose to tender to the food administrator of Hill C.C. an approved religious diet non-meat meal list

However, chaplain Rojas "REFUSES" to tender such list, and due to his negligence,all Catholic Parishioners has hereby not been fed,For (we) have been discriminated against and been shown an indifference to; for chaplain Rojas accommodates every other religious denomination groups here at Hill C.C./ yet not Catholic Parishioners.

Catholics therefore should be afforded equal rights as (others), for Catholics should not have to be hassled when it comes to reciving  their religious diet Lent meals.

This is hereby "Unfair and Prejudice" in thee highest degree ,and therefore must be (ceased at once.)

FURTHER YOUR AFFIANT SAYETH NOT.

MR. BERNABE MOLINA
AFFIANT, PRO SE
MR. BERNABE MOLINA
ID# K54957
Henry Hill C.C.
P.O.Box 1700
Galesburg, ILLINOIS
        61401

STATE OF ILLINOIS )
                  )   SS
  COUNTY OF KNOX  )

I, the undersigned, a Notary public in and for said Knox
County in the State Of Illinois, DO HEREBY CERTIFY that
Mr. *BERNABE MOLINA* personaly known to me to be same person
whose name is subscribed to the forgoing instrument,appeared
before me this day in person and acknowledged that he signed
and delivered the said instument,his free and  voluntary
act for the uses and purposes set forth

*Bernabé Molina*

          Given under my hand and Notarial
AT this __25__ day of August,2017.

**OFFICIAL SEAL**
**KASSIDY L. TIMMONS**
Notary Public - State of Illinois
My Commission Expires  9/28/2019

          NOTARY PUBLIC SIGNATURE
              AND SEAL.

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: APRIL 14, 2016. | Offender: (Please Print) MR. AARON O'NEAL | ID#: N53022 |

Present Facility: HENRY HILL C.C.  Facility where grievance issue occurred: HENRY HILL C.C.

**NATURE OF GRIEVANCE:** 4/15/16

☐ Personal Property  ☑ Mail Handling  ☐ Restoration of Good Time  ☐ ADA Disability Accommodation
☑ Staff Conduct  ☑ Dietary  ☐ Medical Treatment  ☐ HIPAA  CHAPLAIN ROJAS
☐ Transfer Denial by Facility  ☐ Transfer Denial by Transfer Coordinator  ☑ Other (specify) TAVE OFFICER  WARDEN STEPHANE  DOROTHY

☐ Disciplinary Report: ___/___/___
Date of Report          Facility where issued

Note:  Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved): I hereby am bringing forth a grievance against the following mentioned prison personnel's Chaplain Rojas, Chief Administrative Officer / Warden Stephanie Dorothy, The Dietary Department Of Henry Hill Correctional Center.

I am also calling forth witnesses in this matter, in support of these claims brought against the aforementioned personnel. The Names being requested for witness testimonial are as follows: Deacon JOE, Deacon ROBERT RODRIGUEZ. "Grievance is in reply of Chaplain Rojas Memo to inmate dated 3-18-16"

Relief Requested: FOR CHAPLAIN ROJAS TO BE REMOVED FROM (HIS) CURRENT STEAD, AND TO BE REPLACED BY SOMEONE WHO'S NON/BIAS AGAINST INMATES OF CATHOLIC FAITH!

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Mr. Aaron O'Neal          N53022          4, 14, 2016.
Offender's Signature          ID#          Date
(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 04, 20, 2016  ☑ Send directly to Grievance Officer  ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: See the attached response and include it with any further submission of this grievance.

_____          _____          07, 13, 2016
Print Counselor's Name          Counselor's Signature          Date of Response

---

**EMERGENCY REVIEW**

Date Received: ___/___/___  Is this determined to be of an emergency nature?  ☐ Yes; expedite emergency grievance
☐ No, an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_____          ___/___/___
Chief Administrative Officer's Signature          Date

Distribution: Master File; Offender  Page 1  TURN OVER TO NEXT  DOC 0046 (8/2012)

Questions that I would like to have presented to both Deacons are as follows:

Question #1.) Did MR. O'NEAL ever bring forth to your attention: that all CATHOLIC participants of Henry Hill C.C. were not receiving an "alternative meal" during lent, other than (meat) in which CATHOLICS aren't to consume, during this period of every friday?

Question #2.) Did MR. O'NEAL ever state that other religious groups were given "celebratory feast" after their "traditional" religious period... however, CATHOLIC weren't given the same opportunities to have any feast of any kind?

Question #3.) Did MR. O'NEAL state that Chaplain Rojas (quoted): CATHOLICS can have "celebratory feast"... but it's up to the Deacon to address such issue, and not that of MR. O'NEAL?

Now to address the grievance at hand, is due to the unjust treatment of ALL "CATHOLIC INMATES" of Henry Hill C.C. which falls into the category of numerous Constitutional Violations.

Constitutional Violations are as follows:

1.) First Amendment Right.
2.) Fourteenth Amendment Right...
   in violation of "Religious Land Use and Institutionalized Persons Act (RLUIPA)

3.) Infringement to exercise religious beliefs.

MR. O'NEAL has been showed bias tactical treatment by their above mentioned prison personnel, for the foregoing reason(s): Prejudice / Discrimination, Retalitation

2000 cc-1 Protection Of Religious Exercise Of Institutionalized Persons

2000 cc-2 Judicial Relief
(e) Prisoners
(f) Authority of United States to Enforce This Act.

2000 cc-3(e) Governmental discretion in alleviating burdens on religious exercise

Inmates claim that prison chaplain is impeding his First Amendment right to free exercise of religion brought under 42 USCS § 1983 and 42 USCS § § 2000 cc et seq.

§ 2000cc-1 Protection Of Religious Exercise Of Institutionalized Persons

(a) General rule. No government shall impose substantial burden on the religious exercise of a person residing in or confined to an institution as defined in section 2 of the civil Rights Of Institutionalized Persons Act (42 USC. 1997), even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person.

Governmental discretion in alleviating burdens on religious exercise.

No preemption or repeal. Nothing in this Act shall be construed to preempt State law, or repeal Federal law, that is equally as protective of religious exercise as, or more protective of religious exercise than, this Act.

The Constitution protect each individual's religious beliefs.

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE (Continued)**

To allege a violation under equal protection clause, Planiff must prove purposeful discrimination direct at an identifiable or suspect class. U.S.C.A. const. Amend. 14

Prisoners are entitled to receive visits from Clergy and religious advisors and to confer privately with prison religious personnel.

Must show (Municipality's) custom or policy caused deprivation on Constitutional Right. 42 U.S.C.A. §1983.

    Grievance Offender will now move to establish how in fact (HIS) Constitutional Rights were violated:

1.) Upon entering the institution an inmate is first asked to identify (his) or (Her) religious preference during the admission process.

2.) He or SHe is only permitted to attend the religious services and activities of that particular religion.

3.) Grievancing Offender MR.O'NEAL has hereby followed all "rules and regulations" of that above right to pratice "Freedom Of Religious Right", for I entered the institution as a "CATHOLIC". ✱ Please see exhibit A.

4.) Grievancing Offender is an active Catholic Participant. I was born and raised under Catholicism and also attended Catholic school during my child hood.

5.) Catholic inmates here at Henry Hill C.C., for numerous years have been deprived an Alternative meal during "LENT", which starts on Ash wednesday and concludes on Easter Sunday... which prohibits All catholics from consuming meat products on fridays.

6.) Dietary Department Personal here at Henry Hill C.C. "Refuses" to accommodate thee necessary alternative meal such as (fish) due to... they're left at a dis-

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE** (Continued)

advantage, for Chaplain Rojas "Refuses" to supply the diet-ary department with an approved LENT list for Catholic participants.

7.) After having spoke to Dietary Dept. personal concerning Catholics not having received an alternative meal for LENT, I was told until Chaplain Rojas provide dietary dept. with such needed list... that there would be (NO) alternative meal of any kind during LENT.

8.) I personally expressed that The Dietary Dept. could go off the back of each inmate identification card as to who would be entitled to receive such alternative meal, for again: inmates religion appears on back of inmates ID cards.

9.) I was told by Dietary Dept. personal that that practice would still not solve the problem at hand, for there are Catholic inmates here at Henry Hill C.C. that does not have Catholic stated on the back of their ID card... and if they would give those that state Catholic on the back of their ID alternative meals, and not those that don't "would be a form of discrimination".

10.) Chaplain Rojas without a doubt is suppose to prepare Catholic LENT alternative list to dietary department however, chooses not to do so, which not only leaves dietary dept. personal from preparing how much food to prepare for this services meal, but also deprives Catholics from our friday LENT meals.

11.) When I personally decided to approach and speak with Chaplain Rojas concerning indifference and discrimin-ation which has been pointed "specifically" at Catholic participants here at Henry Hill C.C., Chaplain Rojas became visibly furious with my inquisition and began to wag and point his finger in my direction in a menacing "I'll Show You" fashion.

12.) I was only asking Chaplain Rojas: Why was it that (HE) Refuses to make out a Catholic LENT list, and why is it ... that (other) religious groups receive

Distribution: Master File, Offender                                                    DOC 0046 (8/2012)

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE** (Continued)

what they're (entitled) to, plus receives "Celebratory feasts" after each one of their traditional religious periods, but not (CATHOLICS)... Chaplain Rojas stated (CATHOLICS) can have "celebratory feasts" but it's up to the Deacon to address such issue, and not myself.

13.) As I continued to ask another question, Chaplain Rojas began zooming in on my identification card and was making a mental note of who I was.

14.) After walking away from Chaplain Rojas and the conversation in general, Chaplain Rojas seen that I went directly over to both Deacon JOE and Deacon ROBERT RODRIGUEZ ... for I had just informed them both of my conversation in which I just had with Chaplain Rojas.

15.) Deacon JOE, stated that Deacon ROBERT RODRIGUEZ deals with the catholic affairs here at Henry Hill C.C. since (HE'S) THEE APPOINTED DEACON in charge of affairs.

16.) This here has been an ongoing problem with Chaplain Rojas having been denied all CATHOLICS of their religion LENT meals, for this hasn't been the first time in which CATHOLICS have complained to the Deacon(s) concerning not receiving alternative meals for LENT.

17.) Chaplain Rojas was blatantly obvious wasn't operating with professional decorum, for come next "Cursillo/Ultreya" which was held on **March 15, 2016**. Chaplain Rojas had therefore "Retaliated" against me, by personally removing" my name off of thee (approved) Cursillo/Ultreya list.

18.) Cursillo/Ultreya is a Catholic/CHRISTIAN service that takes place every 3rd. tuesday of each month.
* Please note: Do not confuse Cursillo/Ultreya with regular "Cursillo Service" which only takes place 1 every year, which runs for (3) days from

friday thru Sunday usually during the month of November.

19.) I've attended all "CATHOLIC SERVICES" Stemming from my entering the institution dating back to March, 2005 til 2016, and never once have I ever been turned away nor denied service, until Chaplain Rojas felt as though I was prying into their mistreatment of CATHOLICS here at Henry Hill C.C.

20.) Chaplain Rojas entered me a (memo) in the mail stating the following: Cursillo has had some issues with call passes. We can only use them not a T-80 (detail) list. The problem of space to accomodate the participants is affecting us now. O'NEAL you have been part of Cursillo for years. I must give the "New ones" opportunities that I gave you when you were new. As the list gets smaller, I am sure that you will have an opportunity to return.
                    Chaplain Rojas

            This was date **March 18, 2016**
            *Please see State of Illinois
            Memo issue by Chaplain Rojas
            as exhibit **B**

21.) Chaplain Rojas Knew that by removing me from said "approved list" and by applying this kind of "blackball" treatment, I would then not just be restricted from attending service, but that I would be flat out terminated... for I would then be confined to my cell during service.

22.) Chaplain Rojas ongoing prejudice/discrimination towards Catholics has harshly interferred with causing for him to be favorable to all religious groups, in which (HE) has violated my right to practice my Catholic belief, while in a chatholic setting; that being refusing me access to the Church.

23.) Therefore, I can (NO) longer consult with (3) Deacons at this particular service.

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE** (Continued)

24. I would like to point out, that never have I been a distraction to the church, nor have I ever had to be removed from service, in fact on February, 2016 I had stood before the congregation and had officially given my testament, in which is hereby captured on their institutional audiovisual camera

25.) I also carry myself with the utmost respect for the church as well as for other(s).

26.) I've also written to Chaplain Rojas asking for the number of those whom (HE) so chooses to send call passes to "every month, time after time"... Yet never chooses to attend service, for they'll (Rather) choose to go to yard or gym, than to come worship.

27.) After declining my request for the number of non/attendants whom Chaplain Rojas continues to send call passes to, I had to write and personally request for the freedom of Information Act to provide me with such sought out information that Chaplain Rojas declines to provide me with... however, "Freedom Of Information Act" states that they do not have about requested information ✳ Please refer to **Exhibit** █ **C**

28.) I also would like to point out that not only is Chaplain Rojas in violation of **(RLUIPA)** "Religious Rights and Rules" but also in violation of the IDOC. Chaplain Policies ... for Chaplain Rojas also "allows" for Muslims to attend the CATHOLIC/LUTREYA services, which in return could cause for a conflict to occur, for (HE) has hereby placed numerous inmates outside their cells ... whom in actuality aren't suppose to be outside of their cells, causing for a massive security breach.

29.) Someone needs to pay more attention in what Chaplain Rojas is doing, for CATHOLICS CAN NOT attend any Muslims service of any kind.

PAGE 8.

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE** (Continued)

30.) The State and Federal Courts has long ago prohibited one from attending another service, other than your own... unless one goes through the proper procaedures of changing ones religion, before having attended such service ☆ Please see paragraphs 2 and 3 on page. 4

31.) Chaplain Rojas has here himself, caused for Muslims to take up seats, that should be afforded to CATHOLIC and CHRISTIANS participants... for again Muslims are prohibited from attending this particular service, for CATHOLICS can't attend Muslim services of any kind.

32.) Inmate O'NEAL is hereby not only a CATHOLIC, but also an A·Grade participant, for I have not receive a Inmate Discipline Infraction of any kind that being major or minor, since 2008, meaning I pose (NO) threat nor problems to disrupt service, espacially having attended this particular service... for the past 11 yrs.

33.) If Chaplain Rojas becomes upset, due to CATHOLIC having complaints, due to how (HE) out right chooses to discriminate against them, then (HE) should truly consider a different profession.

34.) Chaplain Rojas has approved while provided other religious groups with "Religious feast" such as The Jewish religion, The Muslims, The Rastafarians The Odinist religion, Everyone except for CATHOLICS This is hereby not only favoritism, but straight out prajudice/discrimination, in which needs to be stopped at once.

Violations brought on By Chief Administrative Offcer/ Warden Stephanie Dorothy is as follows...

35.) Chief Administrative Officer/ Warden Stephanie Dorothy has full "Knowledge" of this on going mistreatment towards the People Of The CATHOLIC FAITH.

PAGE 9.

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE** (Continued)

36.) Since the appointment of Chief Administrative Officer/ Warden Stephanie Dorothy, never has (SHE) approved nor allowed for there to be a feast of any kind for CATHOLIC participants after their religious periods.

37.) However, Chief Administrative Officer/ Warden Stephanie Dorothy (HAS) approved serveal other "Religious Feast" to enter Henry Hill Correctional Center through outside sources.

38.) Chief Administrative Officer/ Warden Stephanie Dorothy can't say that this something in which (SHE) never has had knowledge of, for any monies taken out of an Inmate's trust fund must be signed off on by (HER).

39.) Needless to say, Chief Administrative Officer/ Warden Stephanie Dorothy (HAS) signed off on "numerous religious feast" here within the institution, but never once for a CATHOLIC feast of any kind.

40.) Keeping in mind "The CATHOLIC RELIGION" has existed for many a century, it's hard not to notice that this particular religious group is hereby being discriminated against.

41.) Prison Officials know before hand how many Church participants will be attending services at Henry Hill C.C.

42.) This gives adequate time to the administration to place and plan ahead and to post officers caddy in case of an emergency or altercation.

43.) One officer is posted outside every service that takes place here at Henry Hill C.C., as well as (2) mounted security audio/visual cameras inside every service at all times.

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE** (Continued)

44.) Henry Hill C.C. is not an institution in which has had on going problems with outbreaks nor alter-cations during any form of religious service.

45.) So, last but not least ... thee only problem that could come to concern is hardly presented through their very own abusive to breach their very own security, when in fact "The Chaplain" distributes call passes to those whom are then allow to exit their cells, when in fact ... they aren't even participants of such authorize service that's taking place.

End Of Grievance.

Sincerely
Mr. Aaron O'Neal
N-53022
R4·C·59

Grievance is being taken after Chaplain Rojas confirmed that (He) had removed My Name from thee approved Cursillo/Llitreya Service which is dated **March 18th, 2016** ... which infringed upon my right to exercise my religious belief.

**"SUPPLEMENTAL REPLY TO BE ATTACHED TO GRIEVANCE"**
RE: IN REFERENCE TO CHAPLAIN ROJAS RESPONSE TO
INMATE'S GRIEVANCE DATED APRIL,20th.2016.

Transcribed by grievant: *Aaron O'Neil* July,29,2016.

Note: That at the very beginning of Chaplain Rojas's response
He states; Cursillo is not mandtory service. The use of
the word mandatory implies-without choice,for it gives
the implication of penalty for non-compliance. Religion
First and foremost is a (freedom guaranteed by the Cons-
titution)-thus private not ~~~~~~~~~ in its action (fre-
edom).                          coeercive

Furthermore if it is a question of security-the partici-
pants should have been selected by first come/first ser-
ve basis: IE a sign up sheet-thus leaving the selection
to the participants (not) the security of the administr-
ation (FREEDOM).

As to state that there would be (NO) way to know who at-
tends is asinine at best,for the sign up sheet when tal-
lied would show that. Plus it would have the names of
all who attend,so not only would you know how many-you
would know the names as well.

However,there isn't (any) issues concerning security is-
sues besides Chaplain Rojas's "Breach Of Security" here
at Henry Hill C.C./for Chaplain Rojas continues to auth-
orize "CALL PASSES" to Muslim inmates who aren't author-
ized to attend this particular "Catholic/Christian serv-
ice,let alone (permission) to leave ones cell/housing
unit...however The Chaplains allows for the roaming of
"Unauthorized Inmates to Unauthorized moments/destinat-
ions (Chapel) to be exact.

It is very (vital) that all past and present Cursillo/
ultreya list to attend chapel be submitted for review...
for it will show just how much danger in which Chaplain
Rojas (has) placed "Henry Hill C.C." at risk,by continu-
ing to authorize "Unauthorized Inmates to exit their ce-
lls,by way of attending a service in which they are (not)
members of that particular religious group...for again
"Cursillo/ULTREYA is a CATHOLIC/CHRISTIAN SERVICE,(NOT)
Muslim.

Also,by Chaplain Rojas providing to Muslim's inmates call
passes...this pratice of Chaplain Rojas therefore takes
away the (RIGHTS) of other CATHOLIC/CHRISTIANS whom can
not make it to service,for Chaplain Rojas (has) someone
other taking up seats. Also be aware that CATHOLIC/CHRIST-
IANS ARE not allowed to any "MUSLIM" service of any kind...
without converting to that particular religion.end quote.

Finally,Chaplain Rojas should not be allow to say what is said of someone else without an affidavit being attached to it...as for speaking of Joe LaHood,in whom Chaplain Rojas refers to in his response to Inmate O'NEAL'S grievance,for anything outside of the record shall be looked upon as "hearsay",not to (mention) how one person practices (HIS) OR (HER) Religion is not the same as another. One may eat "RED MEAT" and it not affect him spiritually-while another may be stumbled by this course-or action.

Furthermore Inmate O'NEAL would like to bring forth to thee attention of this very grievance,that Chaplain Rojas is (not) Catholic,therefore (HE) isn't in a place/nor position to say what is sacrament/and what is not. After (all) be said and done "Chaplain Rojas action(s),as well as responses are a "blatant end run around the facts presented in the grievance at hand.

1. Chaplain Rojas has (NOT) been instrumental in aiding The Catholic(s) in their lent observance.

2. Chaplain Rojas claims to have (NO) power or knowledge-in Catholic practice-but yet you have after the light has been cast on your negligence...you have taken actions against this grievant.

3. What Chaplain Rojas (HAS) done,placed himself in a position of authority,over that which (HE) knows little about...thus "HINDERING" the balance and spiritual flow of this grievant to and that alone is hereby "DISCRIMINATION" END RE:

Inmate O'NEAL will now to move to address the "Freedom of "Information Act" issue in which Chaplain Rojas (has) gone on to fabricate...for Chaplain Rojas stated that (FOIA) HE could not satisfy Inmate's (FOIA) because it would violate rules. Chaplain states (NO) offender can have any informat-about another one,see exhibit ▮▮ F.

However,once (FOIA) contacted grievant,(FOIA) stated they "Do not maintain or possess records responsive to your request". see exhibit.C

This is hereby Chaplain Rojas's way of trying to "Hoodwink" the grievance process by diverting the attention away from himself...for Chaplain Rojas (HAS) this requested document, however HE refuses to provide it,for it would therefore expose (HIS) negligence,in which (HE) doesn't want to be seen. However,"Internal Affairs" carries,these exact same documents that are hereby requested

**Now as to addressing the issue concerning the disciminatory/
favoritism/bias claims brought forth in the grievance at hand.**

Since thee original filing of the grievance at hand,**Chaplain
Rojas** along with **Chief Administrative Officer/Warden Stephanie
Dorothy (HAS)** <u>continued</u> "to approve" <u>all</u> (other) religious gr-
oup(s)/other than those of <u>Catholic</u> to receive their annual
feast.

OOn  July,8th.2016. Here at Henry Hill C.C. The Religious group
**"AL ISLAM"** held their annual feast at thee end of "<u>RAMADAN</u>".

On July,12th.2016. just **(4) days later**...The Religious group
**"NATION OF ISLAM"** was also therefore <u>GRANTED</u> their feast as
well,after having completed their <u>MONTH</u> of "<u>RAMADAN</u>".

Not only are Catholic(s) looked down on and frown upon here
at Henry Hill C.C./but are also therefor <u>"treated less than
any other (recognized) religion service"</u>,for Catholic(s) lent
meals aren't being :observed" nor (recognized) on friday's du-
during lent,nor are Catholic(s) given a feast after completing
lent.

It **(HAS)** been long recgnized that **The Establishment Clause** also
"Prohibits" <u>The Government from "favoring" one religion over a-
nother</u> without a legitimate secular reason.

Here,what has taken place at Henry Hill C.C. concerning **"favoring"**
other religious groups over Catholic(s) is hereby (Discriminatory)
and flat-out Cruel and Unusual Punishment towards those of Catholic
Faith,for Catholic(s) should be <u>GRANTED</u> thee exact same <u>benefits</u> as
those of other "<u>RELIGIOUS GROUPS</u>". End Quote.

In closing,Inmate grievant MR.O'Neal still stands firm as to all
 claims brought forth in original grievance,as well as (both) re-
sponse "<u>Supplemental REPLY</u>" against (all mentioned staff personell
at Henry Hill C.C./as well as continuing to seek that Chaplain Ro-
jas be <u>removed</u> from (HIS) stead and be replace by someone other who
is non bias against those of <u>CATHOLIC FAITH</u>.

**"SUPPLEMENTAL REPLY TO BE ATTACHED TO GRIEVANCE"**
RE: IN REFERENCE TO COUNSELOR'S FROST INVESTIGATION

"PLEASE FIND ENCLOSED THIS (3) PAGE/DOCUMENT."
Transcribed by grievant: *Aaron O'Neal* July,29,2016.
     as part of original grievance filed on Aril,20,2016.

1. Counselor Frost conducted a less than minimal/shabby in-
   vastigation as to bringing forth a reasonable conclusion
   as to the matter(s) at hand,as for not interviewing all
   named parties mentioned in grievance.

2. On April,14,2016. I AARON O'NEAL filed a grievance agai-
   st numerous staff member(s) of Henry Hill C.C. as to ma-
   tter(s) concerning a violation of a Constitutional right
   to practice **"My Freedom Of Religion"** which is thee **1st.**
   **Amendment Of The Const.** along with many other named vio-
   lations in original grievance.

3. However, Counselor Frost chose for whatever reason...
   not to interview/consult with all mentioned personnel
   officially tied to grievance at hand,which (HE) goes
   on to offer up any type of excuse/explaination as to
   why (HE) neglected from doing so.

4. Thee other named parties that are tied to thee above
   mentioned grievance is as follows:"Head Overseer Of
   Dietary Personnel Department Food Supervisor", Chief
   Of Administrative Officer:Warden Stephanie Dorothy.

5. Inmate O'NEAL also requested that (HE) would like for
   (2) Deacons to be called on for witness testimony, th-
   at being **1.) DEACON JOE** **2.) DEACON ROBERT RODRIQUEZ**...
   however,this request (was) completely done away with
   by Counselor Frost,leaving one to believe that it was
   done with **evil intent on behalf of Counselor Frost.**

6. Counselor Frost should/could have done HIS) due dili-
   gence by way of putting forth a through investigation,
   for (had) this been the case, (HE) therefore would ha-
   ve been able to render a **substantial amount evidence,**
   **leading towards a complete investigation, that would**
   **have corroborated Inmate O'NEAL'S grievance at hand.**

7. Inmate O'NEAL now moves to show that this was indeed
   done with blatant intent on behalf of Counselor Frost
   failure to present an adequate discovery process,for
   these are **"nuts and bolts"** that leap totally right off
   of the face page of thee original grievance...whereas
   (NO) competent person having investigated this type of
   evidence would have been able to turn a blind-eye to,
   for Counselor Frost had obtained this grievance dated:
   April,20,2016

2016. up until July,13,2016. in which (HE) <u>failed</u> to inter-
view/consult with or take a written statement from other(s)
named <u>sources</u> than that of Chaplain Rojas. see exhibit.**F**

8. On May,18th,2016. Inmate O'Neal personally sent to Coun-
   selor Frost by way of depositing in thee institutional
   mailbox an "Offender's Request Slip" inquiring "What was
   the status of my grievance?" as well as to notify him th-
   at I no longer reside in housing unit R4-C-15,which I we-
   nt on to provide Counselor with my current housing unit
   R2-B-15. see exhibit.**D**

9. On May,20th.2016. Counselor Frost forward (HIS) <u>response</u>
   to Inmate O'Neal's "Offender's Request Slip". see exhibit.**E**

10. After Counselor Frost was able to take a depositional sum-
    mary as to Chaplain Rojas's <u>response</u> to Inmates grievance,
    Chaplain Rojas was only able to provide Counselor Frost W/
    a lot of innuendoe(s) as to addressing the matter(s) at
    hand. see exhibit.**F**

11. Chaplain Rojas tends to believe that (not) only does (HE)
    maintain the rights to "<u>Deprive</u>"one their right to pratice
    their freedom of religion...but (HE) also <u>believes</u> that (HE)
    does not have to <u>adhere</u> to addressing Inmates issues and gr-
    ievance at hand,for Chaplain Rojas provided no other expla-
    nation other than quoting: "I **WILL NOT ANSWER ANY OF (HIS)
    MEANING INMATE (AARON O'NEAL'S) QUESTIONS WITHOUT LEGAL RE-
    PRESENTATION". End Quote. see exhibit.F**

12. Also,Counselor Frost should/could have retrieved the <u>list</u>
    of name(s) that are authorized to attend the Cursillo/<u>Ultreya</u>
    service by "Requesting" Internal Affairs or Chaplain Rojas
    tender to (HIM) this sign in documentation...for this is who
    is in possession of this (much needed document).

13. Chaplain Rojas tendered in (HIS) <u>response</u>,that "**(WE) do not
    disallow the observance and dietary has much as penalogical
    interest has allowed to offer fish on fridays**". see exhibit.F

14. However,Chaplain Rojas goes on to speak out of turn,by stand-
    ing up and speaking for the Dietary personnel department, th-
    at's why it was "**<u>critical</u>**"for Counselor Frost to take down a
    "**<u>written summary</u>**"from the "**<u>Chief Overseer Of Dietary Personnel
    Department Food Supervisor</u>**"-as to dealing with such mentioned
    matter,and (NOT) Chaplain Rojas who was only serving to "**<u>divert</u>**"
    attention away from(**HIMSELF**)...**by way of trying to fan the flam-
    es.**

15. However,Chaplain Rojas (has) again _failed_ **"miserably"** to try and cover (HIS) tracks by continuing to contradict himself by way of **"overstating"** the facts...for Chaplain Rojas does in fact **"disallow"** (all) Catholis(s) from having fish on friday's during lent,by (not) tendering a list to proper dietary personnel,to ensure that (all) be accommodated.

16. Bottom line,had Chaplain Rojas furnished "Dietary Dept. Personnel" with a list/roster to go off of,then there's (NO) way possible that Catholic participant'(s) would/ could have been denied/deprived of our lent meals on friday.

    **Now as to address thee other mentioned issues concerning The Chief Administrative Officer/Warden Stephanie Dorothy as to discriminatory/favoritism/bias claims brought forth in the grievance at hand.**

17. Since the filing of the grievance at hand,**Chief Administrative Officer/Warden Stephanie Dorothy "has continued"** to approve _all_ **(other) mentioned religious groups/other than** those of Catholic to receive their  annual feast.

18. On July,8th,2016. Here at Henry Hill C.C. The Religious group **"AL ISLAM"** held their annual feast at thee end of **"RAMADAN"**.

19. On July,12th.2016. just (4) days later...The Religious group **"Nation Of Islam"** was also therefore GRANTED their feast as well,after having completed their MONTH of "RA-MADAN".

20. Not only are Catholic(s) looked down on and frown upon here at Henry Hill C.C./but are therefore **"treated less than any other (recognized)religion service"**,for Catho-lic(s) lent meals aren't being **"observed"** nor (recognized) on friday's during lent,nor are Catholic(s) given a feast after completing lent.

21. It **(HAS)** been long recognized that **The Establishment Clause** also **"Prohibits" The Government** from favoring one religion over another without a legitimate secular reason".

22. Here,what has taken place at Henry Hill C.C. concerning **"favoring"** other religious groups over Catholic(s) is hereby **(Disciminatory)** and flat out Cruel and Unusal Punishment towards those of Catholic Faith,for Catholic(s) should be GRANTED thee exact same benefits as those of other RELIGIOUS GROUPS End Quote.

| **Illinois** Department of **Corrections** | · **ADMINISTRATIVE** **DIRECTIVE** | Number | 04.25.101 |
|---|---|---|---|
| | | Page | 1 of 6 |
| | | Effective | 5/1/95 Amended 11/1/95 |

| Section | 04 | Programs and Services |
|---|---|---|
| Subsection | 25 | Religious Issues |
| Subject | 101 | Chaplaincy Services |

I. <u>POLICY</u>

    A. <u>Authority</u>

        730 ILCS 5/3-2-2 and 3-7-2

        20 Ill. Adm. Code 425



Petitioner's Exhibit

    B. <u>Policy Statement</u>

        The Department may employ chaplaincy staff or permit religious program volunteers as authorized by the Chief Administrative Officer to oversee religious activities conducted at the facility.

II. <u>PROCEDURE</u>

    A. <u>Purpose</u>

        The purpose of this directive is to establish written instructions to staff regarding chaplaincy services.

    B. <u>Applicability</u>

        This directive applies to all correctional facilities within the Adult, Juvenile, and Community Services Divisions.

    C. <u>Internal Audits</u>

        An internal audit of this directive shall be conducted at least annually.



Petitioner's Exhibit

    D. <u>Designees</u>

        Individuals specified in this directive may delegate stated responsibilities to another person or persons unless otherwise directed.

    E. <u>General Provisions</u>

        1. The Director shall appoint a Religious Practice Advisory Board to provide guidance to the Department regarding religious activities, to recommend changes in policies relating to religion, and to review and make recommendations to the Director regarding religious issues in accordance with Department Rule 425.

            a. The Board shall consist of at least seven individuals, including:

PLAINTIFF'S   EXHIBIT G.

*Illinois* Department of *Corrections*

| ADMINISTRATIVE DIRECTIVE | Effective | 5/1/95 Amended 11/1/95 | Page | 2 of 6 | Number | 04.25.101 |
|---|---|---|---|---|---|---|

(1)  At least three chaplains, representing a least three different religious affiliations; and

(2)  Representatives of legal and administrative staff.

b.  The Director shall designate a chairperson who shall maintain a list of religious advisors from whom the Board may seek advice on religious issues.

c.  The composition of the Board shall be reviewed at least annually and the Director may appoint or reappoint members.

2.  The Director shall designate a Chief Chaplain whose responsibilities include:

a.  Establishing training programs for religious program volunteers from the community.

b.  Scheduling and coordinating statewide chaplaincy programs or seminars as authorized by the Director or Chief Deputy Director.

c.  Maintaining a list of all regular religious program volunteers, including the faith group they represent and the facilities they service.

d.  Coordinating distribution of surplus donations of religious materials to facilities.



3.  The Religious Practice Advisory Board shall ensure an informational Chaplaincy Handbook, approved by the Director, is maintained and distributed to each facility. However, such approval shall not constitute endorsement or recognition of the designated religions or their activities. The manual shall be reviewed at least annually and shall be updated as necessary. The handbook may include:

a.  The main tenets of various religions, including rites and rituals.

b.  A listing of known religious holidays during which work is prohibited for religions included in the handbook.

c.  Any known special diet, clothing, or other religious articles required for the practice of the religious faiths included in the handbook.

4.  The Chief Administrative Officer of each adult and juvenile facility shall designate a chaplain as the Senior Chaplain who will serve as the principal advisor to the Chief Administrative Officer. If the facility does not have a chaplain, the Chief Administrative Officer shall designate an individual to perform the duties of the Senior Chaplain as outlined in this paragraph. This individual may confer with chaplains or religious program volunteers in performing these duties. In the Community Services Division, the Chief Chaplain shall perform the duties of the Senior Chaplain, as needed. The Senior Chaplain may serve more than one facility. This individual, normally a Chaplain II, shall:

a.  Schedule and coordinate approved religious activities at the facility, including identifying potential resources for conducting the activities.

*Illinois* Department of **Corrections**

| ADMINISTRATIVE DIRECTIVE | Effective 5/1/95 Amended 11/1/95 | Page 3 of 6 | Number 04.25.101 |
|---|---|---|---|



b.  Screen, train, and schedule all religious program volunteers for the facility.

c.  Coordinate and ensure the supervision and training of all other facility chaplains and religious program volunteers.

d.  Ensure chaplaincy staff make regular rounds at the facility, including regular visits to any special housing unit such as the segregation unit and the condemned unit.

5.  Facility chaplains shall:

a.  Provide religious services on a regular basis and on specific religious holidays.

b.  Provide, as determined necessary, requested religious counseling or referrals to inmates, staff, or family members of inmates or staff concerning their spiritual, social, and family problems, regardless of the person's religious beliefs or affiliation.

c.  Serve as a liaison between the facility and community religious organizations.

d.  Develop and conducting educational and instructional religious programs.

e.  Provide for the administration of religious rites such as baptism, confirmation, communion, and marriage, where appropriate.

f.  Provide inmate orientation regarding:

(1)  Basic services available through the Chaplaincy Office;

(2)  The schedule of religious activities;

(3)  The procedure for attending services and contacting chaplaincy staff; and

(4)  The manner in which religious requests should be made.

6.  Facility chaplains shall have access to all inmates regardless of their classification or status and to all areas of the facility, including special housing units such as the segregation unit and condemned unit.

7.  Each facility shall set aside a specific area, wherever feasible, such as a chapel for religious activities. The religious symbols shall be covered or removed during religious activities for a faith which does not recognize such symbols. The religious activity area shall not contain any permanent or fixed religious symbols that cannot be covered or removed.

8.  Each facility shall provide an area to store religious materials which are needed for conducting religious activities.

F.  **Religious Activities**

1.  The Senior Chaplain shall plan and coordinate religious programs and activities. In

*Illinois Department of* **Corrections**

| ADMINISTRATIVE DIRECTIVE | Effective 5/1/95 Amended 11/1/95 | Page 4 of 6 | Number 04.25.101 |
|---|---|---|---|

scheduling approved religious activities, the following factors shall be considered, among other matters:

    a.    Availability of staff, time, and space;

    b.    The need to proportionately share the time and space among eligible religious groups;

    c.    Safety and security concerns; and

    d.    Other scheduled activities at the facility.

2. The Senior Chaplain shall prepare and submit a current schedule of all religious services and programs offered at the facility to the Chief Administrative Officer for approval. The schedule shall contain the time, date, type, and place of the activity. Any amendments to the schedule shall be submitted to the Chief Administrative Officer for approval.

3. The approved schedule shall be made accessible to the inmate population.

4. Unless otherwise approved by the Senior Chaplain, inmates who are in general population or who are otherwise approved by the Chief Administrative Officer may only be permitted to attend regularly scheduled non-denominational religious activities or religious activities for a specific faith group for which the inmate has designated affiliation.

    a.    An inmate's self-reported designated religious affiliation is entered in the Offender Tracking System (OTS) or Juvenile Tracking System (JTS) upon admission to the Department. An inmate may choose to designate no affiliation. Self-reported designated religious affiliations do not constitute endorsement or recognition of that religion by the Department.



    b.    If the designated religious affiliation is not currently in the OTS or JTS system, the Senior Chaplain shall forward the designation request to the Religious Practice Advisory Board.

    c.    After orientation, the designation may only be changed or affiliation added in OTS or JTS as approved by the Senior Chaplain of the currently assigned facility.

    d.    The Senior Chaplain may refuse to change the affiliation if he or she determines that the change is being requested for other than religious reasons based on frequency of changes or a pattern of changing religious affiliation prior to a particular faith group's scheduled holiday or celebration.

G.    **Inmate Requests for Religious Accommodations**

1. The Senior Chaplain shall review any inmate requests regarding religious issues in accordance with Department Rule 425. This may include but not be limited to requests to:

    a.    Meet with a chaplain or a religious program volunteer;

    b.    Schedule a specific religious activity, including religious activities permitted under

Illinois Department of *Corrections*

| ADMINISTRATIVE DIRECTIVE | Effective 5/1/95 Amended 11/1/95 | Page 5 of 6 | Number 04.25.101 |
|---|---|---|---|

Department Rule 425.60(f);



c. Obtain approval for an alternative diet based on religious requirements;

d. Attend religious activities outside the inmate's faith or change religious affiliation;

e. Be relieved from an institutional program or assignment for a specific religious purpose; or

f. Obtain religious articles and materials, including audio cassettes not obtained directly from an approved manufacturer, retailer, or distributor.

2. The Senior Chaplain shall ensure:

   a. Any request of a non-religious nature is directed to the appropriate staff person.

   b. The information outlined in Department Rule 425.110 is obtained from the inmate if necessary.

   c. The Chief Administrative Officer is advised of requests for religious activities or materials not currently offered or approved by the Department.

   d. Documentation is maintained of approval or disapproval of responses to religious requests.

3. The Chief Administrative Officer shall ensure that the following are referred to the Religious Practice Advisory Board:

   a. Requests for non-traditional religious activities, religious items, religious diets, changes or deletions to the OTS or JTS listing of self-reported designated religions, or other non-traditional requests not currently offered or approved by the Department; and

   b. Requests for religious activities permitted under Department Rule 425.60(f).

4. The Chairperson of the Religious Practice Advisory Board shall review requests of a religious nature which have been referred to the Board and determine the course of review.

   a. The request may be assigned to one or more Board members for review and recommendation.

   b. The Board shall confer with religious leaders of other faith groups where it determines necessary.

   c. The Chairperson shall submit the recommendation to the individual who referred the request.

   d. The final determination may be included in the Chaplaincy Handbook.

   e. The Religious Practice Advisory Board may meet to discuss and address policy

*Illinois Department of* **Corrections**

| ADMINISTRATIVE DIRECTIVE | Effective | 5/1/95 Amended 11/1/95 | Page | 6 of 6 | Number | 04.25.101 |
|---|---|---|---|---|---|---|

issues relating to religion as the need arises.

    f.    The Chairperson shall maintain documentation of recommendations made by the Board and may distribute final determinations to designated Department staff.

## H.   Religious Volunteers

1.    The facility Chaplaincy Office shall screen and review all applications from religious volunteers in accordance with Department Rules 435 and Administrative Directive 04.01.122.

2.    For religious program volunteers who are applying to conduct services or lead study groups, the facility Chaplaincy Office shall verify the credentials and status of the volunteer prior to recommending approval of the volunteer.

3.    The Chief Administrative Officer shall review all recommendations from the Chaplaincy Office regarding volunteers. If a volunteer applicant is an ex-offender, the following factors may be taken into consideration:

    a.    The nature and gravity of the offense(s) or conduct;

    b.    The time that has passed since the offense(s) or conduct occurred;

    c.    The facilities in which the ex-offender was incarcerated; and

    d.    The behavioral history of the ex-offender while incarcerated in a Department facility.

4.    The Chief Administrative Officer may approve reimbursement for travel expenses in accordance with Department Rule 425.50(b). Approved expenses shall be submitted each month through the Senior Chaplain on a Travel Voucher, C-10, to the Business Office. The Business Office shall input the expenses and generate an Invoice Voucher for payment from the contractual services line item.

5.    Unless otherwise approved by the Chief Administrative Officer religious program volunteers and religious leaders shall:

    a.    Only have access to areas set aside for religious activities.

    b.    Not be placed on an inmate's regular visiting list.

Authorized by:

_____

**Odie Washington**
Director


Petitioner's Exhibit

# CATHOLIC

## 1. THEOLOGY/BELIEFS/BASIC TEACHINGS

Catholics are Christians who believe that their baptism into the death and resurrection of Jesus Christ joins them to a community on earth, which is the church. The faith centers on the belief that Jesus Christ was sent by God to be their Redeemer. As a community they gather and celebrate this belief through the Mass with a Eucharist/Communion. In the Mass, the faithful with the presiding priest or bishop participate in the proclamation and hearing of the Word of God and in the offering and reception of the Body and Blood of Christ, whom Catholics believe is really present under the appearance of bread and wine.

As an organization, the Catholic Church is made up of parishes under priest pastors which are grouped in dioceses under Bishops or Archbishops. The Catholic Church is lead by the Pope, as a successor of Peter, and Cardinals and Bishops appointed by the Pope. A Pope is deemed infallible when issuing declarations on matters of faith.

The beliefs of the Catholic Church are summarized in a creed, called The Apostles' Creed, which is recited at each Mass.

## 2. HOLY DAYS/CELEBRATIONS/ FEAST

Holy days include all Sundays and the following special liturgical days, called Holy Days of Obligation:

| | |
|---|---|
| December 25 | Feast of the Nativity (Christmas) |
| November 1 | All Saints Day |
| 40 days after Easter | Feast of the Ascension |
| August 15 | Feast of the Assumption |
| December 8 | Feast of the Immaculate Conception of the Blessed Mother |
| January 1 | Feast of Solemnity of Mary |

Some ethnic groups may celebrate saints' feast days that are significant to them. Such feasts should be addressed on a case-by-case basis.

Also celebrated are the special seasons of Advent and Lent. Advent, which begins each year on the fourth Sunday before Christmas, is a time of both penance and anticipation in preparation for the birth of Christ. The Lenten season begins on Ash Wednesday and concludes on Holy Saturday (the day before Easter Sunday). Ash Wednesday is observed as the first day of the Lent. On this day, Catholics receive blessed ashes to remind them of their own mortality as they begin the penitential season of Lent. Blessing and distribution of palms occurs on Palm Sunday, which is the Sunday preceding the Feast of the Resurrection (Easter Sunday).The last week in Lent, called Holy Week, commemorates the passion and resurrection of Christ. Holy Thursday commemorates the anniversary of the Last Supper, Good Friday commemorates the death of Christ on the cross, and Holy Saturday anticipates Christ's resurrection. Easter Sunday is the most solemn annual feast day and considered the center of the liturgical year.

3. HOLY BOOK/SACRED WRITING
The Holy Bible (the most frequently used versions would be the New American Bible and the revised standard version-Catholic Edition). A Missal, which includes prayers and readings for daily mass and other devotions.

4. SERVICE/WORSHIP
All Catholics have the obligation of attending Mass on all Sundays (52 Sundays each year) and on the listed 6 Holy Days of Obligation. There is no obligation to attend mass when the Feasts of Solemnity of Mary, Assumption or All Saints Day fall on a Saturday or Monday.
Sacraments:
There are 7 Sacraments which are: 1. Sacrament of Baptism, 2. Sacrament of Penance or Reconciliation (Confession), which must be received at least once a year if one has serious sin to confess, 3. Sacrament of Holy Communion, 4. Sacrament of Confirmation, 5. Sacrament of Marriage, 6. Sacrament of Holy Orders (ordination as a priest), and 7. Sacrament of Anointing of the Sick.
Catholics practice infant baptism. Any adult seeking admission to the Catholic Church must go through a period of formation called the Rite of Christian Initiating of Adults (RCIA), which is a four staged journey of conversion.

5. DIET
There are no general food restrictions. During the Lenten season, those 14 and older must abstain from meat all Fridays of Lent and also Ash Wednesday. All those over 18 and not yet 59 must fast on Ash Wednesday and Good Friday.

6. OTHER REQUIREMENTS
No headgear is required. No specific clothing is required. May wear a cross or religious medal with a chain. A rosary may be used as a form of devotion. A scapular (which is a pair of small cloth squares joined by shoulder tapes worn under clothing on the breast and back) may be worn. The colors and pictures or symbols on the scapular may vary.

7. PRACTIONERS/CLERGY
Ordained priest and deacons are the usual ministers of the sacraments. Only men can be ordained as priests or higher clergy (i.e. bishop, archbishop, cardinal, pope). Mass is always said by a priest, though non-ordained lay persons may preside over communion services.

PLAINTIFF'S GROUP    EXHIBIT H-83

PLAINTIFF'S EXHIBIT I.

**State of Illinois**     **Memo**

To: _O'Neal N53022_    Date: _3/18/16_

From: _Charles Hyo_

Dept: _Chaplaincy_

Re: _Cursillo_

☐ Take Necessary Action    ☐ Per Your Request
☐ For Your Approval    ☐ See Me About Attached
☑ Reply    ☐ Return
☐ For Your Comments    ☐ File
☐ For Your Information    ☐ Route
☐ Draft (Letter)(Memo) For My Signature

Remarks: Cursillo has had some
issues with call passes. We can
only use those not a T-80 (detail)
list. The problem of space to
accomodate the participants is
affecting us now. O'Neal you
have been part of Cursillo for
years. I must give the "New" ones
opportunities that I gave you
when you were new. As the list
gets smaller I am sure that you will
have an opportunity to return. _Chap Hyo_

PLAINTIFF'S EXHIBIT J.

Bruce Rauner
Governor



John Baldwin
Acting Director

### The Illinois Department of Corrections

1301 Concordia Court, P.O. Box 19277 • Springfield, IL 62794-9277 • (217) 558-2200 TDD: (800) 526-0844

March 30, 2016

Aaron O'Neal, N53022
Hill Correctional Center
P.O. Box 1700
Galesburg, IL 61402

Re:    Freedom of Information Act Request #160328263

Dear Mr. O'Neal:

This letter is in response to your request to the Illinois Department of Corrections for information pursuant to the Illinois Freedom of Information Act, 5 ILCS 140/1, et seq.

You have requested the number of "Cursillo/Ultreya service participants" who receive call passes to attend the 3rd Tuesday of each month services and then do not attend. The Illinois Department of Corrections does not maintain or possess records responsive to your request.

In the event you view this response as a denial of your request, you have a right to have the denial reviewed by the Public Access Counselor (PAC) at the Office of the Illinois Attorney General. 5 ILCS 140/9.5(a). You can file your request for review with the PAC to:

Public Access Counselor
Office of the Attorney General
500 South 2nd Street
Springfield, Illinois 62706

You also have the right to seek judicial review of your denial by filing a lawsuit in the state circuit court, pursuant to 5 ILCS 140/11.

If you choose to file a request for review with the PAC, you must do so within 60 calendar days of the date of this denial letter (5 ILCS 140/9.5(a)). Please note that you must include a copy of your original FOIA request and this denial letter when filing a request for review with the PAC.

Sincerely,
Lisa Weitekamp
Freedom of Information Officer

*Mission: To serve justice in Illinois and increase public safety by promoting positive change in offender behavior, operating successful reentry programs, and reducing victimization.*

**www.illinois.gov/idoc**

PLAINTIFF'S EXHIBIT K.

## 2016

| JANUARY | FEBRUARY | MARCH |
|---|---|---|
| S M T W T F S | S M T W T F S | S M T W T F S |
| 1 2 | 1 2 3 4 5 6 | 1 2 3 4 5 |
| 3 4 5 6 7 8 9 | 7 8 9 10 11 12 13 | 6 7 8 9 10 11 12 |
| 10 11 12 13 14 15 16 | 14 15 16 17 18 19 20 | 13 14 15 16 17 18 19 |
| 17 18 19 20 21 22 23 | 21 22 23 24 25 26 27 | 20 21 22 23 24 25 26 |
| 24 25 26 27 28 29 30 | 28 29 | 27 28 29 30 31 |
| 31 | | |

| APRIL | MAY | JUNE |
|---|---|---|
| S M T W T F S | S M T W T F S | S M T W T F S |
| 1 2 | 1 2 3 4 5 6 7 | 1 2 3 4 |
| 3 4 5 6 7 8 9 | 8 9 10 11 12 13 14 | 5 6 7 8 9 10 11 |
| 10 11 12 13 14 15 16 | 15 16 17 18 19 20 21 | 12 13 14 15 16 17 18 |
| 17 18 19 20 21 22 23 | 22 23 24 25 26 27 28 | 19 20 21 22 23 24 25 |
| 24 25 26 27 28 29 30 | 29 30 31 | 26 27 28 29 30 |

| JULY | AUGUST | SEPTEMBER |
|---|---|---|
| S M T W T F S | S M T W T F S | S M T W T F S |
| 1 2 | 1 2 3 4 5 6 | 1 2 3 |
| 3 4 5 6 7 8 9 | 7 8 9 10 11 12 13 | 4 5 6 7 8 9 10 |
| 10 11 12 13 14 15 16 | 14 15 16 17 18 19 20 | 11 12 13 14 15 16 17 |
| 17 18 19 20 21 22 23 | 21 22 23 24 25 26 27 | 18 19 20 21 22 23 24 |
| 24 25 26 27 28 29 30 | 28 29 30 31 | 25 26 27 28 29 30 |
| 31 | | |

| OCTOBER | NOVEMBER | DECEMBER |
|---|---|---|
| S M T W T F S | S M T W T F S | S M T W T F S |
| 1 | 1 2 3 4 5 | 1 2 3 |
| 2 3 4 5 6 7 8 | 6 7 8 9 10 11 12 | 4 5 6 7 8 9 10 |
| 9 10 11 12 13 14 15 | 13 14 15 16 17 18 19 | 11 12 13 14 15 16 17 |
| 16 17 18 19 20 21 22 | 20 21 22 23 24 25 26 | 18 19 20 21 22 23 24 |
| 23 24 25 26 27 28 29 | 27 28 29 30 | 25 26 27 28 29 30 31 |
| 30 31 | | |

Sundays and Holy Days of Obligation are printed in red.
⬤ Days of Total Abstinence

CK-5017
LITHO IN U.S.A.



*Each day is a new gift from God*

## State of Illinois - Department of Corrections
## Counseling Summary

| | | | |
|---|---|---|---|
| **IDOC #** | N53022 | **Counseling Date** | 05/20/16 15:49:54:610 |
| **Offender Name** | O'NEAL, AARON | **Type** | Collateral |
| **Current Admit Date** | 12/03/1993 | **Method** | Other |
| **MSR Date** | 08/14/2024 | **Location** | HIL   CLINICAL SERVICES |
| **HSE/GAL/CELL** | R2-B -15 | **Staff** | FROST, JOHN R., Correctional Counselor II |

Note to Offender: Per Your Request Slip; Your grievance dated 04/14/2016 was received on 04/20/2016 and has been forwarded to appropriate staff for their response. Once that response is received your grievance will be returned with the response. Be aware that Departmental Rule 504, Subpart F does not state a specific timeframe within which counselors are required to respond to grievances.

PLAINTIFF'S EXHIBIT U.

Grievance Date: April 14, 2016

Offender: Aaron O'Neal N53022

Response from: Chaplain Rojas

"Offender A. O'Neal is incorrect when he accuses the Chaplain of discrimination. Cursillo is not a mandatory service therefore there can be no discrimination when the reason for leaving participants out was for the safety and security of the institution and volunteers. There was no way to know who attended that night, so the decision was made to allow the newer Cursillo participants to come. O'Neal has been participating for many years. Many others were left out not because discrimination but for all the years that they have already participated.

The Lent observance issues and food was explained to me by Deacon Joe LaHood (Prison Ministry Coordinator for the Archdiocese of Peoria). Lent is an observance about giving up something that is important, not necessarily food. The abstention from red meat is a tradition but it does not mean that it has to be fish. Lent is not a sacrament. We do not disallow the observance and dietary has as much as penalogical interest has allowed to offer fish on Fridays.

I will not answer any of his questions without legal representation. I cannot satisfy his FOIA because it would violate rules. No offender can have any information about another one."


I have transcribed this just as the respondent responded.


_John Frost, CC2_

_July 13, 2016_

John Frost, CC2                          Date

PLAINTIFF'S EXHIBIT M.

*Chicago Tribune | Section 1 | Friday, March 10, 2017*   **7**

# Chicago State settling 2014 whistleb...



Former employee getting $4.3M after being fired in 2010

**By Jodi S. Cohen**
Chicago Tribune

Court called the university's behavior "thoroughly reprehensible" and suggested Watson and his top lieutenants acted with "malice and deceit."

In his order, last month...

## Corned beef dispensation granted to area Catholics on Lenten St. Pat's Friday

**By Erin Gallagher**
Daily Southtown



Chicago-area Catholics will be able to celebrate St. Patrick's Day with corned beef this year, despite the feast day falling on a Friday in Lent, church leaders said.

Cardinal Blase Cupich, leader of the Chicago Archdiocese, has set aside the church's practice of avoiding meat on Fridays for March 17, as have the bishops of the Joliet, Rockford and Gary dioceses.

"Cardinal Cupich has given a general dispensation to Catholics from abstaining from meat on this day," according to Chicago archdiocese spokeswoman Colleen Tunney-Ryan. "Catholics in the Archdiocese of Chicago who choose to make use of this general dispensation are asked to substitute for another form of penance for the Lenten Friday abstinence."

In a statement Joliet Bishop R. Daniel Conlon said, "My name is Conlon — very Irish. More significantly I am Catholic, and Lent is an important season of prayer, penance and charity. If some fellow Catholics within the Diocese of Joliet feel that eating meat on St. Patrick's Day — which this year falls on a Friday — is important enough to break the rule of abstinence, they are permitted to make a conscientious decision to do so. In that case, they should substitute some other form of penance.

"For myself, I see no connection between honoring the patron saint and apostle of Ireland and eating corned beef."

Bishops David Malloy of Rockford and Donald Hying of Gary have also granted dispensations. Malloy in a statement said he was doing so while "exhorting the faithful to exercise moderation and temperance in their festivities."

However, the Diocese of Springfield, which includes 28 counties in central Illinois, said it is not granting a St. Patrick's Day dispensation. The diocese is encouraging Catholics to abstain from meat on March 17 to honor "the heroic virtue and sacrifice" St. Patrick made in his life.

During the 40-day season of Lent, Catholics ready themselves for Easter through prayer, giving alms and fasting that includes avoiding meat on Fridays.

In Oak Lawn, the Rev. Lawrence Malcolm, pastor of St. Gerald Church, 9310 S. 55th Court, said the dispensation will allow his parishioners to celebrate St. Patrick's Day by eating corned beef, a tradition started among Irish-Americans.

Corned beef became popular among Irish immigrants here but is not common in Ireland, he said.

"Since St. Patrick is so important to Irish Catholics and what he's done for the country, I think it's very important for the Cardinal to recognize that," said the Rev. Benedykt Pazdan, pastor of St. Bernadette Parish, 9343 S. Francisco Ave., Evergreen Park.

*Erin Gallagher is a freelance reporter for the Daily Southtown.*

PLAINTIFF'S EXHIBIT N.

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO OFFENDER'S GRIEVANCE**

| Grievance Officer's Report |
|---|

Date Received: August 2, 2016          Date of Review: August 4, 2016          Grievance # (optional): 17-0114

Offender: O'Neal, Aaron          ID#: N53022

Nature of Grievance: Religion, services/activities

**Facts Reviewed:** The grievance is dated 4/14/16. Inmate O'Neal states that Chaplain Rojas has not permitted Catholics to have alternative meals during Lent for years. The grievant transferred to Hill C.C. on 3/9/05. He signed for and received a Hill C.C. Inmate Orientation Manual at that time, pages 11-13 of which explained the grievance process, including the sixty day timeframe for filing grievances. This issue is therefore MOOT.

Inmate O'Neal states that his religious rights have been violated, and that Chaplain Rojas has discriminated against him and all Catholic offenders at Hill C.C.

The grievant is reminded that, per D.R. 504, Subpart F, he cannot file a grievance on behalf of other offenders.

He states that, after he spoke with Chaplain Rojas about his discriminatory treatment of Catholic offenders, his name was removed from the list for Cursillo/Ultreya, which was held on 3/18/16. He states that this is a monthly Christian service, which he's attended regularly since transferring to Hill C.C. in 2005. He states that Chaplain Rojas allows Muslims to attend the service, which is prohibited, since Christians cannot attend Muslim services of any kind. He states that Warden Dorethy has never approved any feast of any kind for Catholics at Hill C.C.

Warden Dorethy has been the CAO of Hill C.C. since well before 2/14/16, and therefore this issue is no longer grievable, as it is outside the sixty day timeframe.

He attached the 3/18/16 note that Chaplain Rojas sent to him, which explains that, due to limited accomodations, he (Chaplain Rojas) must give new offenders the same opportunities to attend such services that the grievant has enjoyed for so many years at Hill C.C. - eleven years, by the grievant's own admission.

20 Illinois Administrative Code, Chapter I, Section 425, Subchapter d, Part 425, Section 425.30 a) states: "Committed persons shall be provided reasonable opportunities to pursue their religious beliefs and practices subject to concerns regarding security, safety, rehabilitation, institutional order, space, and resources."

20 Illinois Administrative Code, Chapter I, Section 425, Subchapter d, Part 425, Section 425.90 d) states that "Nothing in this Part shall require the Department to provide each separate religious group or sects within a group with a chaplain or with separate religious activities regardless of the size of the religious group or the extent of the demand for the activities."

(continued)

**Recommendation:** Based on a review of all available information, it is the recommendation of this reviewing officer that the grievance be DENIED, as no factual basis has been found to substantiate the grievant's allegations that he has been discriminated against, or that his rights have been violated. Contrary to his assertion, he is not required by his faith to fast during Lent, and IDOC is not required to provide religious services or activities to all offenders who request them. As he admits, he has been provided with such services and activities for over eleven years.

_____Steve Gans, C.C.2_____
Print Grievance Officer's Name                                   Grievance Officer's Signature

(Attach a copy of Offender's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response |
|---|

Date Received: 8/5/16          ☒ I concur          ☐ I do not concur          ☐ Remand

Comments:

_____Warden S. Dorethy_____                                   _____8/5/16_____
Chief Administrative Officer's Signature                                   Date

| Offender's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

_____Aaron O'Neal_____          N53022          8-24-2016
Offender's Signature                ID#                Date

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO OFFENDER'S GRIEVANCE** (Continued)

Counselor Frost responded on 7/13/16, stating that, according to Chaplain Rojas, the grievant's allegations of discrimination are without merit. He states that Cursillo is not a mandatory service and participants were left out for safety and security needs. He stated that there was no way to know who attended that night, so the decision was made to allow new participants to attend, and those who were left out were left out because they have had many years to participate in such services. Chaplain Rojas stated that Deacon Joe LaHood, Prison Ministry Coordinator for the Archdiocese of Peoria, explained to him that lent is an observance about giving up something that is important, but not necessarily food. The abstention from red meat is a tradition, but Lent is not a sacrament and we don't disallow the observance. He added that Dietary offers fish on Fridays out of penological interests. He states that he will not answer the numerous questions put forth by the grievant in the grievance without legal representation, and cannot satisfy the grievant's FOIA request (attached) because it would violate rules. He stated that no offender can have information about another offender.

The grievant attached responses to both Chaplain Rojas and Counselor Frost, accusing Counselor Frost of willful neglect of his job duties in responding to the grievance, and accusing Chaplain Rojas of avoiding the issues at hand.

August,17,2016.

From: Grievant Mr.O'Neal

Grievance: #17-0114.

To: Acting Director/
    Mr.James Baldwin

Re: Response to Grievance/
    Officer Mr.Steve Gans

### "RESPONSE TO GRIEVANCE OFFICER MR.STEVE GANS"
### RECOMMENDATION.

Please find enclosed exhibits as attached to this documentation
addressed to **Acting Director Mr.James Baldwin Of Thee Illinois
Department Of Corrections,**concerning the below listed issue(s).

(SECTIONS A) 1. **Timely Filing Issue:**
(SECTIONS B) 2. **Freedom To File Grievance Violations:**
(SECTIONS C) 3. **Authenticity Signature Of Chief Of Administrative
                 Officer/Wareden Stephanie Dorothy forged in signa-
                 ture box on face page of grievance:**

**(SECTIONS A) 1. Timely filing issue(s):**

1. Yearly Catholic Holy days obligation of abstence calender.See Ex.**G**

2. Calender issued to grievant Mr.O'Neal,provided to by Deacon Robert
   Rodriquez/Whom was also requested as a witness on behalf of grieva-
   nt.

3. Red dots on calender mark the"TRADITION OF LENT".

4. Red (circled dots) marked as fridays on the 2016 calender,are thee
   only days in which prison officials of Henry Hill C.C. shall accom-
   modate Catholic Parishioners with an"alternative meal":(fish)/NON
   RED MEAT OF ANY KIND.However,this has not happened here at Henry
   Hill C.C.

5. Lent had begun on february,10,2016 and ran thru march,27,2016
which ended on Easter sunday.

6. Grievant Mr.O'Neal decided upon (Himself) to approach Chaplain
Rojas and have a conversation with him concerning the upcoming
**2016 LENT**,as well as (previous) lent and feast meals in which
was not being honored/observed by both The Chaplain and Chief
Of Administrative Officer/Warden Stephanie Dorothy Of Henry
Hill C.C.

7. After having above mentioned conversation with Chaplain Rojas...
grievant"immediately" walked over to (both Deacon(s) ):

                1. **Deacon Joe**
                2. **Deacon Robert Rodriquez**

and explained to both Deacon(s) the "nature" of the conversation
in which (had) just taken place between The Chaplain and Grievant.
Please See.grievance pg.**6** paragraph **14 thru 16.**

8. When the month of March,2016 had entered,while The Lent Tradition
was still effect,grievant O'Neal was hereby **"REMOVED"** from Catholic
services CURSILLO/ULTREYA by way of Chaplain Rojas.

9. When grievant O'Neal submitted Chaplain Rojas an"Offender's Request
Slip" questioning The Chaplain:"Why was (HIS) name removed from ser-
vice?". Please see Ex.pg.**7** paragraph(20) **exhibit B. dated:Mar,18,2016.**

10. Chaplain Rojas stated that grievant O'Neal was being **"REMOVED"** from
service,due to space accommodations/**not security concerns in which**
**Grievance Officer Steve Gans tried to "DIVERT"** thee entire grievance
process/procedure,in which shall be addressed in a much latter por-
tion of this grievance.

11. After having been **successfully** retaliated against/and restricted fr-
om attending religional services,for having approached Chaplain Roj-
as while inquiring"Why was it,that the Catholic Religion was being
discriminated against here at Henry Hill C.C.?"

12. Grievant then sought out thee only"appropriate solution available",
and that was to file above mentioned grievance dated April,14,2016.

13. Grievant had a **(60) days time frame** in which to file a grievance, in
which was timely filed: dating back to when Chaplain Rojas had (Bog-
usly) removed grievant O'Neal from attending already"APPROVED CATHO-
LIC PARTICIPANT'S LIST", Dated: March,18,2016.

14. Grievance Officer Mr.Steve Gans"RECOMMENDATION" that Mr.O'Neal's
grievance is therefore **not moot...for it is in fact timely filed.**

(SECTIONS B) 2. <u>Freedom To File A Grievance Violation</u>:


15. Grievance procedure was hereby violated by **Counselor Frost, Grievance Officer Steve Gans, Chief Of Administrative Officer/Warden Stephanie Dorothy Of Henry Hill C.C.**, for <u>failing</u> to secure grievant O'Neal rights to **"<u>present witness testimony</u>"** to help aid in <u>all</u> allegations brought forth in grievance...however, officials of Henry Hill "<u>FAILED</u>" **(MISERABLY) to afford grievant this right by not calling forth such critical witness(such) as <u>both</u> Deacon(s).**

16. Throughout each stage of the grievance process/procedure each above staff member**s"<u>REFUSED</u>"** to do their **due diligence.**

17. Also, above mentioned staff personnel, again <u>refused</u> to take a summary/deposition or call/consult/interview thee overseer of **The Food Supervisor Department**, in whom is also named on face page of Inmate's grievance...as to matter(s) already mentioned in complaint. Please See page.<u>1</u> of grievance.

**(SECTIONS C) 3.** Authenticity Signature Of Chief Of Administrative
Officer/Warden Stephanie Dorothy <u>forged</u> in signa-
<u>ture box on face page of grievance:</u> _____

18. Grievant Inmate O'Neal is calling into question thee authentic-
ity of signature in which is **(DESIGNATED) for The Chief Of Adm-**
**inistrative Officer/Warden signature**"**only**",and therefore has
hereby been"**FRAUDULENTLY BEEN FORGED**" by someone other than the
Chief Of Administrative Officer/Warden Stephanie Dorothy.

19. Grievant Inmate O'Neal is hereby enclosing (2)"**Offender Author-**
**ization For Payment Receipt**" in which The Chief Of Administrat-
ive Officer/Warden Stephanie Dorothy (HAD) to approve or disap-
prove said documents. Please See exhibit.<u>H</u>

20. <u>Forged</u> signatures,only lead to"**FRAUDULENT**" documentations,in
which grievant is hereby asking that it be stricken from the
record...for this type of "**MISCHIEF**" should be deemed"<u>VOID</u>",
for it is not **a valid documentation.**

21. Also,if need be grievant is asking for a"**HANDWRITING ANALYSIS**"
be brought in to verify the authenticity of the forged docum-
ent at hand...for this can very easily be proven by presenti-
ng an official State Identification Card **(PREFERABLY)** **A Driv-**
**er's License.**

The filing time of a grievance is not construed by an observed be-
havior of bad acts,used as an example within the compling of said
grievance-but construed at the time the grievant is personally af-
fected due to a continuation of negligent behavior.

Grievant has within (HIS) right the time in which to see if negli-
gent circumstances will be **remedied** by controling parties,and if
not-then a punctual grievance may be tenderd to concerning parties.

As one can see by the dates,this was most definitely the case: so
grievance is therefore **not** moot.

There are **(NO Names)** nor **(number(s) Of Any Other Inmates attached
to grievant's complaint**. Grievant O'Neal is thee only named party.
To construe from a conclusive statement on behalf of**"RELIGIOUS DE-
NOMINATION** used to point out that it is indeed **THE CATHOLIC FAITH**
that seems to be **(TARGET)**-which grievant is a **"WORSHIPER"** is evi-
dence of working a complaint on behalf of other(s),is in era and
is also **moot.**

Nowhere in the the Inmates manual does it state,that after attend-
ing Mass/Lent for a certain amount of time,that it is okay to ex-
clude/remove parishioner from attendance-It is on a first come/
first serve basis,and it is only after grievant sought relief,
that The Chaplain chose to punish parishioner from continuing to
**practice (HIS) right to religion...which is also era in Grievance
Officer's "RECOMMENDATION",for Grievant's 1st. and 14th.Amendment
Rights were hereby violated.**

Also,the use of the administrative code,chapter 1 section 425 is
in era,for it does not apply here,for there is no security conce-
rns meeted out.

Also 60 D) of same code is also in era,for reasons previously me-
ntioned.

IN RE: To Recommendation filed on behalf of Grievance Officer Gans,
is totally in era when (HE) asserts facts not in evidence. The gri-
evant is not complaining about fasting,it is about **not receiving t**he
**same benefits as all thee other religious denominations receive whi-
ch by all means is a blatant violation of freedom afforded via The
Constitution. This is hereby also"bias and neglectful in its total-
ity."**

Also,to use an all inclusive to describe activities already in mot-
ion is in era which makes this recommendation on behalf of Grievance
Officer Gans **moot.**
                    Sincerely,

**ILLINOIS DEPARTMENT OF CORRECTIONS**

## Offender Authorization for Payment

Posting Document # _____     Date JULY 10, 2015.

Offender Name MR. AARON O'NEAL    ID# N53022 Housing Unit R3·C·38

Pay to 8 TRACK SHACK

Address 11610 RICHARDSVILLE ROAD.

City, State, Zip BROOKVILLE, PA. 15825.

The sum of NINE    $9.50    dollars and FIFTY cents charged to my trust fund

account, for the purpose of ORDERING MUSICAL CASSETTES.

☐ I hereby authorize payment of postage for the attached mail. ☐ I hereby request information on electronic
funds transfers to be placed in the attached mail.

Offender Signature Mr. Aaron O'Neal    ID# N-53022

Witness Signature LT Smith

☑Approved ☐ Not Approved   Chief Administrative Officer Signature Mrs. Stephanie Dorethy

Postage applied in the amount of _____ dollars and _____ cents.

Distribution: Business Office, Offender, Mail Room

*Printed on Recycled Paper*

DOC 0296 (Eff. 1/2006 )
(Replaces DC 828)

PLAINTIFF'S EXHIBIT P.

Bruce Rauner
Governor



John Baldwin
Acting Director

PLAINTIFF'S EXHIBIT Q.

## The Illinois Department of Corrections

1301 Concordia Court, P.O. Box 19277 • Springfield, IL 62794-9277 • (217) 558-2200 TDD: (800) 526-0844

Offender Name: O'Nial, Aaron                                    Date: 3-7-17

Register # N53022

Facility: HIL

This is in response to your grievance received on 9/8/16 . This office has determined the issue will be addressed without a formal hearing. A review of the Grievance, Grievance Officer/CAO response to the grievance has been conducted. For a grievance that is direct review by the ARB, a review of the Grievance has been conducted.

**Your issue regarding: Grievance dated: 4/14/16 Grievance Number: 17-0114 Griev Loc: HIL**

- ○ Transfer denied by the Facility or Transfer Coordinator
- ○ Dietary _____
- ○ Personal Property _____
- ○ Mailroom/Publications _____
- ○ Assignment (job, cell) _____
- ○ Commissary _____
- ○ Trust Fund _____
- ○ Conditions (cell conditions, cleaning supplies)
- ○ Disciplinary Report dated _____ incident # _____
- Ø Other Religion-Services/activities

**Based on a review of all available information, this office has determined your grievance to be:**

- ○ Affirmed, Warden _____ is advised to provide a written response of corrective action to this office by _____.
- ○ Denied, in accordance with DR504F, this is an administrative decision.
- ☒ Denied, this office finds the issue was appropriately addressed by the facility Administration.
- ○ Denied in accordance with AD05.03.103A (Monetary Compensation for Inmate Assignments)
- ○ Denied, as the transfer denial by the facility/TCO on _____ was reviewed in accordance with transfer procedures and is an administrative decision.
- ○ Denied as the facility is following the procedures outlined in DR525.
- ○ Denied as Cell Assignment/Housing is consistent with the Department's determination of the appropriate Operational capacity of each facility.
- ○ Denied as procedures were followed in accordance with DR 420 for removal/denial of an offender from/for an assignment.
- ○ Denied as this office finds no violation of the offender's due process in accordance with DR504.80 and DR504.30. This office is reasonably satisfied the offender committed the offense cited in the report.

Other: DR425 being followed, Staff assignment is an administrative decision

FOR THE BOARD: Melissa Phoenip  CONCURRED: John R. Baldwin 3/8/17
Melissa Phoenix                                        John R. Baldwin
Administrative Review Board                             Acting Director

CC:  Warden, HIL Correctional Center
O'Nial Aaron , Register No. N53022

*Mission: To serve justice in Illinois and increase public safety by promoting positive change in offender behavior, operating successful reentry programs, and reducing victimization.*

**www.illinois.gov/idoc**

# LOEVY & LOEVY

311 N. Aberdeen St., 3rd Floor, Chicago, Illinois 60607

August 2, 2017

***CONFIDENTIAL LEGAL CORRESPONDENCE***

Via U.S. Mail
Aaron O'Neal
N53022
Hill Correctional Center
P.O. Box 1700
Galesburg, IL 61401

      *Re:    Your request for legal representation*

To Aaron O'Neal:

      This letter is to inform you that after reviewing your file, we are unfortunately unable to take your case.

      Please be advised that there are time limitations that govern the period in which a claim or lawsuit may be filed. Such time periods depend on the cause of action you may wish to pursue. However, we encourage you to follow up with other attorneys immediately to ensure that all legal rights are fully explored and protected.

      We appreciate your decision to contact us, and wish you the best of luck in pursuing your claims.

                  Sincerely,

                  Loevy & Loevy

PLAINTIFF'S EXHIBIT K.