E-FILED
Sunday, 27 March, 2022  06:27:04 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| AARON O'NEAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-cv-04063 |
| | ) | |
| MANUEL ROJAS, *et al*., | ) | Hon. Sue E. Myerscough |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

NOW COMES Plaintiff, AARON O'NEAL, by and through his attorneys REEDE NEUTZE and STEPHEN BEEMSTERBOER of the University of Illinois College of Law Federal Civil Rights Clinic, for his Response to Defendants' Proposed Jury Instructions and objects as follows:

**I.**    **Defendants' Alternate Instruction 20: First Amendment Free Exercise Claim**

The Seventh Circuit does not provide a pattern jury instruction for First Amendment Free Exercise claims. However, to establish a Free Exercise claim, the Seventh Circuit has held that a plaintiff must prove "that the defendants personally and unjustifiably placed a substantial burden on his religious practices." *Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1003 (7th Cir. 2019) (quoting *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016)). "[A] substantial burden is one that 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id.* (quoting *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981)). As relevant to this case, the Seventh Circuit has "repeatedly held that forcing an inmate to choose between daily nutrition and religious practice is a substantial burden." *Thompson*, 809 F.3d at 380 (collecting cases). As long as the diet request conforms to a "[s]incere religious belief[]" on the part of the inmate, it generally "must be accommodated." *Vinning-El v. Evans*, 657 F.3d 591, 593 (7th Cir. 2011).

In the prison context, once a substantial burden has been established, a defendant can avoid liability only if the justification for that burden is "reasonably related to a legitimate penological interest." *Thompson*, 809 F.3d at 380. However, "prison officials cannot rely on the mere incantation of a penal interest but must come forward with record evidence that substantiates that the interest is truly at risk and that prison officials have chosen an appropriate manner to assert that interest." *Neely-Bey Tarik-El v. Conley*, 912 F.3d 989 at 1004 (citing *Turner v. Safley*, 482 U.S. 78, 89–90 (1987)).

Thus, to establish a First Amendment Free Exercise claim in this case, consistent with Plaintiff's proposed instruction, it is sufficient to show that (1) it is Plaintiff's sincerely held religious belief that he must abstain from eating meat on Fridays during the Lenten season; (2) the defendant either caused or otherwise participated in denying Plaintiff the ability to receive an alternative to meat on Fridays during Lent; and (3) the defendant's justification of the denial was not reasonably related to a legitimate penological interest.

On the contrary, Defendants offer no authority to support their proposed instruction to the extent that it would require the jury to find (1) "that the defendant intentionally prohibited Plaintiff from abstaining from meat on Fridays during the Lenten season"; (2) "that the defendant knew the tenets of Plaintiff's sincerely held religious beliefs included abstaining from meat on Fridays during the Lenten season"; and (3) "that the defendant acted as alleged because of hostility to Plaintiff's Catholic beliefs." Each of these erroneous elements is taken in turn.

A. **"[T]hat the defendant intentionally prohibited Plaintiff from abstaining from meat on Fridays during the Lenten season . . . ."[1]**

This proposition grossly misstates the law. The language suggests that Defendants can only be held liable if they forced Plaintiff to eat meat on Fridays during Lent. While such conduct would obviously rise to the level of a substantial burden, the conduct at issue need not be so extreme. To better illustrate the implications of this jury instruction, consider that, if Defendants were to argue at trial that Plaintiff could have simply declined to eat the meat served to him, that would be sufficient to show that no defendant "intentionally prohibited Plaintiff from abstaining from meat," thereby defeating the claim. That is not what the law requires.

It is well established that "forc[ing] a prisoner to choose between adequate nutrition and religious practice . . . [is] a substantial burden on his religious practice." *Jones v. Carter*, 915 F.3d 1147, 1150 (7th Cir. 2019) (citing *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014); *Holt v. Hobbs*, 574 U.S. 352 (2015)); *see also Thompson*, 809 F.3d at 380 (collecting cases). Therefore, Plaintiff need only show that "the defendants intentionally and unjustifiably forced this burdensome choice," *Thompson*, 809 F.3d at 381—*not* that they prohibited Plaintiff from abstaining from meat altogether. Absent a reasonably related penological interest sufficient to justify the decision, merely refusing to provide religious diet accommodations is thus sufficient to support a First Amendment Free Exercise claim as a matter of law. *Id.* Defendants' attempt to exaggerate Plaintiff's burden is improper and should be rejected.

---

[1] To avoid any doubt, this and other subheadings presented in quotes throughout this memorandum are quotations of Defendants' proposed instructions and should not be construed as assertions by Plaintiff.

**B.** **"[T]hat the defendant knew the tenets of Plaintiff's sincerely held religious beliefs included abstaining from meat on Fridays during the Lenten season . . . ."**

This proposition confuses the law in a number of subtle but consequential ways. First, the choice of phrase "tenets of Plaintiff's sincerely held religious beliefs" seriously risks misleading the jury into falsely believing that the religious practice at issue must be an official tenet of the Catholic faith. However, it is firmly established that "[a] personal religious faith is entitled to as much protection as one espoused by an organized group," and, as such, "sincerity rather than orthodoxy is the touchstone." *Vinning-El*, 657 F.3d at 593–94; *see also Grayson v. Schuler*, 666 F.3d 450, 454 (7th Cir. 2012) ("[A] religious believer who does more than he is strictly required to do is nevertheless exercising his religion."). According to Merriam-Webster, the word "tenet" is defined as "a principle, belief, or doctrine generally held to be true," especially connoting "one held in common by members of an organization, movement, or profession."[2] Given that connotation, and the fact that, without the connotation, the use of the word "tenets" would seem redundant in conjunction with the phrase "sincerely held [] beliefs," the wording appears to be an insidious attempt to lead the jury to equate "sincerely held religious beliefs" with Plaintiff's religion as a whole.

Whether intentional or not, such an instruction would impermissibly open the door for Defendants to argue that Plaintiff's claim fails because abstaining from meat during Lent is not required of him by the orthodoxy of the Catholic religion. In reality, the question is whether abstaining from meat is Plaintiff's *own* sincerely held religious belief, not whether it is a *tenet* of the broader religion to which he sincerely adheres. *See Nelson v. Miller*, 570 F.3d 868, 878 (7th Cir. 2009) ("[I]t [i]s a violation of the First Amendment and RLUIPA for prison officials to deny

---

[2] https://www.merriam-webster.com/dictionary/tenet

an inmate's request for a non-meat diet on the ground that his religion does not require such a dietary restriction.").

Second, a knowledge requirement is nowhere to be found in the law pertaining to free exercise claims. Indeed, the defendant need not, and cannot, "know" what Plaintiff's sincerely held beliefs are when acting. Short of possessing psychic powers, it is impossible for someone to ever truly "know" what another person's beliefs are or whether they are sincerely held. That fact alone could lead the jury to improperly reject the claim. However, as discussed above, it is possible Defendants actually designed the instruction to (impermissibly) have the jury ponder whether Plaintiff's professed organized religion features a particular tenet, in which case an element considering whether the defendant knew about that tenet would make more sense (but would still leave the issue of how a person could definitively "know" whether someone was sincere in his adherence to his professed religion). Accordingly, this wording is further evidence that Defendants are attempting to misrepresent the law such that the claim would impermissibly turn on the tenets of the Catholic faith, rather than Plaintiff's own beliefs. In any case, the sincerity of a plaintiff's religious beliefs is a question of fact left to the jury to decide. *See Vinning-El*, 657 F.3d at 595 (noting the necessity of "hold[ing] a jury trial to determine whether [Plaintiff] actually had a sincere religious belief in the necessity of a vegan diet").

Further, it would make little sense for the Seventh Circuit to say that "[a] prison is *entitled* to ensure that a given claim reflects a sincere religious belief," *id.* at 594 (emphasis added), if, in order for a plaintiff to sustain a free exercise claim, a defendant would have had to have *known* the actual sincerity and scope of a plaintiff's religious beliefs when acting. The point is that sincerely held religious beliefs must be accommodated, but non-religious beliefs do not. *Id.* at 593. Thus, when a prison official is deciding on a course of action that might affect a

prisoner's practice of religion (e.g., whether to accommodate a purportedly legitimate religious practice), it is permissible for the official to reasonably try to ascertain whether the religious belief is indeed sincere. *Id.* at 594–95. If the official gets it wrong, and the religious belief really is sincere (as determined by the jury), and the course of action also constituted an unjustified substantial burden on that belief, it generally does not matter what the official knew or did not know about the plaintiff's actual religious beliefs in terms of establishing the free exercise claim itself. *See id.* While a defendant consciously acting in a way that interferes with the religious beliefs of a plaintiff (as the defendant understands those beliefs to be) certainly makes the conduct more egregious, and strengthens a claim for punitive damages,[3] knowledge is simply is not necessary for the claim itself.

In sum, the relevant question for the jury is not whether the defendant knew the tenets of Plaintiff's *religion*, as Defendants proposed, but rather, whether it is Plaintiff's sincerely held religious belief that he must abstain from eating meat on Fridays during the Lenten season.

### C. "[T]hat the defendant acted as alleged because of hostility to Plaintiff's Catholic beliefs and not based on a legitimate penological justification."

Defendants boldly concoct the first part of this element out of whole cloth. As a quick litmus test, the word "hostility" (or any variation of it) does not appear even once in any of the three cases cited by Defendants in support of this proposed instruction. *See Turner v. Safley*, 482 U.S. 78 (1987); *Vinning-El v. Evans*, 657 F.3d 591 (7th Cir. 2011); *Johnson-Bey v. Lane*, 863 F.2d 1308 (7th Cir. 1988). Nor has Plaintiff independently uncovered any authority that would support this proposition. The gravamen of a Free Exercise claim is that the defendant

---

[3] *See Smith v. Wade*, 461 U.S. 30, 56 (1983) (punitive damages are appropriate "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others").

substantially burdened the plaintiff's practice of religion and had no legitimate justification to do so. *See Neely-Bey*, 912 F.3d at 1003. Thus, the mental state of the defendant is only relevant to the extent that it bears upon whether there was a legitimate motive or justification for the action taken. Hostility or animus is simply not required to establish the claim (though it certainly could be relevant), and Defendants' attempt to make it so should be unequivocally rebuffed.

Additionally, Defendants' proposed instruction fails to list the four factors, set forth in *Safley*, 482 U.S. at 89–91, that must be considered in determining the reasonableness of any proffered justification for the substantial burden imposed. "When officials assert such a concern to justify the curtailment of an inmate's religious exercise, we must consider four factors in determining whether the challenged restriction is constitutional: (1) whether the restriction 'is rationally related to a legitimate and neutral governmental objective'; (2) 'whether there are alternative means of exercising the right that remain open to the inmate'; (3) 'what impact an accommodation of the asserted right will have on guards and other inmates'; and (4) 'whether there are obvious alternatives to the [restriction] that show that it is an exaggerated response to [penological] concerns.'" *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009) (quoting *id.*) (alterations in original).

As such, Plaintiff objects to Defendants' proposed instruction and respectfully requests the use of his own proposed jury instruction, as it is properly limited to only the elements actually required for a First Amendment Free Exercise claim and includes the appropriate factors for assessing any proffered justifications.

## II.    Defendants' Alternate Instruction 21: First Amendment Retaliation Claim

Plaintiff objects to Defendants' proposed First Amendment Retaliation claim jury instruction for the simple fact that, without any apparent legitimate justification, it deviates from

the Seventh Circuit Pattern Jury Instruction for Prisoner First Amendment Retaliation claims. *See* 7th Cir. P. I. 6.03. Plaintiff's proposed instruction is directly based on the pattern instruction. While Defendants' proposed instruction adopts Plaintiff's almost entirely, it attempts to elide from paragraph three a sentence that comes straight from the pattern: "It need not have been the only reason."

Defendants cite *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019), as purported justification for the elision. However, the drafters' comments all but foreclose the possibility that *Bartlett* supports Defendants' edit. *See* 7th Cir. P. I. 6.03 cmt. c, 6.01 cmt. c. As the comments explain, the drafters included this particular sentence in the pattern instruction based on established precedent and the Seventh Circuit's recognition that, with respect to said precedent, "the Supreme Court has never abandoned the *Mt. Healthy* rule" (which is controlling as to mixed motives and burden shifting in the First Amendment context). *Smith v. Wilson*, 705 F.3d 674, 681 (7th Cir. 2013) (citing *Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)); 7th Cir. P. I. 6.01 cmt. c (citing *Smith*, 705 F.3d at 681). In *Bartlett*, the Supreme Court cites to *Mt. Healthy* favorably and does not so much as hint at disturbing its holding. *See Bartlett*, 139 S. Ct. at 1722. Thus, in the absence of any other authority, there is no reason to believe that *Bartlett* impacts the vitality of the Seventh Circuit's pattern instruction for this claim.

Accordingly, the Court should accept Plaintiff's proposed instruction, to which, aside from the contested sentence, Defendants have otherwise indicated their assent.

### III.     Defendants' Alternate Instruction 22: Fourteenth Amendment Equal Protection Claim

Plaintiff objects to Defendants' proposed jury instruction for the Fourteenth Amendment Equal Protection claim as it lacks support and is likely to mislead the jury. Of the three cases cited by Defendants in support of their proposed instruction, only one even involves an equal protection claim. *See Grayson v. Schuler*, 666 F.3d 450 (7th Cir. 2012) (free exercise claim); *May v. Sheahan*, 226 F.3d 876 (7th Cir. 2000) (equal protection claim); *Hadi v. Horn*, 830 F.2d 779 (7th Cir. 1987) (free exercise claim). The posture of *May* was such that the equal protection claim was assessed in the context of a motion to dismiss; thus, the analysis is not particularly deep. *See May*, 226 F.3d at 882. Given this lack of depth and no other relevant cases cited, it is unclear what authority, if any, Defendants used to draft these instructions.

The Seventh Circuit does not provide a pattern jury instruction for Equal Protection claims in the prison context. However, it does provide a pattern instruction for such claims in the employment context. *See* 7th Cir. P. I. 3.01. Moreover, the Seventh Circuit has held that "[t]he same reasoning and standard [as applied to employment decisions] apply to a claim of intentional and unconstitutional [religious] discrimination by prison officials." *Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019). As such, Plaintiff's proposed instruction uses the pattern instruction for employment discrimination as a template. Given that the standards are analogous, the employment discrimination instruction not only provides an appropriate basis from a substantive standpoint, but it also has the advantage of already being optimized for use as a jury instruction (as opposed to crafting an instruction from scratch as it appears Defendants have done).

Defendants' homespun instruction stands to badly mislead or confuse the jury. The phrases "similarly situated in custody" and "similarly situated inmates," in the context of an

equal protection claim, are too imprecise, without more, to instruct a jury how to properly compare particular groups of inmates and the idiosyncratic ways they may have been treated. By contrast, Plaintiff's proposed instruction, owing to the wisdom of the pattern instruction drafters, effectively zeroes in on the operative question: in essence, if Plaintiff was a different religion but everything else was the same, would he have been treated the same way? (In other words, was he treated differently just because of his religion?) If the "similarly situated" phrasing attempts to strike at the same issue, it does so by beating around the bush in an inartful way. Defendants' proposed instruction never explicitly orients the jury to compare Plaintiff's treatment to the treatment of members of other religions (with respect to religious diet accommodations). The imprecision could erroneously lead the jury to consider other Catholic inmates as "similarly situated" to Plaintiff, potentially finding that, because they did not receive religious diet accommodations either, Plaintiff was not treated any different and thus his claim should fail.

Plaintiff's proposed instruction, based on the pattern instruction for the virtually identical employment-related discrimination claim, stands on a much stronger footing than Defendants' and thus should be accepted.

## IV.   Defendants' Alternate Instruction 27: Punitive Damages

Plaintiff objects to Defendants' proposed jury instruction on punitive damages. While theirs reflects the pattern instruction outright, Plaintiff's minor addition to the pattern instruction better conveys the one core purpose of punitive damages that is most applicable to this case: general deterrence. Even though the preamble to the pattern instruction makes note of this consideration, 7th Cir. P. I. 7.28 ("[P]unitive damages . . . serve as an example or warning to Defendants *and others* not to engage in similar conduct in the future." (emphasis added)), it is

inexplicably not similarly mentioned in the more specific factors the jury is instructed to consider in determining the amount of punitive damages.

All of the defendants in this case are either retired or otherwise no longer employed by the Illinois Department of Corrections. As such, "the likelihood that Defendant would repeat or engage in the conduct if an award of punitive damages is not made" is, barring some strange and unforeseen circumstances, exactly zero. That particular factor's exclusive focus on specific deterrence, when applied to this case, essentially short-circuits the possibility that a punitive award would be calculated to serve the valid and important function of general deterrence. Normally, general deterrence would, if nothing else, operate by the residual force that flows from any damages meant to serve as specific deterrence. In other words, measures aimed at specific deterrence almost inherently further general deterrence ends as well. Perhaps that explains why the drafters did not expressly admonish juries to consider general deterrence directly when it developed the factors. But Plaintiff should not be deprived of the benefit of an award that furthers general deterrence just because the claims at issue are virtually incapable of repetition with these particular defendants.

It is not only proper but necessary to prevent prejudice to Plaintiff in this case to expressly instruct the jury to consider general deterrence when determining any potential punitive damages. Plaintiff's minor addition of the phrase "or those similarly situated" in this jury instruction is aimed at ensuring that punitive damages will duly "serve as an example or warning to . . . others not to engage in similar conduct in the future." 7th Cir. P. I. 7.28.

## V.    Defendants' Proposed Instruction 27[4]

Plaintiff objects to Defendants' Proposed Instruction 27 because its contents are part duplicative and part irrelevant, and, beyond its inclusion having no discernible value, it also presents a high probability of confusing the issues. At best, this instruction simply does nothing to facilitate a fair and efficient adjudication of the case. At worst, it undermines that end. Plaintiff also notes that Defendants did not disclose (nor even mention) this proposed instruction in the course of preparing the joint pretrial order; as such, Plaintiff was not given the opportunity to voice concerns and attempt to reach some kind of consensus on this instruction before it was presented to the Court as a contested issue.

### A.  "Prisoners retain the right to exercise their religion to the extent such exercise is consistent with legitimate penological objectives."

This sentence is unnecessary because it is duplicative and would only serve to confuse matters. Contingent upon which instructions this Court decides to give, this proposition should already be factored into the instructions for substantive claims where applicable. For instance, Plaintiff's proposed instruction for the Free Exercise claim already accounts for the possibility that a religious practice may be duly restricted on account of a legitimate penological objective. Given that the Free Exercise claim instruction includes the relevant factors that go into weighing a proffered justification, it presents the concept in a more thorough and comprehensible manner. The sentence as placed here in Defendants' proposed instruction merely reiterates the same concept in less detail and with less clarity, not to mention detached from any claim to which it should apply.

---

[4] This number is a duplicate to that of the proposed instruction pertaining to punitive damages.

**B.** **"Not every religious group or sect within a prison must have identical facilities or personnel. A special place of worship need not be provided to every faith regardless of size, nor must a chaplain, priest, or minister be provided without regard to the extent of the demand. Department of Corrections officials may prohibit services led by an inmate without a faith leader."**

Aside from the mere mention of religion, this portion is entirely irrelevant to the issues at bar. Plaintiff makes no claim about the provision of religious facilities or personnel, let alone any disparities regarding them. Nor does Plaintiff make any claim about inmates leading Catholic services. The issues in this case focus on religious diet accommodations: whether the denial of a religious diet accommodation violated Plaintiff's First Amendment and Fourteenth Amendment rights and whether Defendant Rojas's preclusion of Plaintiff from religious services was in retaliation to Plaintiff exercising his right to free speech (with respect to his religious diet request). As such, this portion is simply inapposite and should be excluded.

Including Defendants' Proposed Instruction 27 risks confusing the jury, or, at the very least, it merely puts one more thing in front of a jury that will no doubt already be overloaded with the torrent of information presented at trial. The Court should exclude this unnecessary distraction.

WHEREFORE, for the above and foregoing reasons, AARON O'NEAL, respectfully requests that this Honorable Court rule in keeping with this Memorandum and reject Defendants' alternate and proposed disputed jury instructions.

Respectfully submitted,

Aaron O'Neal, Plaintiff

By:
/s Reede Neutze
/s Stephen Beemsterboer
*Attorneys for Plaintiff*

University of Illinois
College of Law
Federal Civil Rights Clinic
504 E. Pennsylvania Ave.
Champaign, IL 61820
aneutze2@illinois.edu
smb9@illinois.edu

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| AARON O'NEAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 4:18-cv-04063-SEM-TSH |
| v. | ) | |
| | ) | The Honorable Sue E. Myerscough |
| MANUEL ROJAS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

We hereby certify that on March 27, 2022, we electronically filed Plaintiff's Objections

to Defendants' Proposed Jury Instructions with the Clerk of the Court using the CM/ECF system,

which will send notification of the filing to Defendants' attorney below:

    Maria Gray
    Office of the Illinois Attorney General
    500 S. Second Street
    Springfield, Illinois 62701
    217-782-5819
    Maria.Gray@ilag.gov

          /s Reede Neutze
          /s Stephen Beemsterboer
          *Attorneys for Plaintiff*

          University of Illinois College of Law
          Federal Civil Rights Clinic
          504 E. Pennsylvania Avenue
          Champaign, IL 61820
          aneutze2@illinois.edu
          smb9@illinois.edu

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| AARON O'NEAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-cv-04063-SEM-TSH |
| | ) | |
| MANUEL ROJAS, et al., | ) | Judge Sue E. Myerscough |
| | ) | |
| Defendants. | ) | |

**<u>CERTIFICATE OF TYPE VOLUME COMPLIANCE</u>**

We hereby certify that on March 27, 2022, the electronically filed *Plaintiff's Objections to Defendants' Proposed Jury Instructions* complies with the type volume limitation under Local Rule 7.1(B)(4) in that it contains 3,883 words and 21,125 characters, which is less than the 7,000 word or 45,000 character limits.

<u>/s Reede Neutze</u>
<u>/s Stephen Beemsterboer</u>
*Attorneys for Plaintiff*

University of Illinois
College of Law
Federal Civil Rights Clinic
504 E. Pennsylvania Ave.
Champaign, IL 61820
smb9@illinois.edu
aneutze2@illinois.edu